Thomas Stenson, OR No. 152894
tstenson@droregon.org
Joel Greenberg, OR No. 943233
jgreenberg@droregon.org
Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205-2748
(503) 243-2081

Seth M. Galanter, D.C. No. 479919*
sgalanter@youthlaw.org
Alice Y. Abrokwa, D.C. No. 1023510*
aabrokwa@youthlaw.org
National Center for Youth Law
1212 Broadway, Suite 600
Oakland, CA 94612
(202) 868-4786

Selene Almazan-Altobelli, MD No. 10506*
selene@copaa.org
Council of Parent Attorneys and Advocates
8 Market Place, Suite 300
Baltimore, MD 21202-4113
(844) 426-7224 ext. 702

Ira A. Burnim, D.C. No. 406154*
irab@bazelon.org
Lewis Bossing, D.C. No. 984609*
lewisb@bazelon.org
Bazelon Center for Mental Health Law
1090 Vermont Avenue NW, Suite 220
Washington, DC 20005-4900
(202) 467-5730

Michael Folger, NY No. 5151337*
michael.folger@probonolaw.com
1 Manhattan West
New York, NY 10001
(212) 735-3000

*Admitted pro hac vice

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| J.N., et al., | Case No. 6:19-CV-00096-AA |
| Plaintiffs, | |
| v. | PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |
| OREGON DEPARTMENT OF EDUCATION, et al., | Request for Oral Argument |
| Defendants. | |

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   LEGAL STANDARD ............................................................................................ 3

III.  ARGUMENT .......................................................................................................... 4

    A.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE IDEA'S
        EXHAUSTION REQUIREMENT. ................................................................ 4

        1.    IDEA Exhaustion Is Excused Because It Would Have Been Futile to
            File a Due Process Complaint Against ODE and Some of the Named
            Plaintiffs Exhausted Claims Through CRP Complaints. ................................. 5

        2.    Exhaustion Is Also Excused Under the IDEA Because ODE Was
            Repeatedly Put on Notice About the Alleged Violations Through
            Various Methods and the Alleged Violations Involve Formal and
            Informal Policies That Cannot and Need Not Be Remedied Through the
            IDEA's Administrative Processes. ..................................................................... 8

            a.    ODE has been on notice of the IDEA violations alleged in this case
                for years. ................................................................................................. 9

            b.    The legality of ODE's practices and policies can be assessed
                without revisiting individual IEPs. ........................................................ 12

            c.    The remedies required to redress the IDEA violations cannot be
                 granted in the administrative proceeding. .............................................. 13

        3.    Exhaustion Is Not Required For Plaintiffs' ADA and Section 504
            Claims. .......................................................................................................... 14

    B.    PLAINTIFFS HAVE STATED A CLAIM UNDER THE IDEA, ADA, AND
        SECTION 504. ............................................................................................... 16

        1.    Plaintiffs State a Claim Under The IDEA That Defendants Have Failed
            To Ensure That the LEAs Under Their Supervision Provide FAPE. ............... 16

            a.    Plaintiffs state a claim against a SEA under the IDEA if the SEA
                fails to ensure that school districts are in compliance. .......................... 17

            b.    Plaintiffs state a claim against a SEA under the IDEA if the SEA
                has failed to effectively fulfill its own monitoring and enforcement
                duties. .................................................................................................... 18

        2.    Plaintiffs State A Claim Under The ADA and Section 504 That
            Defendants Have Discriminated Against Children With A Disability
            Either Directly Or Indirectly Through The Actions Of The LEAs Under
            Their Supervision. ......................................................................................... 22

IV.   CONCLUSION ...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*A.A. v. Bd. of Educ.*, 196 F. Supp. 2d 259 (E.D.N.Y. 2002) .......................... 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................ 4

*Armstrong v. Brown*, 732 F.3d 955 (9th Cir. 2013) ................................... 23

*Armstrong v. Schwarzenegger*, 622 F.3d 1058 (9th Cir. 2010) ............... 22-23

*Blunt v. Lower Merion Sch. Dist.*, 559 F. Supp. 2d 548 (E.D. Pa. 2008) ...... 9

*C.O. v. Portland Pub. Schs.*,
  No. CV05-558-HU, No. 15-01715-HU, 2006 WL 8458915 (D. Or. Nov. 7, 2006) ........... 9, 13

*Castle v. Eurofresh, Inc.*, 731 F.3d 901 (9th Cir. 2013) ............................. 22

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................... 3

*Christopher S. v. Stanislaus Cty. Office of Educ.*, 384 F.3d 1205 (9th Cir. 2004) .............. 6, 8, 12

*Coningsby v. Oregon Dep't of Educ.*,
  No. 3:16-cv-00627-HZ, 2016 WL 4844078 (D. Or. Sept. 13, 2016),
  *aff'd sub nom. M.C. v. Oregon Dep't of Educ.*, 695 Fed. Appx. 302 (9th Cir. 2017) ............... 5

*Cordero v. Penn. Dep't of Educ.*, 795 F. Supp. 1352 (M.D. Pa. 1992) .................... 17, 18, 20, 21

*Corey H. v. Bd. of Educ. of City of Chicago*, 995 F. Supp. 900 (N.D. Ill. 1998) .................. 18, 19

*D.D. v. Los Angeles Unified Sch. Dist.*, 984 F.3d 773 (9th Cir. 2020) ................................. 14, 15

*D.L. v. District of Columbia*, 450 F. Supp. 2d 11 (D.D.C. 2006) ................................. 11

*DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*,
  868 F. Supp. 2d 1042 (D. Or. 2011) ........................................ 16

*Doe by Gonzales v. Maher*, 793 F.2d 1470 (9th Cir. 1986),
  *aff'd sub nom. Honig v. Doe*, 484 U.S. 305 (1988) .................... 6, 17, 18-19

*Doe v. Arizona Dep't of Educ.*, 111 F.3d 678 (9th Cir. 1997).......................... 8, 11, 14

*Duane B. v. Chester-Upland Sch. Dist.*,
  No. Civ. A. 90-0326, 1994 WL 724991 (E.D. Pa. Dec. 29, 1994).......................... 21

*Emma C. v. Eastin,* 985 F. Supp. 940 (N.D. Cal. 1997) ............................ 9, 23

*Emma C. v. Torlakson*,
    No. 96-CV-04179-VC, 2018 WL 3956310 (N.D. Cal. Aug. 17, 2018) ................................. 20

*Everett H v. Dry Creek Joint Elem. Sch. Dist.*,
    No. 2:13-CV-00889-MCE-DB, 2016 WL 5661775 (E.D. Cal. Sept. 30, 2016) ...................... 6

*Everett H. v. Dry Creek Joint Elem. Sch. Dist.*, 5 F. Supp. 3d 1184 (E.D. Cal. 2014).............. 8-9

*Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017)................................................. 14, 15

*G.M. ex rel. Mason v. Lincoln Cty. Sch. Dist.*,
    No. 6:16-CV-01739-JR, 2017 WL 2804996 (D. Or. Apr. 21, 2017) ...................................... 15

*Gadsby v. Grasmick*, 109 F.3d 940 (4th Cir. 1997)....................................................................... 17

*Gaskin v. Pennsylvania*,
    No. CIV. A. 94-4048, 1995 WL 154801 (E.D. Pa. Mar. 30, 1995)...................................... 9, 13

*Georgia Advocacy Office v. Georgia*, 447 F. Supp. 3d 1311 (N.D. Ga. 2020) ........................... 15

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001)........................................ 6

*Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298 (9th Cir. 1992)....................................... *passim*

*Honig v. Doe*, 484 U.S. 305 (1988) ................................................................................................ 5

*Idaho Migrant Council v. Idaho Bd. of Educ.*, 647 F.2d 69 (9th Cir. 1981) ............................... 22

*J.M. v. Tennessee Dep't of Educ.*, 358 F. Supp. 3d 736 (M.D. Tenn. 2018).................... 9, 13, 18

*J.S. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017)........................................ 15

*Jackson v. Pine Bluff Sch. Dist.*,
    No. 4:16CV00301-JM-JTR, 2017 WL 2296896 (E.D. Ark. May 12, 2017),
    *report and rec. adopted*, 2017 WL 2296956 (E.D. Ark. May 25, 2017)........................... 19, 24

*John T. v. Iowa Dep't of Educ.*, 258 F.3d 860 (8th Cir. 2001) ................................................16-17

*Kalliope R. v. N.Y. State Dep't of Educ.*, 827 F. Supp. 2d 130 (E.D.N.Y. 2010) ........................ 18

*Kerr Center Parents Ass'n v. Charles*, 897 F.2d 1463 (9th Cir. 1990) ............................. 13-14, 16

*L.L. v. Tennessee Dep't of Educ.*,
    No. 3:18-cv-00754, 2019 WL 653079 (M.D. Tenn. Feb. 15, 2019) ...................................... 21

*Larry P. by Lucille P. v. Riles*, 793 F.2d 969 (9th Cir. 1984)..................................................... 23

*Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023 (9th Cir. 2000).............................................6-7

*McCarthy v. Scottsdale Unified Sch. Dist. No. 48*, 409 F. Supp. 3d 789 (D. Ariz. 2019)............ 15

*McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902 (9th Cir. 2020)................................................ 4, 15

*Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*,
    No. 2:11-cv-3471, 2013 WL 1326301 (E.D. Cal. Mar. 29, 2013)................................ 9, 19, 20

*N.D. v. Hawaii Dep't of Educ.,* 600 F.3d 1104 (9th Cir. 2010)...................................................... 8

*N.S. v. Tennessee Dep't of Educ.*,
    No. 3:16-cv-0610, 2016 WL 3763264 (M.D. Tenn. July 14, 2016)........................................... 9

*Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144 (9th Cir. 2012) ................. 3-4

*New Jersey Prot. & Advocacy, Inc. v. New Jersey Dep't of Educ.*,
    563 F. Supp. 2d 474 (D.N.J. 2008) ........................................................................................... 9

*Olmstead v. L.C.*, 527 U.S. 581 (1999)................................................................................... 15, 24

*P.W. v. Delaware Valley Sch. Dist.*,
    No. 3:09cv480, 2009 WL 5215397 (M.D. Pa. Dec. 29, 2009)................................................ 19

*Payne v. Peninsula Sch. Dist.*, 653 F.3d 863 (9th Cir. 2011) (en banc) ......................................... 4

*S.P. v. Knox Cty. Bd. of Educ.*, 329 F. Supp. 3d 584 (E.D. Tenn. 2018)................................. 17-18

*St. Tammany Parish Sch. Bd. v. Louisiana*, 142 F.3d 776 (5th Cir. 1998).................................. 17

*Straube v. Florida Union Free Sch. Dist.*, 801 F. Supp. 1164 (S.D.N.Y. 1992) ......................... 17

*Student A v. Berkeley Unified Sch. Dist.*,
    No. 17-cv-02510-JST, 2017 WL 4551514 (N.D. Cal. Oct. 12, 2017)....................................... 7

*T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451 (9th Cir. 2015)................ 22

*United States v. Georgia,* 461 F. Supp. 3d 1315 (N.D. Ga. 2020) ............................................. 15

*W.H v. Tennessee Dep't of Educ.*,
    No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016) ..................................... 9, 12, 13

**STATUTES**

20 U.S.C. § 1400 *et seq*. (Individuals with Disabilities Education Act)............................... *passim*

    § 1413(g)................................................................................................................................ 17

    § 1415(i).................................................................................................................................. 4

    § 1416(a)(3) .......................................................................................................................... 20

29 U.S.C. § 794 (Section 504 of the Rehabilitation Act) ...................................................... *passim*

    § 794(a) ...................................................................................................................... 22

42 U.S.C. § 12131 *et seq.* (Americans with Disabilities Act, Title II) ................................ *passim*

    § 12131(1) .................................................................................................................. 22

Or. Rev. Stat. § 326.300 .................................................................................................... 3

Or. Rev. Stat. § 326.310 .................................................................................................... 3

Or. Rev. Stat. § 343.041 .................................................................................................... 3

**RULES**

Fed. R. Civ. P. 56 .............................................................................................................. 1

Local Rule 7.1 ................................................................................................................... 1

**REGULATIONS**

34 C.F.R. § 300.151 .......................................................................................................... 6

34 C.F.R. § 300.152 .......................................................................................................... 6

34 C.F.R. § 300.153 .......................................................................................................... 6

34 C.F.R. § 300.600(d)(1) ................................................................................................. 20

O.A.R § 581-024-0208 ...................................................................................................... 9

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1</u>

In compliance with Local Rule 7.1, the parties conferred in good faith through counsel by telephone and e-mail to resolve the dispute regarding this Motion and have been unable to do so.

## <u>MOTION</u>

Plaintiffs hereby move the Court to grant partial summary judgment in favor of Plaintiffs on the merits of three affirmative defenses raised in the Answer pursuant to Federal Rule of Civil Procedure 56. First, Plaintiffs seek a judgment that Defendants' Second and Third Affirmative Defenses fail as a matter of law and undisputed fact because Plaintiffs' claims are not barred by the exhaustion requirement of the Individuals with Disabilities Education Act. Second, Plaintiffs seek a judgment that Defendants' First and Third Affirmative Defenses fail as a matter of law and undisputed fact because the Complaint sufficiently alleges facts that constitute a cause of action under the Individuals with Disabilities Education Act, Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. Partial summary judgment is appropriate because there are no genuine disputes of material fact as to these issues. Fed. R. Civ. P. 56. Plaintiffs' Motion is based on this Motion and the accompanying Memorandum of Law, accompanying declarations and exhibits, pleadings filed in this action, any matter that may be judicially noticed, and any other matter raised in oral arguments in support of this Motion.

## <u>MEMORANDUM OF LAW</u>

## I.    INTRODUCTION

As detailed in the Complaint ("Compl.") (Dkt. No. 1) and comprehensively summarized by the Court (Dkt. No. 104), this matter challenges the alleged ongoing failure by Defendants, Oregon Department of Education ("ODE"), ODE Director Colt Gill, and Governor Katherine Brown (collectively, "Defendants" or "the State"), to effectively address the systemic practice among Oregon school districts of shortening the length of students' school days due to their

disability-related behaviors.  On behalf of themselves and the class of children they seek to represent, Plaintiffs allege that the State's passive approach to its supervision and monitoring duties allows and encourages many school districts to routinely, unnecessarily, and unlawfully subject them to shortened school days "without first developing, implementing, and revising as needed plans to provide academic and behavioral interventions that will support the students' needs."  Compl. ¶ 50; *see*, *e.g.*, *id*. ¶¶ 1, 12, 61, 77, 83, 97-99, 105-11.  These students "frequently fall behind academically and miss out on critical social opportunities in which they can practice appropriate behaviors," *id.* ¶ 5, and their needless exclusion causes them to suffer stigma, emotional trauma, humiliation, and shame, *see id*. ¶¶ 4, 51.

Plaintiffs further allege that the State has been aware of the alleged misuse of shortened school days by the local school districts—also known as local educational agencies ("LEAs")—under its supervision due to various forms of notice, including the filing of administrative complaints by Named Plaintiffs and others, for years without taking effective action.  *Id.* ¶¶ 62, 89, 102, 105-11.  Specifically, the Complaint alleges Defendants have failed to ensure a free appropriate public education ("FAPE") in the least restrictive environment ("LRE") under the Individuals with Disabilities Education Act ("IDEA"), and nondiscrimination under Title II of the Americans with Disabilities Act ("Title II" or "ADA") and Section 504 of the Rehabilitation Act ("Section 504"), for the Named Plaintiffs and putative class members due to at least three systemic deficiencies: (1) the lack of state-level policies or procedures to collect readily available information regarding the school districts that impose shortened school days and may need further supervision and monitoring, *id*. ¶¶ 115-18; (2) the State's failure to proactively monitor the districts' legal compliance and correct any noncompliance beyond simply operating its administrative complaint system, *id*. ¶¶ 115, 119-22; and (3) the State's failure to provide needed

resources, technical assistance, and training to help districts support students effectively for the full school day, *id.* ¶¶ 101, 115, 123-26.  Plaintiffs allege that these systemic deficiencies have denied the Named Plaintiffs and at least hundreds of similarly situated children their rights to FAPE in the LRE and to nondiscrimination, in violation of federal law.  *See id.* ¶¶ 7, 31-36, 114.

There is no genuine dispute that ODE is Oregon's state educational agency ("SEA"), under the leadership of Defendant Gill and Defendant Brown.  Or. Rev. Stat. §§ 326.300, 326.310, 343.041; *see also* Defs' Mot. to Dismiss 3 (Dkt. No. 33); Op. and Order 12 (Sept. 1, 2020) (Dkt. No. 104) (also available at 2020 WL 5209846) (hereinafter "Op. and Order").  As such, Defendants are ultimately responsible for ensuring that all qualified children with disabilities receive a FAPE in their LREs under the IDEA.  Op. and Order 12, 26.  Nor is there any dispute that at least one Named Plaintiff is a student with a disability residing in Oregon who is eligible for special education and related services under the IDEA.  Answer ¶¶ 13, 15-16 (Dkt. No. 109).  Furthermore, as the Court has previously explained, ODE is "a public entity covered by Title II [of the ADA] and a recipient of federal financial assistance subject to Section 504," and thus is subject to those laws' requirements.  Op. and Order at 12.  *See* Answer ¶ 20.  There is no dispute that at least one Named Plaintiff is a qualified individual with a disability under the ADA and Section 504.  Answer ¶¶ 13, 15-16.

## II.    LEGAL STANDARD

Summary judgment is proper with respect to a specific claim or defense if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[O]nly disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment."  *Nat'l Ass'n of Optometrists & Opticians v. Harris*,

682 F.3d 1144, 1147 (9th Cir. 2012).  A factual dispute is genuine "if the evidence is such that a

reasonable [factfinder] could return a verdict for the nonmoving party."  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.    ARGUMENT

Plaintiffs are entitled to summary judgment on Defendants' First, Second, and Third

Affirmative Defenses because Plaintiffs' claims are not barred by the IDEA's exhaustion

requirement and because the Complaint states a claim under the IDEA, ADA, and Section 504.

### A. PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE IDEA'S EXHAUSTION REQUIREMENT.

Defendants assert in their Second and Third Affirmative Defenses that Plaintiffs "failed

to exhaust their administrative remedies."  Answer ¶¶ 76, 77.  This failure, they claim, deprives

Plaintiffs of standing and the Court of subject matter jurisdiction, and results in Plaintiffs' claims

being "barred" and "not ripe."  *Id.*  Plaintiffs seek judgment as a matter of law on the merits of

these defenses.  There are no genuine disputes of material fact as to these issues; thus, this matter

can be resolved on summary judgment.  *See McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 909

n.6 (9th Cir. 2020) (summary judgment is appropriate mechanism to resolve a defense of failure

to exhaust IDEA administrative remedies).

It is typically true that, for claims to which the IDEA's exhaustion requirement applies, a

student must file a due process complaint and receive an adverse decision from the

administrative law judge ("ALJ") before suing in court.  20 U.S.C. § 1415(i)*.*  But the IDEA's

exhaustion requirement is not jurisdictional.  *McIntyre*, 976 F.3d at 907 n.2; *see Payne v.

Peninsula Sch. Dist.*, 653 F.3d 863, 867 (9th Cir. 2011) (en banc), *overruled on other grounds*.

Nor is it a rigid or absolute requirement; it is excused when the underlying purposes of

exhaustion would not be met, including because exhaustion would be futile, because the

challenged policies or practices are allegedly contrary to law, or because the relief available
through the administrative process would be inadequate. *See Hoeft v. Tucson Unified Sch. Dist.*,
967 F.2d 1298, 1303-04 (9th Cir. 1992). Exhaustion of Plaintiffs' IDEA claims is excused here,
and it is not required of Plaintiffs' ADA and Section 504 claims.

1. **IDEA Exhaustion Is Excused Because It Would Have Been Futile to File a Due Process Complaint Against ODE and Some of the Named Plaintiffs Exhausted Claims Through CRP Complaints.**

Plaintiffs have fully availed themselves of all available IDEA administrative processes.
No further exhaustion is required.[1]

Exhaustion is not required when it is futile. *See Honig v. Doe*, 484 U.S. 305, 327 (1988).
Filing a due process complaint challenging ODE's failures to monitor, supervise, and ensure
compliance with the IDEA would have been futile because Oregon ALJs do not entertain such
claims against ODE. Named Plaintiff J.V.'s due process complaint against ODE, for example,
was dismissed on the ground that a student may not file a due process complaint against ODE
unless the student is claiming ODE violated its obligation to directly provide special education
and related services to the student. Ex. 1 at 2-3 (ALJ Letter Decision dismissing claim against
ODE (Dec. 13, 2017)).[2]

---

[1] Only one named plaintiff needs to meet the exhaustion requirement in order for the class to
have met the exhaustion requirement. *See Hoeft*, 967 F.2d at 1309.

[2] Two other Oregon ALJs have also held that a student may not file a due process complaint
against ODE unless the student is claiming ODE violated its obligation to directly provide
special education and related services to the student. *See* Ex. 2 at 3-8 (ALJ determinations in
OAH Case No. DP 11-102B (Apr. 14, 2011) and OAH Case No. DP 15-114 (Oct. 15, 2015)).
Another judge of this Court has accepted that conclusion. *See Coningsby v. Oregon Dep't of
Educ.*, No. 3:16-cv-00627-HZ, 2016 WL 4844078, at *5 (D. Or. Sept. 13, 2016) (Hernández, J.),
*aff'd on other grounds sub nom. M.C. v. Oregon Dep't of Educ.*, 695 Fed. Appx. 302 (9th Cir.
2017).

Indeed, ODE is judicially estopped from arguing that Plaintiffs could have successfully filed a due process complaint against ODE. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001) (judicial estoppel "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position," so long as "the court relied on, or 'accepted' the party's previous inconsistent position"). The ALJ in J.V.'s complaint accepted ODE's position, which was that "a state education agency is not a proper party to a due process hearing unless it provided the services at issue in the hearing." Ex. 2 at 1 (Letter from Jake J. Hogue, Assistant Attorney General representing ODE (Nov. 14, 2017)); *see id.* at 2. ODE is not permitted to now argue that Plaintiffs' complaints against ODE are cognizable in a due process hearing. *Cf. Doe by Gonzales v. Maher*, 793 F.2d 1470, 1490-91 (9th Cir. 1986) (exhaustion excused because school district switched positions about whether its conduct was subject to due process protections), *aff'd on other grounds sub nom. Honig v. Doe*, 484 U.S. 305 (1988).

In addition, two of the Named Plaintiffs, J.N. and B.M., complained about ODE's role in the misuse of shortened school days using the other available IDEA administrative process—the complaint resolution process ("CRP"). *See* 34 C.F.R. §§ 300.151-.153; Declaration of Elliot Field ¶ 13 (Dkt. No. 94) (declaration submitted by Defendants describing CRP as an IDEA process that "supplements" the due process hearings). The Ninth Circuit has repeatedly held that a CRP complaint can serve as an "adequate substitute" for filing a due process complaint for purposes of exhaustion. *Christopher S. v. Stanislaus Cty. Office of Educ.*, 384 F.3d 1205, 1209 (9th Cir. 2004); *see id.* at 1209-14; *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1028-29 (9th Cir. 2000) (Oregon's CRP "and the due process hearing procedure are simply alternative (or even serial) means of addressing a § 1415(b)(6) complaint" and "[a]lthough different, a CRP is

no less a proceeding under § 1415 than is a due process hearing"); *Everett H v. Dry Creek Joint Elem. Sch. Dist.*, No. 2:13-CV-00889-MCE-DB, 2016 WL 5661775, at *9 (E.D. Cal. Sept. 30, 2016) ("The Ninth Circuit has recognized that CRPs can suffice for exhaustion purposes under several different circumstances.").

The adequacy of CRP complaints for purposes of exhaustion is additionally demonstrated when, as is the case here, the SEA has been presented with and previously rejected CRP complaints raising the same challenges alleged in the lawsuit. *See Student A v. Berkeley Unified Sch. Dist.*, No. 17-cv-02510-JST, 2017 WL 4551514, at * 4 (N.D. Cal. Oct. 12, 2017). In their CRP complaints, Named Plaintiffs B.M. and J.N. alleged that ODE violated the IDEA by failing to provide the supervision and monitoring needed—including failing to provide their districts access to necessary supports, services, and resources—to ensure that they and others in their districts received FAPE. *See* Ex. 3 at 4, 16-19; Ex. 4 at 6, 17-18. ODE resolved those complaints by determining that the students had been denied FAPE due to their shortened school days, but then disclaimed its own responsibility to supervise, monitor, and ensure compliance with the IDEA. Ex. 3 at 3, 13-15, 19; Ex. 4 at 16-18. ODE reached that conclusion by claiming that ODE was unaware—or in B.M.'s case, had only "slight" knowledge—of the situations until the complaints were filed. *Id.* In B.M.'s case, ODE acknowledged "[t]he limitations of [its] routine monitoring modalities," Ex. 3 at 17, and, in both cases, asserted that its oversight of districts' self-assessments and its collection of data on certain indicators had failed to notify it of the districts' noncompliance, *see id.* at 17, 19; Ex. 4 at 17-18. Nonetheless, because ODE found that its admittedly limited supervision and monitoring procedures did not effectively notify it of the noncompliance prior to the complaints, ODE concluded that it had lacked sufficient opportunity to compel the districts' compliance, and thus did not substantiate the allegations

against itself.  *See* Ex. 3 at 17-19; Ex. 4 at 17-18.  ODE's rejection of these claims in the CRP

complaints additionally demonstrates the futility of further exhaustion.

ODE has thus been on notice of this problem and had multiple opportunities to consider it

in specific fact situations.  It has nevertheless failed to address or further investigate the scope of

the alleged problem through its monitoring and supervision authority.  Requiring further

exhaustion would be futile.

**2. Exhaustion Is Also Excused Under the IDEA Because ODE Was Repeatedly Put on Notice About the Alleged Violations Through Various Methods and the Alleged Violations Involve Formal and Informal Policies That Cannot and Need Not Be Remedied Through the IDEA's Administrative Processes.**

Exhaustion through a due process hearing is not required when "the agency has adopted a

policy or pursued a practice of general applicability that is contrary to the law" or when the

administrative process would "offer inadequate relief."  *N.D. v. Hawaii Dep't of Educ.,* 600 F.3d

1104, 1110 (9th Cir. 2010) (citing *Doe v. Arizona Dep't of Educ.*, 111 F.3d 678, 681 (9th Cir.

1997)).  There is no strict formula in determining when these exceptions apply.  Instead, a court

must assess "whether pursuit of administrative remedies under the facts of a given case will

further the general purposes of exhaustion and the congressional intent behind the administrative

scheme."  *Hoeft*, 967 F.2d at 1303.  Those purposes include: (1) giving notice of an alleged

violation of the IDEA so that the state can have the opportunity to correct any violations; and

(2) providing an opportunity for educational experts to find facts needed to determine how to

provide individualized special education and related services to a particular student.  *See*

*Christopher S.*, 384 F.3d at 1209, 1211.

District courts in this Circuit have consistently held that exhaustion is excused for IDEA

challenges to the SEA's actions and inactions with respect to monitoring, supervising, and

ensuring FAPE.  *See Everett H. v. Dry Creek Joint Elem. Sch. Dist.*, 5 F. Supp. 3d 1184, 1192-94

(E.D. Cal. 2014); *Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ.*, No. 2:11-cv-3471, 2013 WL 1326301, at *9 (E.D. Cal. Mar. 29, 2013); *C.O. v. Portland Pub. Schs*., No. CV05-558-HU, No. 15-01715-HU, 2006 WL 8458915, at *7 (D. Or. Nov. 7, 2006) (Hubel, M.J.); *Emma C. v. Eastin,* 985 F. Supp. 940, 942-43 (N.D. Cal. 1997) (incorporating its earlier unpublished opinion available at 26 IDELR 1279 (Ex. 5) finding exhaustion excused).[3]  These courts correctly decided that requiring exhaustion of such claims through a due process hearing furthers none of the purposes underlying IDEA exhaustion.  The same conclusion is warranted here.

   *a.   ODE has been on notice of the IDEA violations alleged in this case for years.*

   In addition to Plaintiffs' due process and CRP complaints, discussed in Part III.A.1, above, ODE has been repeatedly put on notice from multiple sources that LEAs' use of shortened school days warranted at least further investigation by ODE and likely additional monitoring and supervision of LEAs regarding their practices.  Defendants admit that "just under 13 percent" of its 282 final orders between 2008 and 2019 on CRP complaints involved "alleged improper use of abbreviated school days" and "16 allegations were substantiated."  Answer ¶ 41. Among the additional notices to ODE that shortened school days required ODE's further attention were:

   (1) in 2018, the Oregon Association of Education Service Districts, a statewide association of the education service districts required by law to assist and report to ODE, *see*

---

[3] The same is true outside this Circuit.  *See J.M. v. Tennessee Dep't of Educ.*, 358 F. Supp. 3d 736, 752 (M.D. Tenn. 2018); *N.S. v. Tennessee Dep't of Educ.*, No. 3:16-cv-0610, 2016 WL 3763264, at *8-11 (M.D. Tenn. July 14, 2016); *W.H. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996, at *4-6 (M.D. Tenn. Jan. 20, 2016); *New Jersey Prot. & Advocacy, Inc. v. New Jersey Dep't of Educ.*, 563 F. Supp. 2d 474, 486-88 (D.N.J. 2008); *Blunt v. Lower Merion Sch. Dist.,* 559 F. Supp. 2d 548, 560 (E.D. Pa. 2008); *A.A. v. Bd. of Educ.,* 196 F. Supp. 2d 259, 262-63 (E.D.N.Y. 2002); *Gaskin v. Pennsylvania,* No. CIV. A. 94-4048, 1995 WL 154801, at *5 (E.D. Pa. Mar. 30, 1995).

O.A.R § 581-024-0208, called for ODE to establish a commission on the "role/impact of reduced school days/hours" for students with disability-related behaviors that would determine, among other factors, "[h]ow many students are involved," "[l]ength of exclusions from the classroom," "[b]ehaviors resulting in exclusion decisions," and "[a]lternatives to exclusion," and would then make recommendations to "address needs identified by the Commission," including "[o]n-site training" and "[d]irect support for staff," Ex. 6;

(2) in 2018, the Oregon Safe and Effective Schools for ALL Students Advisory Committee, one of ODE's own advisory committees, recommended robust data collection and reporting "including specific data about children . . . put on an abbreviated school day," Ex. 7 at 11;

(3) the topic of "abbreviated school days" has "come up during" meetings of ODE's "dispute resolution committee," Answer ¶ 9; *see* Declaration of Candace Pelt ¶ 18.g (Dkt. No. 95) (declaration submitted by Defendants describing role of Dispute Resolution Committee);

(4) state agency representatives met with local stakeholders about the issue in June, August, and September of 2018, Answer ¶ 60;

(5) parents, advocates, and even a representative of another state agency have continued to report concerns about the use of shortened school days to ODE since the passage of Senate Bill 263 in 2017, *see*, *e.g.*, Ex. 8 at 2 (May 22, 2018 email from advisory body member); Ex. 9 (Sept. 13, 2018 email from court appointed special advocate); Ex. 10 at 15 (Legal Update 2017-2018 from Elliot Field regarding SB 263 stating that, while in the Department's view the administrative complaints were not pervasive, "the issue did arise in 2018 with calls to the Department and some state complaint investigations"); Ex. 11 at 1 (Mar. 9, 2019 email describing observation from advisory group to Oregon's Office of Developmental Disability

Services that "a number of our children [with intellectual and/or developmental disabilities] are being placed on shortened school days, or receiving 1 to 2 hours of tutoring at home"); Ex. 12 (Sept. 3, 2019 email from parent); and

(6) counsel for Plaintiffs notified Defendants by letter prior to the filing of this lawsuit, Ex. 13.

Given the number and variety of notices about the alleged misuse of shortened school days that were provided to Defendants, this case is starkly distinguishable from *Doe v. Arizona Department of Education*, where the SEA was unaware of its alleged noncompliance until the filing of the lawsuit. 111 F.3d 678, 682 (9th Cir. 1997). Nor is this a situation where Plaintiffs and ODE "aren't at odds over issues of law or policy," and the only question is whether "the education at the [school] meets the individual needs of each disabled youth." *Id.* at 682-83. As discussed in more detail in Part III.B.1, below, *infra* pp. 15-16, Defendants' Affirmative Defenses assert their general view that they have no legal responsibility to Plaintiffs other than to adjudicate any relevant complaints brought against their school districts. Having had multiple opportunities to correct the alleged deficiencies in the State's supervision and monitoring system that Plaintiffs and others have identified, Defendants have simply chosen not to. *See D.L. v. District of Columbia*, 450 F. Supp. 2d 11, 17-19 (D.D.C. 2006) ("DCPS has received notice repeatedly about its Child Find failures. Nevertheless, defendants have failed to take corrective action. The Court therefore concludes that administrative remedies would be inadequate in this case."); *cf. Hoeft*, 967 F.2d at 1307 n.7 ("Where a state policy is challenged, allowing the state an opportunity to correct its own errors by requiring exhaustion may not be as weighty a consideration.").

    *b. The legality of ODE's practices and policies can be assessed without revisiting individual IEPs.*

When the alleged IDEA violations constitute a "blanket policy" that was "made outside of the IEP process," *Christopher S.*, 384 F.3d at 1212-13, there is no purpose in requiring an administrative hearing to find facts about the individualized special education and related services of a particular student "because 'agency expertise and an administrative record are theoretically unnecessary in resolving the issue at hand,'" *id.* at 1211 (citing *Hoeft*, 967 F.2d at 1305). Here, where the only defendants in the case represent the State, "[t]he plaintiffs are challenging practices that occur across the . . . state at a meta-level, practices that are removed from the local-level evaluation of students' actual abilities and determination of services needed." *W.H. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996, at *5 (M.D. Tenn. Jan. 20, 2016).

It is true that, as in any case, assessing a legal challenge will require consideration of the facts and context, *e.g.*, "the basis of the blanket decision made in this case." *Christopher S.*, 384 F.3d at 1212 n.5. But assessing the legal challenge against Defendants for their own blanket decisions about how to respond (or not respond) to the issue of shortened school days will not require the court to determine the propriety of any "individualized decisions [that] were made on a case-by-case basis" by local school districts, *id.* at 1211, particularly where ODE has already found that two Named Plaintiffs were denied FAPE due to their shortened school days. *See* Exs. 3, 4. *See Hoeft*, 967 F.2d at 1306-07 & n.6 (even though plaintiffs would need to prove existence of "informal" policies, when the determination of whether those policies comply with the IDEA involves a "purely legal question," challenges would not require exhaustion if the agency had been given notice and an opportunity to fix the problem). "The plaintiffs are not asking the court to conduct a thorough review of all aspects of the plaintiffs' educational needs,"

but rather, to assess "the very pointed question of whether—in meeting those needs—particular systemic practices" caused them to be denied FAPE in the LRE and subjected to discrimination. *W.H.*, 2016 WL 236996, at *5. The facts needed to assess Defendants' compliance with the IDEA would not be more fully developed through any due process hearings. *See J.M. v. Tennessee Dep't of Educ.*, 358 F. Supp. 3d 736, 752 (M.D. Tenn. 2018) ("Such procedures, however, would have been ill-suited to the issues of state-level culpability and systemic failures underlying their surviving claims.").

     *c.  The remedies required to redress the IDEA violations cannot be granted in the administrative proceeding.*

As a general matter, complaints that ODE has failed to "exercise effective oversight of [a school district's] policies, practices, and procedures" simply "cannot be remedied through the IDEA's administrative procedures and remedies." *C.O. v. Portland Pub. Sch.*, No. 05-1715-HU, 2006 WL 8458915, at *7 (D. Or. Nov. 7, 2006) (Hubel, M.J.). This is because there is nothing that "suggest[s] that the conduct plaintiff complains of by ODE and the Superintendent of Public Instruction can be redressed through administrative procedures conducted by employees of the ODE" or "that a state hearings officer appointed by the ODE has the authority to order [the Superintendent of Public Instruction] and the ODE to change that conduct." *Id.; see also Gaskin*, 1995 WL 154801, at *5 ("It is clear that no hearing officer or administrative appeals board has the power to grant [plaintiffs] the relief they seek, i.e., to require the Pennsylvania Department of Education to monitor whether local school districts comply with the IDEA."). This is particularly so when the remedy will require changes to multiple components of Defendants' monitoring and supervision system, such as its system for collecting and analyzing data.

More specifically, bringing ODE into compliance with its obligations will likely require additional staff and resources that cannot be ordered by an ALJ. In *Kerr Center Parents Ass'n v.*

*Charles*, 897 F.2d 1463, 1470 (9th Cir. 1990), the Ninth Circuit found exhaustion of an IDEA

claim against ODE was excused because the remedy would have required spending more funds

than the legislature had appropriated, which is not a problem "which could have been effectively

addressed through the administrative process." The same is true in this case. *See* Transcript of

Oral Argument at 59-60 (Nov. 16, 2020) (Dkt. No. 114) (counsel for Defendants asserting that

one potential remedy they identified, creating a statewide IEP system, "would require

legislation" and "would require money").

Although not every class action for injunctive relief is excused from exhaustion, when a

claim "challenge[s] a Departmental policy that cannot be changed, so far as [the named plaintiff]

and other class members are concerned, absent structural relief that only a court can order,"

exhaustion is excused. *Doe*, 111 F.3d at 683; *see also Hoeft,* 967 F.2d at 1305 ("[I]n many of

these cases, the challenged policies or practices are enforced at the highest administrative level,

so that the only meaningful remedy is through the courts."). Such is the case here.

### 3. Exhaustion Is Not Required For Plaintiffs' ADA and Section 504 Claims.

If, as Plaintiffs show above in Parts III.A.1 and A.2, the IDEA's exhaustion requirement

was either complied with or excused, then Plaintiffs' ADA and Section 504 claims are also not

barred by exhaustion, and no further analysis is required. But even if the Court finds that

Plaintiffs' IDEA claims are barred by failure to exhaust, Plaintiffs' ADA and Section 504 claims

are not barred because the IDEA's exhaustion requirement does not apply to those claims.

In *D.D. v. Los Angeles Unified School District*, 984 F.3d 773 (9th Cir. 2020), the Ninth

Circuit followed the path laid out by the Supreme Court in *Fry v. Napoleon Community Schools*,

137 S. Ct. 743 (2017), to determine whether the "crux," or gravamen, of the student plaintiff's

ADA claim would trigger the IDEA's exhaustion requirement. Among other things, D.D.

alleged that the school required his parents to either pick him up from school when he engaged in

disruptive behavior, or to provide him behavioral supports in the classroom themselves.  *Id.* at

779.  The panel reasoned that the crux of D.D.'s claims were "exclusion from the classroom" and

resulting "denial of equal access" to public education, *id.* at 787, 791 n.16, such that D.D. was

"seeking to enforce the ADA's 'promise [of] non-discriminatory access to public institutions,'"

rather than the IDEA's guarantee of special education, *id.* at 791 (citing *Fry*, 137 S. Ct. at 756).

As such, exhaustion was not required.  *Id*.  *See also McIntyre*, 976 F.3d at 915.

The same is true of the individual ADA and Section 504 claims here.  *See McCarthy v.

Scottsdale Unified Sch. Dist. No. 48*, 409 F. Supp. 3d 789, 810 (D. Ariz. 2019) (*Fry* suggests

analysis of individual claims).  Plaintiffs' ADA and Section 504 claims allege that Defendants'

conduct unnecessarily separates them from their non-disabled peers, sending a "clear and

discriminatory message" that they are unwelcome in their schools.  Compl. ¶¶ 4, 15, 43, 45, 51,

139 (citing, *inter alia*, *Olmstead v. L.C.*, 527 U.S. 581 (1999)).  The gravamen of these claims

lies in "the 'stigmatization and deprivation of opportunities for enriching interaction with fellow

students.'"  *Georgia Advocacy Office v. Georgia*, 447 F. Supp. 3d 1311, 1325 (N.D. Ga. 2020)

(quoting *J.S. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017)); *see also United

States v. Georgia*, 461 F. Supp. 3d 1315, 1325 (N.D. Ga. 2020); *G.M. ex rel. Mason v. Lincoln

Cty. Sch. Dist.*, No. 6:16-CV-01739-JR, 2017 WL 2804996, at *4 (D. Or. Apr. 21, 2017).

Thus, should the Court reach this issue, exhaustion for Plaintiffs' ADA and Section 504

claims is not required, even if the Court finds the IDEA claims are barred for failure to exhaust.

## B. PLAINTIFFS HAVE STATED A CLAIM UNDER THE IDEA, ADA, AND SECTION 504.

Defendants assert in their First Affirmative Defense that "[t]he complaint fails to state a claim because the allegations concern the delivery of special education services to individual students which is the responsibility of the local education agency under the IDEA." Answer ¶ 75.[4] Plaintiffs seek judgment as a matter of law on the merits of this defense and a ruling that the Complaint sufficiently alleges facts that constitute a cause of action under the IDEA. Plaintiffs also seek a judgment as a matter of law that the Complaint sufficiently alleges facts that state a claim under the ADA and Section 504. Summary judgment on this pure question of law is appropriate under Rule 56. *See DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*, 868 F. Supp. 2d 1042, 1059-60 (D. Or. 2011) (Aiken, J.) (dismissing an affirmative defense of failure to state a cause of action and granting the plaintiff's motion for partial summary judgment upon holding that, as a matter of law, the plaintiff properly stated a claim).

### 1. Plaintiffs State a Claim Under The IDEA That Defendants Have Failed To Ensure That the LEAs Under Their Supervision Provide FAPE.

Plaintiffs seek judgment as a matter of law that the Complaint states a claim against Defendants under the IDEA. As the Ninth Circuit has explained, "the states have primary responsibility for ensuring that local educational agencies comply with the requirements of the IDEA," *Hoeft*, 967 F.2d at 1303, meaning that, "in this case the ODE[] has the ultimate responsibility for assuring that all handicapped children have the right to a free appropriate public education," *Kerr*, 897 F.2d at 1470. As the Court has already held, this is so "regardless of the actions of the districts and the parents." Op. and Order at 26. *See John T. v. Iowa Dep't of Educ.*, 258 F.3d 860, 864 (8th Cir. 2001) ("Indeed, several circuits have held State Agencies

---

[4] The Third Affirmative Defense also asserts Plaintiffs lack standing on this basis. Answer ¶ 78.

liable when they have failed to ensure Local Agencies' implementation of IDEA's requirements."); *St. Tammany Parish Sch. Bd. v. Louisiana*, 142 F.3d 776, 784 (5th Cir. 1998) ("Therefore, it seems clear that a [state educational agency] may be held responsible if it fails to comply with its duty to assure that IDEA's substantive requirements are implemented.") (internal citations omitted); *Gadsby v. Grasmick*, 109 F.3d 940, 953 (4th Cir. 1997) (holding the SEA "may be held liable for the state's failure to assure compliance with IDEA"). *See also* Ex. 14 at 5 (enforcement letter from the U.S. Department of Education holding the Texas SEA responsible for failing to ensure FAPE due to the SEA's "failure to exercise its general supervisory responsibility to identify and correct noncompliance related to [LEAs'] implementation of [the IDEA's] child find requirements").

  a. *Plaintiffs state a claim against a SEA under the IDEA if the SEA fails to ensure that school districts are in compliance.*

 "Even though the State may have satisfied its direct duties, it is essentially responsible for the actions taken by the local educational agency." *Straube v. Florida Union Free Sch. Dist.*, 801 F. Supp. 1164, 1179 (S.D.N.Y. 1992). This is because "[t]he IDEA imposes on the state an overarching responsibility to ensure that the rights created by the statute are protected, regardless of the actions of local school districts." *Cordero v. Penn. Dep't of Educ.*, 795 F. Supp. 1352, 1362 (M.D. Pa. 1992). "The state must assure that *in fact* the requirements of the IDEA are being fulfilled," thus "the crux of the state's liability" is "to ensure that the systems it put in place are running properly and that if they are not, to correct them." *Id.* (emphasis added).

 Nor is the State's liability limited to those circumstances, *see* 20 U.S.C. § 1413(g); *Doe by Gonzales v. Maher*, 793 F.2d 1470, 1492 (9th Cir. 1986), *aff'd by an equally divided Court*, 484 U.S. 305, 329 (1988), where the SEA is required but fails to step in and directly provide students with FAPE because the LEA is unable or unwilling to do so. *See S.P. v. Knox Cty. Bd.*

*of Educ.*, 329 F. Supp. 3d 584, 594 (E.D. Tenn. 2018) ("[T]he court finds [the SEA's] argument

that it can only be liable for failing to provide a FAPE is without merit.").  Rather, the SEA is

liable where a school district fails to comply with the IDEA, *see Corey H. v. Bd. of Educ. of City*

*of Chicago*, 995 F. Supp. 900, 913 (N.D. Ill. 1998), including but not limited to where a policy

from the SEA or the SEA's inactions lead to the denial of FAPE, *see J.M. v. Tennessee Dep't of*

*Educ.*, 358 F. Supp. 3d 736, 748 (M.D. Tenn. 2018); *Kalliope R. v. N.Y. State Dep't of Educ.*,

827 F. Supp. 2d 130, 141 n.3 (E.D.N.Y. 2010).  The SEA is also liable for failing to ensure that

all LEAs comply with the IDEA, and thus for failing to make FAPE available to all eligible

children, if there is a pattern of practices among LEAs that violate the law.  *See* Ex. 14 at 1.

However, "[t]he violation of even one child's rights under the Act is sufficient to visit liability on

the state."  *Cordero*, 795 F. Supp. at 1363.

There is no dispute in this case that ODE is the SEA for Oregon, under the leadership of

Defendant Gill and Defendant Brown.  *See* Defs.' Mot. to Dismiss 2-3 (ECF No. 33); Answer

¶¶ 21-22.  The Complaint alleges that Defendants have failed to ensure that the LEAs under their

supervision comply with their obligations to provide FAPE.  *See e.g.* Compl. ¶¶ 8, 14, 27, 28, 37-

41, 112-29.  Consistent with this Court's prior holding that ODE is ultimately responsible for

ensuring that all qualified children with disabilities receive a FAPE—regardless of the actions of

LEAs, Op. and Order at 26—and with the case law described above, Plaintiffs are entitled to

judgment as a matter of law that the Complaint states a claim upon which relief can be granted

under the IDEA.

     b.   *Plaintiffs state a claim against a SEA under the IDEA if the SEA has failed to*
         *effectively fulfill its own monitoring and enforcement duties.*

Among the ways in which a state may fail to ensure compliance with IDEA is when the

SEA does not adequately monitor and enforce compliance with the statute.  *See Maher*, 793 F.2d

at 1492 (holding that a "state's monitoring procedure was demonstrably insufficient to protect

the rights of handicapped students," notwithstanding the fact that "the [federal] executive branch

approved the state's overall plan for handicapped children").  *See also Jackson v. Pine Bluff Sch.*

*Dist.*, No. 4:16CV00301-JM-JTR, 2017 WL 2296956 (E.D. Ark. May 25, 2017) (adopting in its

entirety a magistrate judge's report and recommendation, 2017 WL 2296896, at *6-7 (E.D. Ark.

May 12, 2017), which concluded that plaintiff stated a plausible claim for relief where

allegations against SEA included that the SEA failed to appropriately monitor and supervise an

LEA and a private school); *P.W. v. Delaware Valley Sch. Dist.*, No. 3:09cv480, 2009 WL

5215397, at *5 (M.D. Pa. Dec. 29, 2009) (plaintiff sufficiently alleged that the SEA "failed to

establish 'procedures to ensure that it complies with the monitoring and enforcement

requirements'").

As this Court previously explained, "although school districts formulate and implement

IEPs, the State has an affirmative statutory duty to monitor, investigate, and enforce the IDEA

requirements and to assist the districts to ensure that they comply with state and federal law."

Op. and Order at 23-24.  Thus, plaintiffs state a claim where the SEA "has failed generally to

monitor, investigate, and enforce the IDEA."  *Morgan Hill*, 2013 WL 1326301 at *10; *Corey H.*,

995 F. Supp. at 915 (IDEA requires SEA "to ensure LRE compliance through an effective

monitoring plan.  Thus, one must look to the results of the [SEA's] monitoring efforts to

determine whether the [SEA] is in compliance with the IDEA.").[5]

As part of their statutory monitoring duties, states are required to use such data indicators

"as are needed to adequately measure performance" in specified areas, including the "[p]rovision

---

[5] The U.S. Department of Education has also held a SEA liable for a policy that incentivized
LEAs to take actions with the goal of being subject to less monitoring, which contributed to a
pattern of noncompliance.  Ex. 14 at 2-3.

of a free appropriate public education in the least restrictive environment." 20 U.S.C.

§ 1416(a)(3); *see* 34 C.F.R. § 300.600(d)(1). The SEA may therefore be held liable for failing to

collect data that is needed to effectively monitor LEAs' compliance or for failing to adequately

analyze that data to determine which districts need further monitoring or corrective action. *See*

*Morgan Hill*, 2013 WL 1326301, at *11 (plaintiff stated a plausible claim for relief by alleging

that the SEA "fails to solicit data effectively from parents" and "that not all the information

collected is utilized" by the SEA). "Obviously, the state cannot monitor school districts without

gathering information about what they are doing." *Emma C. v. Torlakson*, No. 96-CV-04179-

VC, 2018 WL 3956310, at *2 (N.D. Cal. Aug. 17, 2018). Determining what data a particular

state must collect beyond the mandated federal reporting requirements in order to "adequately

perform its monitoring and enforcement functions" is a "context-specific inquiry." *Id.* at *4-5.

However, the State is out of compliance with federal law "if its failure to collect data on a

statewide basis would likely prevent it from effectively fulfilling its monitoring and enforcement

obligations under the IDEA." *Id.* at *4.

Likewise, plaintiffs may state a claim against the SEA for failing to adequately monitor

and enforce compliance with the IDEA if the State adopts a passive approach to its supervisory

duties that is insufficient to correct noncompliance. "[T]he state's role amounts to more than

creating and publishing some procedures and then waiting for the phone to ring." *Cordero*, 795

F. Supp. at 1362. *See also* Ex. 15 at 4-6 (enforcement letter from the U.S. Department of

Education holding the Virginia SEA responsible for failing to fulfill its general supervisory and

monitoring responsibilities, explaining that "the State's general supervisory and monitoring

responsibilities are broader than [the IDEA's] dispute resolution mechanisms," and that "many

States properly have a practice of responding proactively—through investigation or other

means—outside of the formal dispute resolution mechanisms, when parents or other stakeholders provide credible information alleging noncompliance by an LEA"); *L.L. v. Tennessee Dep't of Educ.*, No. 3:18-cv-00754, 2019 WL 653079, at *4-5 (M.D. Tenn. Feb. 15, 2019) (citing *Cordero*) (rejecting state's motion to dismiss where plaintiffs alleged that the SEA was aware of a segregated school for students with disabilities "but failed to take basic supervisory steps to prevent its being used as a tool for warehousing certain types of disabled students despite their LRE needs, directly resulting in the deprivations that form the basis of the plaintiffs' claims"); *Duane B. v. Chester-Upland Sch. Dist.*, No. Civ. A. 90-0326, 1994 WL 724991, at *9-10 (E.D. Pa. Dec. 29, 1994) ("[T]he Department has abdicated its supervisory responsibility under the Remedial Orders and under the law in favor of the 'gentler' approach of providing mere technical assistance. . . . It has become apparent, however, that the Department's approach of providing mere expertise is insufficient to get the job done, and the Department . . . is not willing to change its ineffective, back-seat approach to see that the District complies with the Remedial Orders.  If the Department does have the resources at its disposal to insure compliance, it is not using them.").

As the Court has recognized, Plaintiffs' Complaint plainly alleges that, notwithstanding the fact that LEAs have their own duties under the IDEA, the State has violated its own "affirmative statutory duty to monitor, investigate, and enforce the IDEA requirements and to assist the districts to ensure that they comply with state and federal law."  Op. and Order at 23-24.  Plaintiffs specifically allege that the State does not collect relevant data regarding shortened school days that is needed to effectively monitor whether LEAs are providing them FAPE in the LRE, that it has a passive approach to its supervisory duties that is insufficient to enforce compliance, and that it fails to provide LEAs with the assistance and supports that they need to

avoid the misuse of shortened school days.  *See* Compl. ¶¶ 115-27.  Consistent with the case law

cited above, Plaintiffs are entitled to judgment as a matter of law that these allegations in the

Complaint additionally state a claim upon which relief can be granted under the IDEA.

2. **Plaintiffs State A Claim Under The ADA and Section 504 That Defendants Have Discriminated Against Children With A Disability Either Directly Or Indirectly Through The Actions Of The LEAs Under Their Supervision.**

Plaintiffs seek judgment as a matter of law that the Complaint states a claim against

Defendants under Title II of the ADA and Section 504.  The two statutes differ primarily about

how coverage is determined: Title II applies to any "public entity," defined to include a state and

its departments, *see* 42 U.S.C. § 12131(1); Section 504 applies to recipients of "Federal financial

assistance," 29 U.S.C. § 794(a), which Defendant ODE admits to being.  Answer ¶ 20; *see* Op.

and Order 12 (ODE is "a public entity covered by Title II and a recipient of federal financial

assistance subject to Section 504").  The substantive standards of the two statutes are "almost

identical" and "courts typically analyze the two provisions together."  *T.B. ex rel. Brenneise v.

San Diego Unified Sch. Dist.*, 806 F.3d 451, 467 (9th Cir. 2015).

The SEA "has an obligation to supervise the local districts to ensure compliance" with

both Title II and Section 504.  *Idaho Migrant Council v. Idaho Bd. of Educ.*, 647 F.2d 69, 71 (9th

Cir. 1981) (so holding with regard to Title VI of Civil Rights Act, which was the model for

Section 504).  This is because "Title II's obligations apply to public entities regardless of how

those entities chose to provide or operate their programs and benefits. . . . The same principle

applies to [Section 504] violations committed by contractors. . . . The law is clear—the State

Defendants may not contract away their obligation to comply with federal discrimination laws."

*Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910 (9th Cir. 2013); *see Armstrong v. Schwarzenegger*,

622 F.3d 1058, 1069 (9th Cir. 2010) (state department of corrections required "to ensure ADA-

compliant conditions for prisoners and parolees being held under its authority," regardless of

whether the state directly provided them housing or arranged for local counties to provide housing); *Armstrong v. Brown*, 732 F.3d 955, 960 (9th Cir. 2013) (explaining that state officials violated ADA by "fail[ing] to assist the counties with the development of appropriate disability-related policies" relating to state prisoners held in county jails; stating that state officials have an "obligation to assist in preventing further violations" in county jails); *Larry P. by Lucille P. v. Riles*, 793 F.2d 969, 980-81 (9th Cir. 1984) (state officials held liable under Section 504 for failing to ensure that IQ tests implemented by local school districts were validated for the specific purpose for which they were used). Thus, if as Plaintiffs allege, Oregon's school districts are violating those statutes, the State may be held legally responsible.

The regulations implementing the ADA and Section 504 confirm this conclusion. For example, in *Emma C. v. Eastin*, the plaintiffs alleged violations of the ADA and Section 504 on the ground that the State had "failed to monitor [a LEA's] compliance with state and federal laws that mandate the provision of a FAPE to all children with disabilities," to adequately investigate complaints regarding that LEA, and to enforce compliance following the SEA's investigations. 985 F. Supp. 940, 948 (N.D. Cal. 1997). As the court explained:

> According to [the] regulations [promulgated under Section 504 and the ADA], a recipient of federal aid "discriminates" on the basis of disability when it aids or perpetuates discrimination by providing significant assistance to another entity that in turn discriminates. 34 C.F.R. § 104.4(b)(1)(v) (Section 504); 28 C.F.R. § 35.130(b)(1)(v) (ADA). A recipient of federal funds also discriminates when it utilizes a method of administration that has the effect of subjecting those with disabilities to discrimination. 34 C.F.R. § 104.4(b)(4) (Section 504); 28 C.F.R. § 35.130(b)(3) (ADA). Plaintiffs' complaint alleges that Ravenswood violates Section 504 and the ADA in a variety of ways, and that the conduct of the State Defendants has perpetuated this discrimination. These allegations of "discrimination," as that term is defined by the Section 504 and ADA regulations, satisfy the liberal federal pleading requirements.

*Id.*

Similarly, the district court in *Jackson v. Pine Bluff School District* adopted the recommendation of the magistrate judge that the plaintiffs stated a claim under Section 504 against the SEA where the complaint alleged that, among other allegations, the SEA: refused to modify policies, practices and procedures that resulted in the student being discriminated against; refused to monitor whether a private school providing services to a student provided a FAPE in compliance with the IDEA; and "refuse[d] to take any affirmative action to investigate, monitor, and correct the 'systemic and discriminatory' violations, resulting in continued segregation of students with severe disabilities [and] depriving them of a FAPE."  2017 WL 2296896, at *12. As these cases reveal, in addition to its own conduct that directly discriminates against students with disabilities, a State may be held liable under the ADA and Section 504 when it aids or perpetuates discriminatory conduct by LEAs.

In this case, the Complaint clearly alleges that Oregon LEAs discriminate against the children in the putative Plaintiff class due to their disability-related behaviors by depriving them of instructional time that they need and that other students receive and by needlessly excluding them from learning alongside their peers.  *See e.g.* Compl. ¶¶ 1-6, 48-52.  As discussed above, *see supra* p. 15, the forms of discrimination alleged in this matter include a violation of the ADA's and Section 504's "integration mandate" under *Olmstead*.  *See id.*  ¶¶ 1-6, 12-14, 48-53, 105, 112-29.  The Complaint further alleges that, despite being on notice of the issue for years, the State has perpetuated this discrimination by failing to adequately monitor LEA compliance with the law, enforce compliance beyond the implementation of its complaint system, and provide needed technical assistance and supports to prevent noncompliance. *See e.g. id.* ¶¶ 12-14, 112-29.  Furthermore, Plaintiffs allege that ODE's failure to modify its own policies, practices, and procedures—such as its policy of refusing to collect and analyze data on the use of

shortened school days and its statewide funding formula that incentivizes their usage—place the

putative class members at serious risk of unnecessary segregation and isolation. *See id.* ¶ 53.

Consistent with the case law above, Plaintiffs are entitled to judgment as a matter of law that the

Complaint states a claim against Defendants upon which relief can be granted under the ADA

and Section 504.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant partial

summary judgment to Plaintiffs pursuant to Fed. R. Civ. P. 56 on the merits of Defendants' First,

Second, and Third Affirmative Defenses because Plaintiffs' claims are not barred by the IDEA's

exhaustion requirement and because the Complaint sufficiently alleges facts that state a claim

under the IDEA, ADA, and Section 504.

Respectfully submitted,

  /s/ Thomas Stenson
Thomas Stenson, OR No. 152894
tstenson@droregon.org
Joel Greenberg, OR No. 943233
jgreenberg@droregon.org
Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205-2748
(503) 243-2081

Seth M. Galanter, D.C. No. 479919*
sgalanter@youthlaw.org
Alice Y. Abrokwa, D.C. No. 1023510*
aabrokwa@youthlaw.org
National Center for Youth Law
1212 Broadway, Suite 600
Oakland, CA 94612
(202) 868-4786


*Admitted pro hac vice

Dated: January 29, 2021

Selene Almazan-Altobelli, MD No. 10506*
selene@copaa.org
Council of Parent Attorneys and Advocates
8 Market Place, Suite 300
Baltimore, MD 21202-4113
(844) 426-7224 ext. 702

Ira A. Burnim, D.C. No. 406154*
irab@bazelon.org
Lewis Bossing, D.C. No. 984609*
lewisb@bazelon.org
Bazelon Center for Mental Health Law
1090 Vermont Avenue NW, Suite 220
Washington, DC 20005-4900
(202) 467-5730

Michael Folger, NY No. 5151337*
michael.folger@probonolaw.com
1 Manhattan West
New York, NY 10001
(212) 735-3000

*Attorneys for Plaintiffs*