IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

J.N., et al.,

        Plaintiffs,

    vs.

OREGON DEPARTMENT OF
EDUCATION, et al.,

        Defendants.

Case No. 6:19-cv-00096-AA
**OPINION AND ORDER**

AIKEN, District Judge:

    Plaintiffs in this putative class action are four Oregon public school children with disabilities and a non-profit advocacy group.  They allege that a lack of state-level monitoring, enforcement, and assistance for school districts has led to a statewide pattern among school districts of misusing shortened school day schedules for students with disability-related behaviors, which violates their rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and

Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794. Now before the Court is plaintiffs' Motion for Class Certification (doc. 64). For the reasons discussed below, plaintiffs' motion is GRANTED.

## BACKGROUND

Plaintiffs E.O., J.V., B.M., J.N., Oregon public school children with disabilities, and the Council of Parent Attorneys and Advocates, Inc., ("COPAA"), bring this putative class action against the Oregon Department of Education ("ODE"), ODE Director and Assistant Superintendent of Public Instruction Colt Gill, and Oregon Governor and Superintendent of Public Instruction Kate Brown, for failure to provide a free appropriate public education ("FAPE") in the least restrictive environment ("LRE") under the IDEA and for failure to provide an education free from discrimination under the ADA and Section 504.

Plaintiffs allege that their school districts are unlawfully shortening their school days without first providing the supports and services that could enable them to attend a full school day, which unnecessarily segregates them from their nondisabled peers and deprives them of educational services they need and to which they are entitled under the IDEA, ADA, and Section 504. They also allege that school districts throughout Oregon engage in this practice and that ODE violates state and federal law by failing to address the districts' unlawful imposition of shortened school days for students with disability-related behaviors. Specifically, plaintiffs allege that ODE has failed to adequately (1) monitor school districts' use of shortened school days, (2) proactively enforce federal and state law against districts who use shortened

school days unlawfully, and (3) provide technical support and resources to districts to prevent them from misusing shortened school days. They seek declaratory and injunctive relief that would require ODE to effectively monitor the districts, correct the misuse of shortened school days, and provide the districts technical and professional assistance to ensure that all eligible Oregon students with disabilities receive a FAPE in the LRE and are not discriminated against on the basis of disability.

Plaintiffs filed this action in January 2019. In early September 2020, the Court denied defendants' Motion to Dismiss (doc. 33) for lack of standing. Doc. 104. Plaintiffs now move to certify their proposed class under Fed. R. Civ. P. 23(b)(2). Mot. for Class Cert. at 5 (doc. 64). The Court heard oral argument on the motion on November 16, 2020. Doc. 113.

## STANDARDS

Federal Rule of Civil Procedure 23 governs class certification. "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks omitted). A party seeking class certification must satisfy each of the four prerequisites of Rule 23(a) and at least one requirement of the provisions of Rule 23(b). Under Rule 23(a), a district court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In other words, the proposed class must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

After showing that each of the Rule 23(a) prerequisites is satisfied, the party seeking class certification must then establish "through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Here, plaintiffs seek class certification under Rule 23(b)(2), which requires them to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Rule 23 sets forth more than a "mere pleading standard." *Wal-Mart*, 564 U.S. at 350. A party seeking class certification "has the burden of affirmatively demonstrating" that each requirement of Rule 23 is satisfied. *Mazza*, 666 F.3d at 588. That is, the movant must be "prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). Though Rule 23 requires "rigorous analysis" by district courts, *id.*, it also provides courts with broader discretion to certify a class than to deny certification, *see Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013).

# DISCUSSION

## I.   *Legal Framework*

Before turning to plaintiff's Motion, the Court will review the applicable substantive law.

## A.   *IDEA*

As the Court described in more detail in its Opinion and Order denying defendants' Motion to Dismiss, the IDEA, 20 U.S.C. § 1400 *et seq.*, imposes an affirmative statutory duty on the State to implement policies and procedures to ensure a FAPE in the LRE "to all children with disabilities residing in the State between the ages of 3 and 21, inclusive[.]" 20 U.S.C. §§ 1412(a)(1)(A), (a)(5). A FAPE requires not only "special education"—instruction specially designed to meet the unique needs of a child with disability—but also "related services"—developmental, corrective, and other support services as may be required to assist a child to benefit from that instruction. 20 U.S.C. §§ 1401(9), (29), (26); *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, __ U.S. __, 137 S. Ct. 988, 993–94 (2017).

A FAPE must be provided in the LRE, which means a general education in a regular classroom environment, to the maximum extent appropriate. 20 U.S.C. § 1412(a)(5)(A). A child may be removed from a classroom "only when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." *Id.*

FAPEs are provided at the district level by means of an individualized education program ("IEP"). IEPs are formulated by a child's IEP team, which

includes a district representative, a child's parents, and special education teacher. 20 U.S.C. §§ 1412(a)(4), 1414(d)(1)(B).[1]  A child's IEP sets out a written plan including both special education and related services that must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances[]"— a "standard [that] is markedly more demanding" than *de minimis* progress.  *Endrew F.*, 137 S. Ct. at 1000–01; 20 U.S.C. § 1414(d).

If a child has disability-related behaviors that may impede that child's or other students' learning, the IEP team must consider "the use of positive behavioral interventions and supports, and other strategies, to address that behavior" including communicative assistive devices and other devices and services that the child may need.  20 U.S.C. § 1414(d)(3)(B).  Accordingly, the district must first conduct a functional behavioral assessment to determine what behaviors need to be addressed and what supports and services might enable that child to attend a full day in a general education classroom.  20 U.S.C. §§ 1415(k)(1)(D)(ii), (F).  It must then formulate a behavioral intervention plan for that child.  20 U.S.C. § 1415(k)(1)(F).

**B.**    ***ADA and Section 504***

Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, are federal anti-discrimination laws that prohibit public entities, 42 U.S.C. § 12132, or programs or activities receiving federal

---

[1]    The Act accords procedural safeguards to children and parents who dispute a child's placement or IEP formulation or implementation.  *See* 20 U.S.C. § 1415(b)(6), (i)(2)(a) (setting forth a due process hearing procedure and providing for appeal in a civil action); 20 U.S.C. § 1415(f), (i)(2)(a) (setting forth a state complaint procedure and providing for appeal in a civil action); 34 C.F.R. § 300.518(a) (describing the "stay-put" guarantee that requires a child to remain in his or her "current educational placement" during any challenge to that child's placement or IEP).

financial assistance, 29 U.S.C. § 794(a), from discriminating on the basis of disability.
Both statutes forbid the denial of a meaningful access to public education and have
been interpreted to require "reasonable modifications" to ensure that access. *See A.G.
v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1206 (9th Cir. 2016)
(stating elements of a claim under Title II or Section 504 and applying to public
education).[2]

### C.    *Oregon's Policies on Abbreviated School Day Law*

The State has implemented policies to respond to concerns that school districts
are misusing shortened school days.  First, in January 2016, ODE issued an
Executive Memorandum to districts that generally discouraged the use of shortened
school days due to student behaviors but noted that "[i]n some very limited
circumstances, it may be appropriate to shorten a day for a student with a disability
who engages in severe behaviors that threaten school safety." *Executive Numbered
Memorandum 009-2015-16 – Reduced School Days*, OR. DEPT. OF EDUC., at 2
(available at https://www.oregon.gov/ode/rules-and-policies/StateRules/Documents
/Executive%20Numbered%20Memorandum%20009-2015-16%20-
%20Reduced%20School%20Days.pdf (last visited Feb. 2. 2021)).  Then, in 2017, the
Oregon Legislature passed a law that establishes each students' "presumptive right"
to the same hours of instruction as other children and prohibits school districts from

---

[2]  The Court analyzes the IDEA, ADA, and Section 504 claims together because systemic
deficiencies that result in unnecessarily shortened school days, as alleged by plaintiffs, violate all three
statutes.  *See, e.g.*, *Christopher S. ex rel. Rita S. v. Stanislaus Cty. Office of Educ.*, 384 F.3d 1205, 1212
(9th Cir. 2004) (holding that a policy of shortened school days for autistic students violates the IDEA,
Title II of the ADA, and Section 504).

unilaterally shortening a student's school day.  *See* ORS 343.161(4)(a)(C), (2).  The law expressly allows school districts to "provide an abbreviated school day program"[3] to a student if certain circumstances are met.  *Id.* § 343.161(3).  And, if a student is placed on an abbreviated school day program, then each term the school district must, provide notice to the student's parent, obtain a signed acknowledgment form from the parent, and include in the student's IEP a written statement explaining the reasons for the abbreviated school day program.  *Id.* § 343.161(4).

## II.   *Motion for Class Certification*

Plaintiffs move to certify a proposed class of:

> All students with disabilities aged 3 to 21 residing in Oregon who are eligible for special education and related services under the IDEA and are currently being subject to a shortened school day or are at substantial risk of being subjected to a shortened school day due to their disability-related behaviors.

Mot. for Class Cert.  at 1.  Plaintiffs assert that the proposed class satisfies the prerequisites of Rule 23(a) and that certification is appropriate under Rule 23(b)(2).  Defendants contend that plaintiffs fail to establish numerosity, commonality, and typicality under Rule 23(a) or that class-wide relief is available under Rule 23(b)(2).

### A.   *Numerosity*

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  "The numerosity prerequisite does not impose an absolute requirement on the

---

[3] An "abbreviated school day program" is "any school day during which a student receives instruction or educational services for fewer hours than other students who are in the same grade within the same school."  ORS 343.161(1)(a).

number of individuals comprising the class." *Fox-Quamme v. Health Net Health Plan of Oregon, Inc.,* No. 3:15-CV-01248-BR, 2017 WL 1034202, at *6 (D. Or. Mar. 9, 2017). However, "[i]n this [judicial] district, there is a 'rough rule of thumb' that 40 class members is sufficient to meet the numerosity requirement." *A.F. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474, 480 (D. Or. 2013) (citing *Giles v. St. Charles Health Sys., Inc.,* 294 F.R.D. 585, 590 (D. Or. 2013)); *see also Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.").

In addition to class size, courts consider other factors to determine whether joinder is impracticable, including "the ease of identifying and contacting class members; the geographical spread of class members; and the ability and willingness of individual members to bring claims, as affected by their financial resources, . . . and their fear of retaliation in light of an ongoing relationship with the defendant." *Chastain v. Cam*, No. 3:13-cv-01802-SI, 2016 WL 1572542, at *5 (D. Or. Apr. 19, 2016) (quoting *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, No. CV 12-5080 CRB, 2013 WL 3802807, at *2 (N.D. Cal. July 17, 2013)) (alterations normalized).

Further, when plaintiffs seek only declaratory or injunctive relief, "the numerosity requirement is relaxed and plaintiffs may rely on the reasonable inference arising from plaintiffs' other evidence that the unknown and future members of [the] proposed [class] . . . is sufficient to make joinder impracticable." *Sueoka v. U.S.*, 101 Fed. App'x 649, 653 (9th Cir. 2004); *see also* 5 Moore's Federal

Practice – Civil § 23.22[3] (3d ed. 2020) (noting that where "only injunctive or declaratory relief is sought, some courts have held that the numerosity requirement is relaxed, so that even speculative or conclusory allegations regarding numerosity are sufficient to permit class certification").

Plaintiffs assert that the putative class "consists of at least hundreds of" Oregon students. Mot. for Class Cert. at 6. Defendants argue that "[p]laintiffs' showing with respect to numerosity . . . is plainly deficient," in part because plaintiffs "rel[y] primarily on allegations and not facts." Resp. 5–6 (doc. 93). In doing so, defendants summarily discount plaintiffs' evidence, which establish the following facts related to the likely class size.

In the 2018–2019 school year, ODE reported that 80,436 special education students were enrolled in Oregon schools under the IDEA—5,331 of whom had an "emotional disturbance," 10,191 of whom had autism spectrum disorder, and 14,866 of whom had an "other health impairment," which includes attention deficit disorder and attention deficit hyperactivity disorder. Decl. of Alice Y. Abrokwa ("Abrokwa Decl.") Ex. 1 at 73 (doc. 68); *see also* 34 C.F.R. § 300.8 (defining disability categories). In 2017, Family and Community Together Oregon ("FACT Oregon"), a disability rights advocacy group, reported that it had received 68 unduplicated complaints regarding shortened school days from families of students with disabilities between September 1, 2016 to January 20, 2017. Decl. of Thomas Stenson ("Stenson Decl.") ¶13 (doc. 65). FACT Oregon also received 70 unduplicated complaints about

shortened school days in the six months between July 2018 and January 2019. *Id.*¶¶ 14–16.

Defendants argue that the FACT Oregon reports do not support a numerosity finding here because the complaint calls likely include mere inquiries about shortened school day programs, in addition to complaints about shortened school day programs that were actually imposed. Resp. at 6 n.2. Defendants note that FACT Oregon defines "complaint" as "a call or email seeking 'any support around a shortened day; questions on what constitutes a shortened day; requests for family early pick up; and resources regarding shortened day.'" *Id.* (quoting Stenson Decl. Ex. 1 at 19–20).

Plaintiffs respond that it is reasonable to infer that families contacted FACT Oregon, whether to inquire or complain, either because their child was already on a shortened school day schedule or because they worried their child might be placed (or was at substantial risk of being placed) on a shortened school day schedule. Plaintiffs note that both categories of children are included in the proposed class definition. The Court agrees that this inference is reasonable. Additionally, defendants fail to address plaintiffs' other evidence such as the large number of Oregon special education students and Dr. Albert Greenwood's expert opinion that "there are at least hundreds of students with significant behavior support needs in Oregon public schools who warrant [the same] level of support" needed by named plaintiffs and "[m]any have been placed on shortened school days before their schools implemented

the methods" described in his expert report.  Decl. of Albert William Greenwood, Ph.D. ("Greenwood Decl.") ¶ 4(h) (doc. 66).

Defendants' argument also fails to consider plaintiffs' evidence concerning other factors that make joinder difficult here.  Plaintiffs assert that joinder is impracticable because the putative class members are spread geographically throughout Oregon, many attend schools in rural and small districts, *see* Abrokwa Decl. Exs. 2, 3, and many of their families are unlikely to bring individual claims due to economic limitations, limited availability of counsel, and other barriers such as "lack of knowledge, the unique jargon of special education, and an intimidating process[,]" *see* Decl. of Melody Musgrove ("Musgrove Decl.") ¶ 63 (doc. 67); Abrokwa Decl. Exs. 4, 5, 6.

Plaintiffs have met their burden to show numerosity in this case.  Given the number of Oregon special education students during the 2018–2019 school year; the number of shortened school day contacts received by FACT Oregon from July to January 2019; and Dr. Greenwood's expert opinion, the putative class likely numbers greater than 40, the threshold "rule of thumb."  Further, plaintiffs provide additional evidence that joinder would be impracticable, including the likely geographical dispersion of class members and the reasonable inference that many families would likely find it difficult or impossible to pursue individual litigation.  Plaintiffs are also entitled to the reasonable inference that the number of unknown future class members is sufficient to make joinder impracticable.

### B.    *Commonality*

Under Rule 23(a)(2), a class may be certified only if "there are questions of law or fact common to the class." "Plaintiffs need not show, however, that every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (internal quotation marks omitted and alterations normalized).

Commonality requires a showing that "the class members have suffered the same injury" and "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349–50 (quotation marks omitted). The class claims must "*depend* on a common contention," which means that the common questions asserted by the party seeking class certification must have the capacity to "generate common *answers* apt to drive the resolution of" all class members' claims. *Id.* at 350 (first emphasis added, second emphasis in original).

Thus, "in all class actions, commonality cannot be determined without a precise understanding of the nature of the underlying claims." *Parsons*, 754 F.3d at 676. "To assess whether the putative class members share a common question, the answer to which will resolve an issue that is central to the validity of each one of the class members' claims, [courts] must identify the elements of the class members' case-in-chief." *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 968 (9th Cir. 2019) (alterations normalized).

Here, defendants argue that plaintiffs cannot establish commonality because their claims depend on allegations that the proposed class members "are either currently denied a FAPE or are at risk of denial based on an abbreviated school day program in their IEP." Resp. at 7. They assert that this injury cannot be remedied without consideration of each student's IEP and, thus, individualized circumstances. They contend that "[t]his is the type of common question expressly rejected by the Supreme Court in *Wal-Mart* . . . ." *Id.*

But plaintiffs do not challenge individually-faulty IEPs, they challenge uniformly-applicable state practices that they allege expose them and all class members to a risk of being placed unnecessarily on a shortened school day in violation of the IDEA, ADA, and Section 504. This is more than the bare allegation that the class members "have all suffered a violation of the same provision of law" that the Supreme Court rejected in *Wal-Mart*. *Wal-Mart*, 564 U.S. at 350. Although these laws "can be violated in many different ways," plaintiffs focus on only one way—the misuse of shortened school days.

Moreover, class certification is proper when class members seek to enjoin state defendants from violating their rights through statewide policies and practices of uniform application. *Parsons*, 754 F.3d at 678; *B.K.*, 922 at 968, 976–78. In such cases, there is commonality because the statewide policies and procedures are "the 'glue' that holds the class together," such that their legality "can be properly litigated in a class setting." *B.K.*, 922 F.3d at 969. "[E]ither each of the policies and practices is unlawful as to every [class member] or it is not"—"[t]hat injury does not require

[the court] to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination." *Parsons*, 754 F.3d at 678.

When the class claims are statutory, plaintiffs can allege common questions based on statewide policies or practices that violate a relevant statute in two ways. They can allege that every class member is subjected to the same statewide policy or practice that is "facially invalid, such as by directly contravening" the relevant statute. *B.K.*, 922 F.3d at 976–77. Or they can allege that a statewide policy or practice "expose[s] every [class member] to a significant risk of an imminent future" statutory "violation." *Id.* at 977. Under this second theory, plaintiffs may challenge the "violation before it has taken place," meaning plaintiffs do not need to show that each potential class member personally suffered a violation, "so long as the requisite 'significant risk' exists, so commonality may exist based on a finding that all class members are subjected to the same risk." *Id.* This is "because a plaintiff can have standing to challenge a statutory violation before the violation has occurred." *Id.* at 976.

Here, plaintiffs' claims are premised on the second theory. Plaintiffs have identified six policies and practices, which they allege create a significant uniform risk that class members will be subjected to unnecessary shortened school days due to their disability-related behaviors in violation of the IDEA, ADA, and Section 504. These policies and practices are: (1) failing to "implement a statewide data collection and monitoring system that would enable it to proactively identify violations of the

class members' rights;" (2) failing to "investigate, monitor, or correct violations of the class members' rights under federal law absent an administrative complaint;" (3) failing to "investigate, monitor, or correct violations of its own laws and policies concerning reduced school days and instructional time;" (4) failing to "provide needed technical assistance and resources to local school districts to prevent future noncompliance; (5) "ODE's written policy concerning reduced school days[,]" ODE Executive Numbered Memorandum 009-2015-16, and (6) "ODE's administration of the State's school funding formula[,]" OAR 581-023-0006(7)(b)(D).  Mot. for Class Cert. at 13–14.

Plaintiffs allege that these policies and practices demonstrate defendants' failure to take effective action to identify, correct, and prevent the systemic use of shortened school days by Oregon school district for children with disability-related behaviors and that some, like the school funding formula, incentivize the use of shortened school days.  Compl. ¶¶ 36, 53 (doc. 1).  They allege the systemic misuse of shortened school days has deprived named plaintiffs and class members of FAPE by limiting their instructional time, causing them to fall behind academically and miss out on critical social opportunities in which they can practice appropriate behaviors. They further allege that the systemic misuse of shortened school days violated the LRE requirement and subjected them to disability-based discrimination by segregating them from general education classrooms and nondisabled students when they could learn in such settings if given the appropriate services and supports.  *Id.*

¶¶ 5–7, 36, 114. They also allege that these policies and practices put plaintiffs and the class members at risk of being subjected to such harms in the future. *Id.* ¶ 36.

Plaintiffs support their allegations of the existence of these state policies and practices with evidence, including exhibits from various sources. Plaintiffs support their allegations that these policies and practices expose the members of the proposed class to a risk of denial of FAPE in the LRE and disability-based discrimination with declarations and reports from two experts: Albert William Greenwood, Ph.D., and Melody Musgrove, Ed.D.

Dr. Greenwood is a licensed child psychologist with over three decades' experience working with schools and families in Oregon to support children with disabilities, including those with significant behavior support needs, in school. Greenwood Decl. ¶ 2. For the past 25 years, his practice has focused on consulting with schools in the state. Greenwood Report at 3 (Doc. 66 Ex. 2). Dr. Greenwood reviewed the Complaint and the four named plaintiffs' educational programs and prepared a report evaluating the programs, which identified similarities between the school districts' handling of the students' behavioral needs, and offered suggestions about what ODE could do to support the districts.[4] He also prepared a short declaration, which includes a summary of his key findings and recommendations for

---

[4]  Dr. Greenwood's educational program review involved: (1) a review of relevant school records, including evaluations, functional behavioral assessments, behavioral intervention plans, and other educational and clinical assessments; (2) a 90-minute interview with the primary caregiver of each student; (3) observing E.O. and B.M. in their classrooms during spring semester of the 2018–19 school year. He could not observe J.N. or J.V. because their school districts would not allow him in the classroom. But Dr. Greenwood believes that he had enough information from other sources to offer an opinion regarding the planning, instruction, services, and placements that the districts provided. These are data-gathering methods typically used by consultants. Greenwood Report at 8.

state-level guidance and expert consultation that may help to address the issues identified in his report. Greenwood Decl. ¶¶ 4(a)–(i).

Although the four named plaintiffs attend school in different districts located in different parts of the state—two in the mid-Willamette Valley, one in Southern Oregon, and one on the South Coast—Dr. Greenwood found similarities in their experiences. All four districts shortened named plaintiffs' school days "without first employing effective school-based behavioral supports" and all four "lacked clearly identified," data-based "rationales for shortening the [plaintiff's] day that were linked to providing specific behavior supports to facilitate a return to school." Greenwood Decl. ¶ 4(c); *see also* Greenwood Report at 41–43 (detailing the issues with the development, implementation, and revision of plaintiffs' FBAs and BIPs). He also opined that, even if plaintiffs had needed a shortened school day, their shortened day placements were too long, and the districts' plans for returning the students to a full school day were inadequate. *Id.* at ¶ 4(f); Greenwood Report at 8–9.

In sum, Dr. Greenwood found that plaintiffs "require[d] but ha[d] not received" a "comprehensive array of effective supports" that could have "mitigat[ed] the use of extended shortened days and help[ed] [plaintiffs] successfully return to school." Greenwood Decl. ¶¶ 4(e), 4(h). He opined:

> All four children were denied an appropriate education and educational opportunities enjoyed by their peers without disabilities because they were placed on shortened school days for extended periods of time. They missed opportunities for academic skill-building and social engagement with their same-age peers. Due to the lack of effective supports and the length of their shortened days, they are all at significant risk for shortened school days in the future, and the related harms of disengagement and alienation from school.

Page 18 – OPINION AND ORDER

*Id.* ¶ 4(g).  Dr. Greenwood also opined that plaintiffs' needs and experiences are not unusual.  In his view, "there are at least hundreds of students with significant behavior support needs in Oregon public schools who warrant the [same] level of support" needed by named plaintiffs.  *Id.* ¶ 4(h).  And "[m]any have been placed on shortened school days before their schools implemented the methods" described in his report.  *Id.*

Dr. Musgrove is Co-Director of the Graduate Center for the Study of Early Learning and an Associate Professor of Special Education at the University of Mississippi with over three decades' experience in special education.  Musgrove Decl. ¶ 2.  From August 2010 to December 2015, Dr. Musgrove served as the Director of Office of Special Education Programs ("OSEP") in the United States Department of Education, which administers the IDEA and monitors whether states meet the Act's requirements.  *Id.* ¶ 3.

Dr. Musgrove's declaration "describes how a state educational system can effectively address systemic problems like the unnecessary use of shortened school days and ensure that all students with disabilities receive a" FAPE in the LRE without disability-based discrimination.  *Id.* ¶ 5.  It addresses three key areas: (1) background on relevant law and policies; (2) research related to shortened school days and the effects of the practice on students; and (3) the eight "essential components" of an effective state system and how a state can use them to prevent, identify, and correct districts' violations of the law.  *Id.*  Notably, Dr. Musgrove's opinions are generalized.  The declaration was prepared before discovery began and "does not

speak directly to the particulars of the State of Oregon's special education system." *Id.* ¶ 6.

Dr. Musgrove emphasizes that "shortened days are not an effective or evidence-based behavioral intervention . . . ." *Id.* ¶ 22. She opines that "[f]or students with behavioral needs who are physically able to attend school, shortened school days are rarely necessary if effective behavioral supports are in place." *Id.* Like Dr. Greenwood, Dr. Musgrove notes that "[i]n the few cases where a shortened day may be necessary due to behavior, it should only be used after less restrictive alternatives have failed and only for a limited period of time[,]" during which the school should ensure that "the student receives intensive services" and the school staff prepares to support the student for a full school day. *Id.*

Dr. Musgrove also opines that "the use of shortened school days undermines students' ability to receive FAPE in the LRE." *Id.* ¶ 31. Dr. Musgrove opines that "the repeated use of classroom removals like shortened school days . . . frequently indicates that an IEP does not adequately meet the behavioral needs of the child . . . or is not being properly implemented." *Id.* She also opines that "[w]hen used in response to student behavior, shortened days are likely to deny students with disabilities FAPE in their LRE." *Id.* ¶ 33.

Dr. Musgrove notes that "the state has a broad, proactive obligation to implement a comprehensive system that prevents, identifies, and corrects districts' noncompliance with the IDEA and provides assistance to school districts to support

and ensure compliance." *Id.* ¶ 34. OSEP has articulated "eight legally-required components of an effective state system of general supervision:

> (1) the State Performance/Annual Performance Report;
> (2) policies, procedures, and effective implementation;
> (3) integrated monitoring activities;
> (4) fiscal management;
> (5) data on processes and results;
> (6) improvement, correction, incentives, and sanctions;
> (7) effective dispute resolution;
> (8) targeted technical assistance and professional development."

*Id.* ¶ 36. Dr. Musgrove emphasizes that "[a] state can ensure FAPE in the LRE by operating a supervisory system that contains" each component and by using "them effectively to prevent, detect, and correct noncompliance." *Id.* ¶ 37. "[I]f any component is isolated from the others or not implemented properly, the state's system cannot ensure FAPE in the LRE and freedom from discrimination." *Id.* ¶ 38.

Defendants argue that plaintiffs' evidence does not support commonality. They contend that the evidence "does not establish a systemic common issue related to" or "state-level policies so flawed" that they constitute "denial or risk of denial of a FAPE from an abbreviated school day program involving behavior of concern in the classroom." Resp. at 11–12. They also contend that their own evidence demonstrates that ODE is implementing the "eight essential components" of an effective state general supervision system and implementing Dr. Greenwood's recommendations concerning technical assistance and resources. *Id.* at 12–13.

Defendants offer declarations, and related materials, from three ODE officials and staff members from the Department's Office of Enhancing Student Opportunities: Candace Pelt, ODE Assistant Superintendent with responsibility for

the Office of Enhancing Student Opportunities and Oregon State Special Education Director; Elliot Field, then-Special Education Legal Specialist in the Office of Enhancing Student Opportunities; and Lisa Bateman, a Special Education County Contact.

Superintendent Pelt discussed Oregon's "IDEA framework" (special education laws and policies) and sought to demonstrate how Oregon's approach aligned with the federal priorities and that Oregon's supervision system contained each of the eight essential components discussed by Dr. Musgrove. Decl. of Candace Pelt ("Pelt Decl.") ¶¶ 10–19 (doc. 95). Elliot Field described Oregon's administrative complaint system and ORS 343.161, the state's abbreviated school day program law, and sought to demonstrate how both comply with the IDEA's requirements. Decl. of Elliot Field ("Field Decl.") ¶¶ 11–13, 16–20 (doc. 94). Lisa Bateman described the written guidance, trainings and other outreach, and consultation resources that she and other County Contacts provide to districts statewide, including resources for understanding and effectively implementing FBAs and BIPs, and training and outreach related to ORS 343.161. Decl. of Lisa Bateman ("Bateman Decl.") ¶¶ 4–16 (doc. 96). In doing so, Bateman sought to demonstrate that "Oregon in fact implements Dr. Greenwood's recommendations for state-level written guidance and expert consultation." Resp. at 12.

Additionally, both Field and Bateman opined that, based on their experience working with stakeholders including school district staff, parents, caseworkers, and parent advocates, inappropriate use of abbreviated school days for students with

disability-related behaviors of concern is not widespread in Oregon schools. Field Decl. ¶¶ 18–19; Bateman Decl. ¶ 17.

The Ninth Circuit has "never equated a district court's 'rigorous analysis' at the class certification stage with conducting a mini-trial." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 100–4 (9th Cir. 2018). Class certification is a "tentative, preliminary, and limited phase." *B.K.*, 922 F.3d at 973 (internal quotation marks omitted).[5] As such, "merits questions, while not irrelevant to the class certification inquiry, do not preclude certification as a matter of law unless proving the answer to a common question or crafting uniform injunctive relief will be *impossible*." *Id.* (emphasis added). "Notably, the evidence needed to prove a class's case often lies in a defendant's possession and may be obtained only through discovery. . . . And transforming a preliminary stage into an evidentiary shooting match inhibits an early determination of the best manner to conduct the action." *Sali*, 909 F.3d at 1004.

"Neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies Rule 23." *Id.* at 1004–05 (internal quotation marks omitted). "[I]n evaluating a motion for class certification, a district court need only consider material sufficient to form a reasonable judgment on each Rule 23(a)

---

[5] Under Rule 23, district courts "must determine by order whether to certify the action as a class action" at "an early practicable time after a person sues or is sued as a class representative" and the certification order "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(A), (c)(1)(C).

requirement." *Id.* at 1005 (internal quotation marks omitted and alterations normalized).

As mentioned, plaintiffs identify six state policies and practices that they allege expose plaintiffs to a risk of IDEA, ADA, and Section 504 violations. But defendants seem to challenge the existence of just one: lack of training, technical assistance, and resources.[6] Dr. Greenwood's report is the main source of evidence of this policy.

Dr. Greenwood's report shows that staff in the named plaintiffs' districts seemed to lack the knowledge and skills needed to properly evaluate the named plaintiffs' challenging behaviors and develop and implement plans for addressing those behaviors in a school setting and did not make use of experts to help them in the evaluation, development, and implementation process. *See* Greenwood Decl. ¶ 4(d); Greenwood Report at 44. And these issues were consistent with issues that Dr. Greenwood observed throughout his career in Oregon. Greenwood Report at 44. Dr. Greenwood's suggestions for ODE reflect his belief that this lack of knowledge or

---

[6] In any event, plaintiffs did offer evidence suggesting that the state does not collect readily available information about individual students who are denied access to full school days due to their disabilities or the school districts that impose shortened days. Abrokwa Decl. Ex. 8 at 9, Ex. 9 at 11, Ex. 10 at 3; ORS 343.161(4)(b)–(c) (requiring school districts to obtain signed acknowledgements from parents before placing students on abbreviated school programs and to include a written statement of the reasons for doing so in the student's IEP). They also offered evidence suggesting that ODE takes a "wait and see" approach to monitoring the use of shortened school days and remedying violations, relying heavily on the complaint process to identify and remedy school districts' noncompliance with state and federal law. Compl. ¶ 119 (citing ODE Final Order in Case No. 17-054-021 (June 22, 2017), at 17–18). And plaintiffs allege that several written state-level policies contribute to the class members' risk of statutory violations, including ODE's Executive Numbered Memorandum 009-2015-16 on reduced school days, and OAR 581-023-0006(7)(b)(D), the school funding formula. Mot. for Class. Cert. at 13–14, 16. Defendants dispute whether these policies violate federal law or expose class members to a risk of harm, but they do not and cannot fairly dispute whether these policies exist.

skills is due, in part, to a lack of relevant or adequate resources for districts, including written guidance, trainings, and expert consultants. *See id.* at 44–46; Greenwood Decl. ¶ 4(d).

Defendants contend that their evidence shows that Oregon does provide some of the state-level written guidance and expert consultation that Dr. Greenwood's general recommendations envision, and that ODE has provided trainings on Oregon's Abbreviated School Day Law in at least seven cities around the state since the law was enacted.

However, Dr. Greenwood's report demonstrates that there is more than simply a lack of state-level resources, it suggests that there is an implementation gap between the state and local level. That is, the report also suggests that the school districts are not making effective use of the available resources or that the existing resources are not adequate. Defendants' evidence relates to the availability of written, guidance, training, and consultation. They offer no evidence about how often districts use actually use the resources when they have students with significant behavioral needs. Whether these resources are effectively deployed or even adequate goes to the merits of plaintiffs' claims and are issues for a later stage.

Similarly, plaintiffs provided enough evidence to show how these policies create a risk that school districts will place students with behavioral needs on a shortened school day unnecessarily. To establish a common risk of statutory harm theory of commonality, plaintiffs do not, as defendants contend, need to prove that shortened school days are *per se* violations of federal law or that the identified state

policies and practices directly violate federal law.[7]  Instead, they must demonstrate that the policies and practices expose all class members to the same significant, imminent risk of IDEA, ADA, and Section 504 violations.

Plaintiffs have shown that misuse of shortened school days to address disability-related behaviors is widespread among Oregon schools.  Though defendants contest this allegation by offering opinions from ODE officials and employees, I cannot find that it would be impossible for plaintiffs to prove that the misuse of shortened school days is so widespread in Oregon that all class members are at risk of being subjected to an unnecessarily shortened school day.

Plaintiffs' experts agree that a shortened school day is *rarely* an appropriate or necessary response to disability-related behaviors, should be imposed only as short a period of time as possible, and requires a lot of expertise and planning to use effectively.  *See* Musgrove Decl. ¶¶ 22–23, 28; Greenwood Report at 7.  Dr. Greenwood's report provides evidence that named plaintiffs' districts repeatedly imposed shortened school days on named plaintiffs, without proper preparation or implementation, for extended periods of time.  Greenwood Report at 1–2, 8–9, 41–44. In other words, he found a pattern of misuse among named plaintiffs' school districts.

Standing alone, this pattern could be nothing more than four separate anecdotes, outliers among the rest of the state's districts.  But plaintiffs offer other evidence to support their position that the practice is widespread, both geographically and numerically.  Named plaintiffs attended four separate school districts in three

---

[7] In fact, as discussed above, showing that practices and policies violate the law directly is an alternate theory of commonality identified in *B.K.*.  *See B.K.*, 922 F.3d at 976–77.

different parts of the state. And plaintiffs offered evidence that the U.S. Department of Education investigated at least two additional school districts for systemic use of shortened school days. Compl. ¶ 110 n.10 (citing Letter Re: Beaverton School District OCR Reference No. 10151271 (Feb. 24, 2016); Letter Re: Silver Falls School District 4J OCR Reference No. 10151452 (May 16, 2016)). Finally, in just six months during the 2018–19 school year, FACT Oregon received calls from 70 families seeking support about shortened days. Stenson Decl. ¶ 16.

Together, this evidence demonstrates that the risk that a class member will be placed on an unnecessarily shortened school day due to their disability-related behaviors is significant. *See Tinsley v. Faust*, 411 F. Supp. 3d 462, 483 (D. Ariz. 2019) (noting that "courts in the Ninth Circuit set the bar for what percentage a chance of something occurring constitutes a significant risk to be very low" and collecting cases).

Plaintiffs' experts also demonstrated how shortened school days can, in fact, violate the IDEA, ADA, and Section 504. Dr. Musgrove opined that shortened school days *are often* violations of these federal laws. Musgrove Decl. ¶¶ 31–33. And Dr. Greenwood showed how the named plaintiffs' four school districts repeatedly violated the laws by misusing shortened school days. *See* Greenwood Decl. ¶ 4(g); *see generally* Greenwood Report (detailing the various shortened school day schedules imposed on named plaintiffs and issues with each). That, combined with evidence suggesting

widespread use of shortened school days in Oregon, demonstrates that the risk is sufficiently significant and imminent.[8]

Finally, plaintiffs have shown how this risk "flows from" the six state-level policies and practices they identified. Dr. Musgrove opines that a state general supervision system that does not contain all "eight essential components" or make "effective use" of them places students at significant risk of being denied FAPE in the LRE or discriminated against based on disability. Musgrove Decl. ¶¶ 37–38. Plaintiffs assert that the policies and practices that they identified shows that Oregon's system is deficient with respect to several components, including collection and analysis of data on process and results (Component 5); integrated monitoring activities (Component 3); issuance and effective implementation of appropriate policies and procedures (Component 2); improvement, correction, incentives, and sanctions (Component 6); and targeted technical assistance and professional development (Component 8). Mot. for Class Cert. at 14–15.

Defendants contend that their evidence shows "substantively that Oregon implements" all eight essential components. Resp. at 12 (citing Pelt Decl. ¶¶ 12–19). But that evidence does not demonstrate that it would be impossible for plaintiffs to

---

[8] Defendants assert that whether the use of a shortened school day amounts to a FAPE denial depends on an individual students' circumstances, such that resolution of plaintiffs' class claims will require an assessment of each class members' IEP. But defendants have failed to demonstrate that such an individualized assessment *must* occur to resolve plaintiffs' claims on the merits. Plaintiffs' evidence demonstrates that school districts across the state have repeatedly used shortened school days to respond to a students' disability-related behaviors, despite plaintiffs' expert testimony that shortened school days are almost never a necessary or appropriate intervention in that context and that their use is likely to cause denial of FAPE in the LRE and unnecessarily exclude students from the classroom because of their disability. Though this evidence may not be enough to prove causation on the merits, it is enough to show that it is possible to do so without evaluating every class members' IEP.

prove that Oregon's system is deficient in the ways plaintiffs allege. Whether the aspects of Oregon's system highlighted by defendants' witnesses measure up to OSEP's vision of the eight essential components and whether the state properly implements the components are merits issues for another stage.

Accordingly, the Court finds that plaintiffs offered sufficient factual support for their allegation that six state-level policies and practices related to defendants' failure to identify, correct, and prevent the systemic misuse of shortened school days expose the proposed class members to a significant, imminent risk that they will be subjected to denials of FAPE in the LRE and disability-based discrimination to meet the commonality prerequisite under Rule 23(a)(2).

## C.   *Typicality*

Under Rule 23(a)(3), plaintiffs must show that the claims of the representative parties are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *B.K.*, 922 F.3d at 970 (internal quotation marks omitted). The representative plaintiffs' claims should be "reasonably coextensive" with those of the absent class members; "they need not be substantially identical." *Id.* at 969–70. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs argue that typicality is satisfied because the named plaintiffs fall within the class definition, share the same interests as the other class members, experience the same or similar injuries, and, as students in districts subject to "uniformly-applicable state policies, practices, and procedures," they assert the same systemic claims as the other members.  Mot. for Class Cert. at 20.  Defendants respond that named plaintiffs are not members of the class because two named plaintiffs, J.V. and E.O., currently receive a full days' instruction and plaintiffs' evidence concerning the other two, J.N. and B.M., do not show that their shortened school days constitute a FAPE denial.  Resp. at 14.

But plaintiffs' evidence demonstrates that all four named plaintiffs have been placed on shortened school day programs due to their disability-related behaviors and that those shortened days violated their rights under federal law.  *See* Greenwood Decl. ¶¶ 4(c), (g).  It also demonstrates that any who are not currently on shortened programs are at significant risk of being put back on one in the future.  For example, Dr. Greenwood opines that J.V. is at risk of having a shortened school day again in the future, given his history, his autism diagnosis and limited communication skills, and his district's difficulty in providing J.V. proven and badly needed supports such as a communication device and expert behavioral consultation.  Greenwood Report at 16–19.  Thus, they fall within plaintiffs' proposed class definition: IDEA eligible students in Oregon who are "currently being subjected to a shortened school day or are at substantial risk of being subjected to a shortened school day due to their disability-related behaviors."  Mot. for Class Cert. at 1.

Defendants contend that plaintiffs' expert opinion that all four named plaintiffs were denied a FAPE at some point in the past does not establish the "current, ongoing injury required for standing or even membership in the class they seek to represent." Resp. at 14. But, because plaintiff demonstrated that statewide policies and practices create common risk of IDEA, ADA, and Section 504 violations, they have shown that *all* class members, including the named plaintiffs, have standing to seek injunctive relief against the state based on a significant risk of future FAPE denials by unlawfully shortened school days.

Plaintiffs have met their burden to show typicality at this stage.

### D.    *Adequacy of Representation*

Under Rule 23(a)(4), plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy turns on two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. at 338. The adequacy requirement is based on principles of constitutional due process; accordingly, a court cannot bind absent class members is class representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940). Where there are multiple proposed class representatives, a court need only find that one is an adequate class representative. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 (9th Cir. 2009).

Plaintiffs' interests align with the interests of the class since they have been harmed by the State's actions and inactions regarding shortened school days. Plaintiffs also submit the declarations of their counsel detailing their credentials. Counsel include attorneys from the Bazelon Center for Mental Health Law, COPAA, the National Center for Youth Law, Disability Rights Oregon, and private practice.[9] Each has experience litigating complex civil actions in federal court, including class actions and systemic cases involving children's rights, disability discrimination, special education law, and civil rights. Defendants do not dispute any of these credentials, nor to defendants argue that any conflicts of interest exist between plaintiffs and their counsel or between class members. Accordingly, I find that plaintiffs and their counsel will prosecute the action vigorously on behalf of the proposed class and that plaintiffs have satisfied Rule 23(a)(4).

**E.    *Rule 23(b)(2)***

Having found that plaintiffs satisfy the prerequisites to certification under Rule 23(a), I will now consider whether plaintiffs also meet the requirements of Rule 23(b)(2). Certification under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This rule will "ordinarily be satisfied when plaintiffs have described the general contours of an injunction that" (1) "would

---

[9] Specifically, plaintiff's counsel are Ira A. Burnim and Lewis Bossing of the Bazelon Center for Mental Health Law, Selene Almazan-Altobelli of COPAA, Seth Galanter and Alice Y. Abrokwa of the National Center for Youth Law, Thomas Stenson and Joel D. Greenberg of Disability Rights Oregon, and pro bono counsel Michael W. Folger. *See* Docs. 65, 73, 74, 75, 76.

provide relief to the whole class," (2) "that is more specific than a bare injunction to follow the law," and (3) "that can be given greater substance and specificity at an appropriate stage in the litigation through fact-finding, negotiations, and expert testimony." *B.K.*, 922 F.3d at 972 (quoting *Parsons*, 754 F.3d at 689 n.35).

> The key to the (b)(2) class is the *indivisible* nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful *only* as to all of the class members or as to none of them. . . . In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.

*Wal-Mart*, 564 U.S. at 360 (emphases added; internal quotation marks and citations omitted).

Defendants argue that the requested relief is not appropriate because plaintiffs fail to establish the existence of systemic claims, and Rule 23(b)(2) does not apply "when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." Resp. at 15 (quoting *Wal-Mart*, 564 U.S. at 360) (emphasis in *Wal-Mart*). Defendants assert that plaintiffs, in essence, challenge the adequacies of their IEPs, which requires the Court to "determine whether the IEP team for each putative class member reached the correct decision" to shorten that student's school day—a determination, defendants note, that requires "an individualized review" not by the Court but by the state's administrative review bodies. *Id.* at 16.

Again, plaintiffs do not allege harm from individually faulty IEPs. They allege harm from defendants' statewide policies and practices. As explored in detail above, plaintiffs have identified six state policies and practices, which they allege create a

significant and uniform risk that the proposed class members will be subjected to a shortened school day because of their disability-related behaviors, in violation of their rights under the IDEA, ADA, and Section 504.

The Rule 23(b)(2) "inquiry does not require an examination of the viability or bases of the class members' claims for relief . . . and does not require a finding that all members of the class have suffered identical injuries." *Parsons*, 754 F.3d at 688. "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). Rule 23(b)(2)'s requirements "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688.

Plaintiffs ask the Court to "[p]ermanently enjoin Defendants from subjecting [the class] to policies and practices that violate their rights under the" IDEA, ADA, and Section 504. Compl. at 48, ¶ C. They also ask for an injunction ordering defendants "to develop, adopt, and implement policies and practices that will ensure the State of Oregon and its school districts" (1) provide FAPE in the LRE to "all eligible students in the state, including by providing children whose disabilities lead to challenging classroom behaviors with the services and supports they need to access a full school day" and (2) "do not discriminate against students on the basis of disability, including by unnecessarily excluding children with disability-related

behaviors from a full school day and thereby denying them an equal educational opportunity." *Id.* ¶ D, E.

This is more specific than a bare injunction to follow the law. Plaintiffs seek an order to (1) stop relying on policies and practices that violate the law and (2) develop, adopt, and implement policies and practices that ensure future compliance with the law. What the precise policies and practices are that fall within each order can be given greater specificity at later stages of litigation—the first set during the liability phase and the second set in a remedial phase. Because plaintiffs have adequately described the general contours of an injunction that would provide relief to the whole class, this requirement is satisfied.

## III.   *Appointment of Counsel*

Plaintiffs also seek to have their counsel appointed as class counsel pursuant to Rule 23(g), which provides that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In appointing counsel, the court must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B); *see also id.* 23(g)(2) (court may appoint the applicant as class

counsel "only if the applicant is adequate under Rule 23(g)(1) and (4)"); *id.* 23(g)(4) ("Class counsel must fairly and adequately represent the interests of the class.").

Plaintiffs offer declarations of counsel, which detail the work counsel have done to identify and investigate the relevant claims, including conducting extensive legal and factual research since 2018, before the suit was filed. They have considerable experience litigating class actions and other complex civil matters. Plaintiffs' counsel from the Bazelon Center, COPAA, the National Center for Youth Law, and Disability Rights Oregon are subject-matter experts in disability law, generally, and the intersection between disability and education law, specifically. Plaintiffs' counsel have already committed substantial staff and other resources to this matter and assert that they will continue to commit the resources needed to zealously pursue relief on behalf of the class. Given plaintiffs' counsel's experience, expertise, and demonstrated commitment to advocating for the rights of students with disabilities, I have no doubt that they will fairly and adequately represent the class.

## CONCLUSION

The Court finds that plaintiffs have satisfied all requirements of Rule 23(a) and Rule 23(b)(2). Therefore, the Court GRANTS plaintiffs' Motion for Class Certification (doc. 64). The Court certifies a class consisting of all students with disabilities aged 3 to 21 residing in Oregon who are eligible for special education and related services under the IDEA and are currently being subjected to a shortened school day or are at substantial risk of being subjected to a shortened school day due to their disability-related behaviors. The Court also appoints plaintiffs' counsel, Ira

A. Burnim, Lewis Bossing, Selene Almazan-Altobelli, Seth Galanter, Alice Y. Abrokwa, Thomas Stenson, Joel D. Greenberg, and Michael W. Folger, as counsel for the class.   Counsel for the parties shall confer regarding whether class notice is appropriate under Rule 23(c)(2)(A) and, if so, the appropriate method for providing notice is and shall notify the Court of their positions at the next status conference following conferral.

IT IS SO ORDERED.

Dated this 5th day of February 2021.

                    /s/Ann Aiken

                    Ann Aiken
                    United States District Judge