# EXHIBIT 1

*J.N. et al. v. Oregon Department of Education et al.*
United States District Court for the District of Oregon, Case No. 6:19-cv-00096-AA

# INTERIM SETTLEMENT AGREEMENT

**1.** **Introduction**

- a. The parties wish to settle *J.N. et al. v. Oregon Department of Education et al.*, United States District Court for the District of Oregon, Portland Division, No. 6:19-cv-00096-AA (the "Action").

- b. Plaintiffs are J.N., by and through his next friend, T.S.; E.O., by and through his next friend, Alisha Overstreet; J.V. by and through his next friend, Sarah Kaplansky; B.M., by and through his next friend, Traci Modugno, and the Council of Parent Attorneys and Advocates, Inc. (COPAA).

- c. A class has been certified in the Action comprised of all students with disabilities aged 3 to 21 residing in Oregon who are eligible for special education and related services under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (IDEA), and are currently being subjected to a shortened school day or are at substantial risk of being subjected to a shortened school day due to their disability-related behaviors.

- d. Defendants are the Oregon Department of Education (ODE), Colt Gill, in his official capacities as Director of ODE and Deputy Superintendent of Public Instruction for the State of Oregon, and Katherine Brown, in her official capacities as Governor and Superintendent of Public Instruction for the State of Oregon.

- e. This Interim Settlement Agreement (Interim Agreement) is not a final settlement of plaintiffs' claims asserted in the Action.

- f. Defendants dispute the allegations against them in the Action. This Interim Agreement is not an admission of liability, and defendants deny the allegations in the Action.

- g. The parties represent and acknowledge that this Interim Agreement is the result of extensive, thorough, and good faith negotiations. The parties further represent and acknowledge that the terms of this Interim Agreement have been voluntarily accepted, after consultation with counsel, for the purpose of making this Interim Agreement.

- h. The Court has jurisdiction over the Action pursuant to 28 U.S.C. § 1331. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

- i. This Interim Agreement will be interpreted in accordance with federal law and the laws of the State of Oregon. The venue for all legal actions concerning this Interim Agreement will be in the United States District Court for the District of Oregon, Portland Division (the "Court").

2. **Definitions**

For the purposes of this Interim Agreement, the following definitions apply:

a. "ADA" means Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and its implementing regulations.

b. "Effective Date" means the date on which this Interim Agreement has been fully executed by all parties.

c. "IDEA" means the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, and its implementing regulations.

d. "FAPE" means a free appropriate public education within the meaning of the IDEA.

e. "FERPA" means the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, and its implementing regulations.

f. "LEA" means local education agencies which provide educational services directly to students.

g. "LRE" means least restrictive environment within the meaning of the IDEA.

h. "Section 504" means Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations.

i. "Shortened School Day" refers to any school day during which a student within the Target Population receives instruction or educational services in school for fewer hours than other students who are in the same grade within the same school.

j. "Target Population" refers to the certified class for the lawsuit (i.e., "all students with disabilities aged 3 to 21 residing in Oregon who are eligible for special education and related services under the IDEA and are currently being subjected to a shortened school day or are at substantial risk of being subjected to a shortened school day due to their disability-related behavior").

3. **Phased Approach to Resolution of the Action**

The parties share the goal of ensuring that LEAs provide all Oregon school children with a FAPE in the LRE that is free from discrimination. To achieve this shared goal, the parties agree to a two-phased approach to resolve the Action: (1) fact-finding by a Neutral Expert regarding the use of Shortened School Days for the Target Population in Oregon and preparation of a report with the Neutral Expert's findings and recommendations ("Phase I"); and (2) following completion of Phase I, negotiation of appropriate remedies (if any) for any identified systemic misuse (if any) of Shortened School Days for the Target Population during a continued settlement conference with Judge Acosta ("Phase II").

**4.     Retention of Neutral Expert**

As noted above, the parties agree that fact-finding regarding the alleged systemic misuse of Shortened School Days for the Target Population in Oregon public schools is needed to inform what (if any) remedies are needed to achieve the parties' shared goal that LEAs provide Oregon school children with a FAPE in the LRE that is free from discrimination.

For purposes of Phase I, through the Oregon Department of Justice and the Department of Administrative Services, ODE shall retain the services of a mutually acceptable Neutral Expert with substantial experience in evaluating or assisting states and/or school districts in complying with the IDEA, the ADA, and Section 504.

To select the Neutral Expert, the parties will choose up to four individuals to be jointly interviewed by ODE and counsel for the parties and then jointly select the appropriate Neutral Expert as expeditiously as possible but not later than 28 days after the Effective Date; such time period may be extended by mutual agreement of the parties or pursuant to an extension granted by Judge Acosta. If the parties cannot agree on the four individuals for interviews, each party will choose up to two individuals to be interviewed. The parties further agree that if they are unable to agree on a Neutral Expert within that time period (including any extensions), each party shall, within 7 days of the end of that time period (including any extensions), submit to Judge Acosta their nominee(s), preferred choice, and rationale, and he will select the Neutral Expert from those lists pursuant to Fed. R. Evid. 706(a), whose compensation would be paid by the State pursuant to Part 6 below.  The deadline for submission to Judge Acosta may be extended by mutual agreement of the parties or pursuant to an extension granted by Judge Acosta.

If the retained Neutral Expert becomes unavailable, a replacement Neutral Expert will be selected by mutual agreement of the parties. Within 30 days of learning of the retained Neutral Expert's unavailability, ODE will identify its preferred candidate to plaintiffs by giving written notice to plaintiffs' counsel.  If, within 14 days of ODE's identification, plaintiffs disapprove of or fail to respond to the ODE's selection, counsel for the parties shall convene a telephone conference to discuss other possible candidates and determine whether they can agree on a candidate.

If the parties are unable to agree on the selection of a replacement Neutral Expert after following the procedure outlined herein, then no later than seven (7) days after the telephone conference of counsel, each party will submit to Judge Acosta a list of up to two nominees and Judge Acosta will select the Neutral Expert pursuant to Fed. R. Evid. 706(a), whose compensation would be paid by the State pursuant to Part 6 below.  Each nominating party must identify and describe each nominee's qualifications and experience.

If a replacement Neutral Expert is selected, to prevent duplicative costs, the replacement Neutral Expert will not be required or permitted to repeat the work already performed, except for good cause shown.

5.  **Scope of the Neutral Expert's Work in Phase I**

Phase I is intended to be a statewide evaluation regarding the use of Shortened School Days to inform negotiations over remedies, if warranted, in Phase II. The scope of the Neutral Expert's work in Phase I is as follows:

a.  Determine the sources of information from which to gather evidence regarding use of Shortened School Days for the Target Population. These sources of information could include (but would not be limited to):

    i.  Records and data in ODE's possession relevant to Shortened School Day placements for the Target Population;

    ii. State and district statutes, policies, guidelines, processes, and procedures relevant to Shortened School Day placements for the Target Population;

    iii. Student-level state and district data relevant to Shortened School Day placements for the Target Population;

    iv. Interviews regarding Shortened School Day placements for the Target Population with individuals and/or focused groups of state and district staff, students, parents, guardians, various advisory committees, parent organizations, subject-matter experts, and counsel for the parties;

    v.  Targeted site visits to review individual student files and make classroom observations for information related to Shortened School Day placements for the Target Population.

b.  Gather information from the sources identified in (a) or otherwise determined relevant by the Neutral Expert through data collection, document review, and interviews needed to understand the data. The time period for the data collection shall be from the 2017-2018 school year to the present, except to the extent the Neutral Expert determines that obtaining data from earlier school years is appropriate. The information gathering shall be completed within three (3) months after retention of the Neutral Expert; such time period may be extended by mutual agreement of the parties or, if the parties cannot agree, pursuant to an extension granted by Judge Acosta.

c.  Identify the conditions under which Shortened School Days are used due to disability-related behavior (i.e., where, when, why, how long) for the Target Population. Plaintiffs and ODE will each supply the Neutral Expert with a checklist of essential data elements to be gathered in connection with uses of Shortened School Days to assist the parties in determining the appropriateness of the uses of Shortened School Days. The checklists may be modified by the Neutral Expert as appropriate after consulting with the parties.

    d.       Identify and examine the root cause(s) at the state and/or district level of the use of Shortened School Days due to disability-related behaviors for the Target Population.

    e.       Synthesize information collected above and describe the magnitude and scope of the use of Shortened School Days for the Target Population, including: (i) the number of students in the Target Population placed on Shortened School Days due to disability-related behaviors; (ii) the length of time that those students are placed on Shortened School Days; (iii) whether the students' placements on Shortened School Days were revisited after any specified period and, if so, what time period; (iv) differences in utilization of Shortened School Days for the members of the Target Population based on district type or student demographics; and (v) descriptive statistics and information related to the time and location of services received by students in the Target Population.

    f.       Identify uses of Shortened School Days for the Target Population that potentially fail to meet the requirements of federal law—namely, the IDEA, the ADA, and/or Section 504—and also identify where districts are implementing positive practices with respect to serving the Target Population and/or reducing inappropriate uses of Shortened School Days. Nothing in this section allows the Neutral Expert to inquire into any potential violations of the IDEA, the ADA and/or Section 504 unrelated to the use of Shortened School Days for the Target Population.

    g.       Prepare a report describing the Neutral Expert's sources used and findings relative to (a)-(f) above and, if any, advisory recommendations for Phase II to address the existence of Shortened School Days that potentially fail to meet the requirements of federal law. To the extent the Neutral Expert determines sharing a draft report with the parties for comment is appropriate, the Neutral Expert may do so prior to releasing the report. The report shall be completed within six (6) months after retention of the Neutral Expert; such time period may be extended by mutual agreement of the parties or, if the parties cannot agree, pursuant to an extension granted by Judge Acosta. The report shall be admissible as evidence in any court of law. The report shall not be considered confidential; to the extent any details of the report are required to remain confidential under federal law, including IDEA and FERPA, to protect the privacy of individually identifiable students, the parties will prepare a version of the report that redacts only those details and that can be available to the public.

               The report may include, if appropriate, recommendations for the creation of new programs, hiring of new staff, contracting for services, developing new training systems, redirection of existing resources, or any other possible remedies, including recommending changes to state policies, statutes, or rules. The report may also include, if appropriate, recommendations for using existing programs, facilities, and staff to the extent those existing resources are adequate. The report may also recommend making no changes. Within the report, the Neutral Expert shall include their rationale to support each recommendation.

      h.      The Neutral Expert will have monthly joint phone conferences with the parties and their counsel to report on progress and the parties will provide feedback to the Neutral Expert to ensure that the evaluation is progressing in accordance with the scope of work.  The parties may communicate any additional information to the Neutral Expert at any time during the evaluation period.

      i.      Upon request of the Neutral Expert, the parties will assist the Neutral Expert in obtaining access to the sources of information as described in (a) and (b) above and ODE will provide sufficient administrative support to perform the duties described in (a)-(g) above.

**6.     Duration of the Neutral Expert's Work and Compensation.**

The Neutral Expert shall be retained at least through the completion of Phase I and may be retained in some role as part of Phase II subject to agreement by the parties.

For work during Phase I, the Neutral Expert shall be reimbursed by the State up to a maximum of $300,000 (including the Neutral Expert's fee for all work performed by the Neutral Expert or anyone employed by the Neutral Expert), as well as all allowable expenses, such as travel costs.

If the State contracts with the Neutral Expert to begin to perform the duties outlined herein before the Effective Date, the time spent by the Neutral Expert on that work and the amount spent to reimburse the Neutral Expert for that work shall count towards the expense cap.

Phase I shall be complete upon submission of the Neutral Expert's report to the parties.

**7.     Transition to Phase II**

Within five (5) business days after completion of Phase I, the parties shall commence Phase II by jointly contacting Judge Acosta to schedule date(s) for a continued settlement conference to negotiate remedies (if any).  Judge Acosta will then notify the Court that the settlement conference is continuing and the stay should remain in effect until any party decides (after engaging in good faith discussions in continued settlement conferences during the first 60 days of Phase II) to return to active litigation.  In that event, Judge Acosta will notify the Court that the stay should be lifted.

**8.     Dispute Resolution and Enforcement**

Any allegation of an act or omission in breach of this Interim Agreement may be raised by either party through the dispute resolution process in this Section.  Each party will provide written notice to the opposing party of any alleged non-compliance.  The opposing party shall have 21 days to provide a response and/or proposed solution.  During this time period, the parties shall work to resolve the dispute.  If the parties cannot resolve their dispute within this time period, any party may bring the matter to Judge Acosta for resolution. Judge Acosta's rulings under this Section shall be made in writing and will be final and not subject to appeal.

If, during Phase I or Phase II, Judge Acosta is not available, then Judge Stacie Beckerman will be responsible for fulfilling Judge Acosta's functions under this Interim Agreement. If Judge Beckerman is not available, then Judge Mustafa Kasubhai shall be responsible for fulfilling Judge Acosta's functions. If Judge Kasubhai is not available, then the parties will select a mutually-agreeable judge to fulfill Judge Acosta's functions.

**9.      Stay, Effective Period, and Preservation of Rights**

Within seven (7) days of the execution of this Interim Agreement by all parties, Judge Acosta will propose to the Court a stay of all proceedings in the Action so the parties can focus on a comprehensive settlement that will result in a final settlement of the Action.

Plaintiffs and ODE preserve all rights to seek or oppose a more comprehensive settlement. Nothing in this Interim Agreement ends or prejudices a party's right to assert other positions, assert any preserved claim or defense, or to seek or oppose additional relief in settlement negotiations or in the Action.

This Interim Agreement will terminate 60 days after commencement of Phase II as described herein, unless extended by mutual agreement of the parties. Either party may restart the proceedings in the Action only after engaging in good faith discussions in continued settlement conferences during the first 60 days of Phase II.

**10.     No Admission of Fault**

In entering into this Agreement, ODE does not admit any wrongdoing or liability to plaintiffs, or any entitlement by plaintiffs to any relief under any claim upon which relief is sought in their complaint in this or any other matter. Inclusion of obligations in this Interim Agreement shall not be construed as a finding or determination by the Court that, absent this Interim Agreement, ODE would otherwise have such obligations or requirements.

**11.     Force Majeure**

ODE shall not be considered in breach of this Interim Agreement to the extent that performance of any of the obligations incurred herein is prevented by an event of Force Majeure, including but not limited to: acts of God (such as, but not limited to, fires, explosions, earthquakes, drought, tidal waves, and floods); war, hostilities, invasion, act of foreign enemies, rebellion, revolution, insurrection, or military or usurped power, or civil war; contamination by radioactivity from any nuclear fuel, or from any nuclear waste from the combustion of nuclear fuel, radioactive toxic explosive, or other hazardous properties of any explosive nuclear assembly or nuclear component of such assembly; riot, commotion, strikes, lock outs or disorder; or acts or threats of terrorism.

**12.     Funding**

Nothing in this Agreement will be construed as permitting any violation of Article XI, Section 7 of the Oregon Constitution or any other law regulating liabilities or monetary obligations of the State of Oregon. ODE will make diligent efforts to obtain necessary funding, appropriations, limitations, allotments, or other expenditure authority.

**13.    Authorized Signatures**

The signatures below of attorneys representing the plaintiff class, and the official(s) and attorneys representing the State signify that these parties have given their final approval to this Interim Agreement. Each party to this Interim Agreement represents and warrants that the person who has signed this Agreement on behalf of his or her entity or clients is duly authorized to enter into this Interim Agreement and to bind that party to the terms and conditions of this Interim Agreement.

**14.    Integrated agreement**

This Interim Agreement and any documents incorporated by reference constitute the entire integrated agreement of the Parties.

**15.    Counterparts**

This Agreement may be executed in counterparts, each of which shall be deemed an original, and the counterparts shall together constitute one and the same Agreement, notwithstanding that each party is not a signatory to the original or the same counterpart. All references to signature or execution of the Agreement shall be calculated from the date on which the last party executed the Agreement.

**16.    Notices**

"Notice" under this Agreement shall be provided to the following or their successors:

Attorney General
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

General Counsel
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

Disability Rights Oregon
610 S.W. Broadway, Suite 200
Portland, OR 97205

WHEREFORE, the Parties hereby execute this Agreement,

For the plaintiffs                                          For the defendants

_____  8/16/2021            _s/ Colt Gill_____  8/16/2021
Thomas Stenson            Date                 Colt Gill                    Date
Deputy Legal Director                          Director
Disability Rights Oregon                       Oregon Department of Education


_____  8/16/2021            _s/ Carla A. Scott_____  8/16/2021
Seth M. Galanter          Date                 Carla A. Scott               Date
Senior Director                                Senior Assistant Attorney General
National Center for Youth Law                  Attorneys for Defendants


_____  8/16/2021
Selene Almazan-Altobelli  Date
Legal Direcor
Council of Parent Attorneys
   and Advocates


_____  8/16/2021
Lewis Bossing            Date
Senior Staff Attorney
Bazelon Center for
   Mental Health Law


_____  8/16/2021
Michael Folger           Date
Associate

**EXHIBIT 1**