ELLEN F. ROSENBLUM
Attorney General
CARLA A. SCOTT #054725
Senior Assistant Attorney General
NINA R. ENGLANDER #106119
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Carla.A.Scott@doj.state.or.us
       Nina.Englander@doj.state.or.us

Attorneys for Defendants Oregon Department of Education, Colt Gill and Katherine Brown

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| J.N., by and through his next friend, Cheryl Cisneros, E.O., by and through his next friend, Alisha Overstreet; J.V., by and through his next friend, Sarah Kaplansky; B.M. by and through his next friend, Traci Modugno; on behalf of themselves and all others similarly situated, and<br><br>COUNCIL OF PARENT ATTORNEYS AND ADVOCATES, INC.,<br><br>       Plaintiffs,<br>  v.<br><br>OREGON DEPARTMENT OF EDUCATION,<br><br>COLT GILL, in his official capacities as Director of Oregon Department of Education and Deputy Superintendent of Public Instructions for the State of Oregon, and<br><br>KATHERINE BROWN, in her official capacities as Governor and Superintendent of Public Instruction for the State of Oregon,<br><br>       Defendants.. | Case No. 6:19-cv-00096-AA<br><br>**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**REQUEST FOR ORAL ARGUMENT** |

Case 6:19-cv-00096-AA   Document 165   Filed 11/04/22   Page 2 of 20

## TABLE OF CONTENTS

CERTIFICATE OF CONFERRAL .................................................................................................. 1

MOTION FOR JUDGMENT ON THE PLEADINGS ................................................................... 1

POINTS AND AUTHORITIES ....................................................................................................... 1

    I.     INTRODUCTION ................................................................................................... 1

    II.    SUBSTANTIVE LEGAL FRAMEWORK ............................................................. 2

        A.     The IDEA requires states to offer a FAPE and procedural safeguards at the local level. ............................................................... 3

            1.     The SEA is responsible for general supervision. ............................ 3

            2.     FAPE is an individualized determination that is delivered by LEAs and defined in each student's IEP .................................. 3

            3.     The IDEA requires states to establish processes to challenge the denial of FAPE. ....................................................... 5

            4.     Oregon has a comprehensive framework for complying with the IDEA. ................................................................................ 6

        B.     The ADA and the RA prohibits discrimination on the basis of disability in public facilities and federally funded programs ..................... 7

    III.   STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS ........... 8

    IV.   ARGUMENT .......................................................................................................... 9

        A.     To state a systemic IDEA claim, Plaintiffs must allege that an agency decision, regulation, or other binding policy affirmatively violates the IDEA; mere failure to act or bad results are insufficient. ........................................................................................ 10

        B.     The Complaint alleges only negligence as a basis for its claims and points to no statewide policy, rule, or guidance that affirmatively violates the IDEA ............................................................................... 13

        C.     The ADA and RA claims fail for the same reason the IDEA claim fails ................................................................................................... 16

    V.    CONCLUSION ..................................................................................................... 18

Page i

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7-1(a)(1)(A), counsel for Defendants certifies that the parties made a good faith effort to resolve the dispute in this motion by telephone but were unable to do so.

# MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to FRCP 12(c), Defendants move for a judgment on the pleadings against Plaintiffs' Complaint in Defendants' favor. Taking the well-pleaded allegations as true, the Complaint fails as a matter of law. This motion is based on the pleadings on file herein and the following memorandum of points and authorities.

# POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs have consistently represented that their theory of liability as pleaded in the Complaint rests *solely* on an alleged systemic violation of the IDEA based on denial of a Free Appropriate Public Education (FAPE). Recent Ninth Circuit cases—decided in 2021 and 2022 well after this Court's prior rulings regarding standing and class certification—now make clear that, taking the allegations in the Complaint as true, this claim as alleged fails as a matter of law. In these new cases, the Ninth Circuit held that a systemic claim to redress denial of FAPE fails where, as here, the Complaint seeks to redress only alleged negligence or failures to act (as opposed to an active official policy or guidance that it is contrary to the IDEA). *See Martinez v. Newsom*, 46 F.4th 965 (9th Cir. 2022); *Student A by & through Parent A v. San Francisco Unified Sch. Dist.*, 9 F.4th 1079 (9th Cir. 2021). These cases control and require dismissal of the Complaint in its entirety.

In *Student A*, the Ninth Circuit noted that with respect to denial of FAPE, "*no published opinion in this circuit has ever found* that a challenge was systemic," and rejected the plaintiffs' argument that a lack of *sufficient* policies could sustain a systemic claim. 9 F.4th at 1084-85 (emphasis added). In *Martinez*, the Ninth Circuit elaborated on *Student A* and surveyed all of the

Page 1 -    DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

circuit's relevant cases and held that to state a systemic claim with respect to denial of FAPE, a plaintiff must, at a minimum, identify an "agency decision, regulation, or other binding policy" that caused his or her injury. 46 F.4th at 974. In so holding, the Ninth Circuit unequivocally also held that bad results, negligence, or failure to act is legally insufficient to state a systemic claim for denial of FAPE. *Id*.

Plaintiffs' systemic IDEA claim here is on all fours with the claims rejected in *Student A* and *Martinez*. The Complaint alleges that Oregon public schools—which are not named as defendants—have inappropriately used "shortened" school day programs for students with disabilities, and thereby denied those students a FAPE as required under the IDEA. But the Complaint attributes the denial of FAPE *only* to the alleged *absence* of adequate statewide policies that would prevent unlawful use of shortened school day programs or, alternatively, to the State's *failure to supervise and coordinate or to monitor* and enforce the requirements of federal law to the same end. Plaintiffs' legal theory—that the State is required to affirmatively prevent schools from at any time violating these federal statutes—has never been supported by existing precedent and has now been squarely rejected by the Ninth Circuit.

In sum, Plaintiffs' theory and alleged facts fail as a matter of law to state a systemic claim for denial of FAPE and so their claim for violation of the IDEA must be dismissed. Similarly, because the gravamen of Plaintiff's ADA and RA claims is also the alleged denial of FAPE, those claims fail for the same reasons the IDEA claim fails and must likewise be dismissed. *See Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 749 (2017), and other cases discussed in Part IV.C below.

## II.   SUBSTANTIVE LEGAL FRAMEWORK

Oregon accepts federal funding for special education under the IDEA. In exchange, federal law requires the state education agency (SEA), here ODE, to ensure that eligible students receive a FAPE from their local education agency (LEA), here school districts and educational

service districts. Individualized assessment of the appropriate FAPE for each eligible student is the foundation of the IDEA.

Oregon implements the IDEA through an extensive framework of substantive and procedural provisions designed to ensure delivery of a FAPE. The LEAs deliver the services and are required to tailor an individualized education program (IEP) to meet the specific needs of each student. Dual administrative review processes required by the IDEA and its implementing regulations ensure that a student's IEP is appropriate and appropriately implemented.

### A. The IDEA requires states to offer a FAPE and procedural safeguards at the local level.

#### 1. The SEA is responsible for general supervision.

Under the IDEA framework, the SEA is responsible for "general supervision" of education programs throughout the state and is "responsible for ensuring that" the IDEA requirements are met. 20 U.S.C. § 1412 (a) (11); *see also* 20 U.S.C. § 1416 (a) (1) and 34 C.F.R. 300.149. The SEA fulfills this responsibility by, among other things, engaging in rulemaking to ensure that state rules, regulations, and policies for special education conform to the requirements of the IDEA. 20 U.S.C. § 1407. The IDEA framework requires the states to provide "assurances to the Secretary [of Education] that the State has in effect policies and procedures to ensure that the State meets" specific conditions. 20 U.S.C. § 1412 (a). One such condition is that "[a] free appropriate public education is available to all children with disabilities residing in the State between ages 3 and 21." 20 U.S.C. § 1412 (a) (1).

#### 2. FAPE is an individualized determination that is delivered by LEAs and defined in each student's IEP.

Providing a FAPE is necessarily carried out directly by LEAs, typically schools or school districts. The specifics of a FAPE are set out in the IEP. 20 U.S.C. §§ 1401 (9) (D). The creation of an IEP, as well as its substantive content, is unique to a specific student and must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001 (2017). The

process is inherently individualized – "[a] focus on the particular child is at the core of the IDEA," and "[t]he adequacy of a given IEP turns on the unique circumstances of the child for whom it was created." *Id.* at 999, 1001. As the Ninth Circuit has explained, the "IEP is a written program of educational goals and services, tailored to meet the child's unique needs, that is developed at an IEP meeting according to the proper procedures." *Doe by Gonzales v. Maher*, 793 F.2d 1470, 1479-1480 (9th Cir. 1986), *aff'd as modified sub nom. Honig v. Doe*, 484 U.S. 305 (1988).

A FAPE includes both "special education" and "related services." 20 U.S.C. § 1401 (9). Special education is "specially designed instruction . . .to meet the unique needs of a child with a disability." 20 U.S.C. § 1401 (29). Related services are "supportive services . . .as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401 (26). Each student's IEP must describe the student's current educational status and annual goals, specifically identify special educational services or other aids that are needed, and address placement in the least restrictive appropriate setting for receiving instruction. 20 U.S.C. § 1414 (d) (1) (A).

The IEP team includes teachers, school officials, and the student's parents or guardians. 20 U.S.C. § 1414 (d) (1) (B). Parents play a critical role in the IEP process. Indeed, a key motivation for the original enactment of the IDEA was to prevent unilateral action by schools without notice to parents. *Honig*, 484 U.S. at 311 (noting that "Congress repeatedly emphasized throughout the Act the importance and indeed the necessity of parental participation"). Parents must be afforded an opportunity to participate in the creation of the IEP, annual reviews, and any meetings involving potential modifications. 20 U.S.C. §§ 1414 (a) – (d). LEAs must give parents notice if a change in services occurs amounting to a change in "placement"—which may include placing the student on a shortened school day program. 20 U.S.C. §§ 1414 (d) (1) (B) – 1415(f).

### 3. The IDEA requires states to establish processes to challenge the denial of FAPE.

A parent may challenge a substantive or procedural violation of the IEP process, such as use of an inappropriate shortened school day program or lack of notice. 20 U.S.C. § 1415 (b) (6) (parent may dispute "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child"); *see also Christopher S. ex rel. Rita S. v. Stanislau Cnty. Off. of Educ.*, 384 F.3d 1205, 1210 (9th Cir. 2004) (describing procedural safeguards). The IDEA requires states to establish two distinct mechanisms for administrative review of IEP decisions, whether substantive or procedural, and other grievances related to special education. The IDEA mandates a hearing procedure to be conducted by an independent hearings officer. 20 U.S.C. § 1415 (f). This process is commonly referred to as the "due process hearing" procedure. *See Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992). The Secretary's rules also require the SEA to conduct its own administrative review of grievances by investigating allegations and promptly reporting the results. 34 C.F.R. §§ 300.151 – 300.153. To differentiate between the two processes, many cases use the acronym CRP (Complaint Resolution Procedure) for the latter complaint system. The CRP process is available for systemic complaints and is not necessarily adversarial. *See Christopher S.,* 384 F.3d at 1210-11 (discussing exhaustion of systemic claims); *Everett H. ex rel. Havey v. Dry Creek Joint Elem. Sch. Dist.*, 5 F. Supp. 3d 1184, 1188 (E.D. Cal. 2014) (describing the CRP as "more informal, and less adversarial" than a due process proceeding).

A change in a student's IEP "placement" triggers available options for review and remedy and the placement cannot be changed while review is pending. 20 U.S.C. § 1415 (j) (commonly referred to as the "stay put" provision); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373 (1985) ("We think at least one purpose of [the stay put provision] was to prevent school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings."). The stay put provision protects the student's right to continuation of the current IEP placement

during administrative review, appeal to a trial court, and further appellate review in the judicial system. *See Honig*, 484 U.S. at 323 (concluding that IDEA stay put provision "is unequivocal" and "states plainly that during the pendency of any proceedings initiated under the Act [absent agreement of all parties] 'the child *shall* remain in the then current educational placement'" (emphasis in original)).

### 4. Oregon has a comprehensive framework for complying with the IDEA.

Oregon's IDEA framework is primarily set forth in Oregon Revised Statutes Chapter 343 and Oregon Administrative Rules Chapter 581, Division 15. *See* OAR 581-015-2015. Oregon LEAs must comply with a detailed process for developing an IEP, including parent participation, team considerations and special factors, review and revision, and much more. *See* OAR 581-015-2190-2225. As required by the IDEA, Oregon LEAs must provide parents with an opportunity to participate in the creation of the IEP, the annual IEP review, and any subsequent meetings to modify the IEP. OAR 581-015-2190-95. Each student's IEP must describe the student's current educational status and annual goals, specifically identify special educational services or other aids that are needed, and address placement in the least restrictive appropriate setting for receiving instruction. OAR 581-015-2200. State rules also implement the notice requirement for a change in services amounting to a change in placement. OAR 581-015-2310.

Parents who believe their child's IEP is substantively or procedurally defective may use the review processes described above. The formal "due process" hearing includes the right to counsel and the right to "present evidence and confront, cross-exam, and compel attendance of witnesses." OAR 581-015-2360. The Oregon Office of Administration Hearings (OAH) is an independent agency that conducts due process hearings through an impartial Administrative Law Judge (ALJ). OAR 581-015-2340 and 137-003-0501; *see also* OR. REV. STAT. § 183.605 (establishing OAH); and OAR 581-015-2365 (criteria for ALJ).

The CRP is known in Oregon as the "state complaint process." OAR 581-015-2030. The state complaint process, conducted by ODE, is available for any eligible complaint. ODE uses a contract investigator to review the complaint, collect evidence and issue a proposed determination. The Assistant Superintendent in the Office of Enhancing Student Opportunities typically issues the final order on behalf of ODE. This procedure is not an adversarial proceeding and is not a substitute for a due process hearing. *See Hoeft*, 967 F.2d at 1308 ("complementary"); *Lucht v. Molalla River School Dist.*, 225 F.3d 1023, 1028 (9th Cir. 2000) ("alternative" method to address an IDEA complaint).

Among the policies and procedures enforced by the State is the shortened school day statute passed by the Oregon Legislative Assembly in 2017. That statute unambiguously prohibits LEAs from using shortened school days unilaterally. ORS 343.161 (2) ("A school district may not unilaterally place a student on an abbreviated school day program, regardless of the age of the student."). It otherwise permits use of shortened school days, but "only if the student's individualized education program team:

>   (a)     Determines that the student should be placed on an abbreviated school day program:
>
>       (A) Based on the student's needs; and
>
>       (B) After the opportunity for the student's parents to meaningfully participate in a meeting to discuss the placement; and
>
>   (b)     Documents that the team considered at least one option that included appropriate supports for the student and that could enable the student to access the same number of hours of instruction or educational services that are provided to students who are in the same grade within the same school."

ORS 343.161(3).

### B.   The ADA and the RA prohibits discrimination on the basis of disability in public facilities and federally funded programs.

The ADA prohibits a public entity from discriminating on the basis of disability and requires reasonable modifications to policies, practices or procedures when necessary. The ADA applies more broadly than the IDEA and prohibits discrimination in public programs and places of public accommodation. *See* 29 U.S.C. § 794 (a) ("[n]o otherwise qualified

Page 7 -   DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance"); 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from . . . services, programs, or activities of a public entity"); *Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 333-334 (S.D.N.Y. 2005) (explaining that "denial of *access* to an appropriate educational program on the basis of a disability is a Section 504 issue, whereas dissatisfaction with the *content* of an IEP would fall within the purview of the IDEA" (emphasis in original)). The ADA requires public entities to make certain "reasonable" modifications to existing policies, practices, and procedures when necessary to avoid discrimination on the basis of disability. *See* 28 C.F.R. § 35.130 (b) (7); *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749 (2017) (quoting *Alexander v. Choate*, 469 U.S. 287, 299-300 (1985)).

Section 504 of the RA likewise prohibits discrimination on the basis of disability, but applies only to federally funded programs. Plaintiffs' claim under the RA is otherwise analytically indistinguishable from their ADA claim. *See, e.g., O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (setting out elements of causes of action under both statutory schemes); *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002) (when analyzing discrimination claims brought under either Title II of the ADA or Section 504 of the RA, the courts may consider case law construing either statute "because there is no significant difference in the analysis of rights and obligations created by the two Acts").

### III. STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

FRCP 12(c) provides in that: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 n.14 (9th Cir. 1989). The standard for assessing a Rule 12(c) motion is the same as the standard for a Rule 12(b)(6) motion to dismiss. *Enron Oil Trading & Trans. Co.*, 132 F.3d 526, 529 (9th Cir. 1997). In considering a motion for judgment

Page 8 -   DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

on the pleadings, a court must accept as true all material, well-pleaded allegations in the pleading and must construe those allegations in the light most favorable to the plaintiff. *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994).

The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). To assess the adequacy of a complaint, a court may first begin by identifying those pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678 (holding that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Chapman v. Pier 1 Imports*, 631 F.3d 939, 955 n.9 (9th Cir. 2011). Finally, the Court need not accept as true facts that are contradicted by facts subject to judicial notice under FRE 201(b), or by documents whose contents are cited in the complaint (even if not physically attached). *Tellabs v. Makor*, 551 U.S. 308, 322 (2007); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

In sum, a motion for a judgment on the pleadings may be granted where, taking the well-pleaded facts as true, the moving party is entitled to a judgment as a matter of law. *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999).

## IV.   ARGUMENT

Defendants bring this dispositive motion now because recent Ninth Circuit cases—decided well after this Court's last substantive rulings regarding Plaintiffs' standing and class certification—make clear that the Complaint fails as a matter of law in its entirety. Against the backdrop of this new, controlling case law, Defendants respectfully ask this Court to take another look at the Complaint and dismiss it because it fails as a matter of law.

This motion is timely pursuant to FRCP 12(c) as it will not interfere with any trial. No trial date is set yet. Dispositive motions are not due until March 16, 2023. ECF No. 162.

     **A.    To state a systemic IDEA claim, Plaintiffs must allege that an agency decision, regulation, or other binding policy affirmatively violates the IDEA; mere failure to act or bad results are insufficient.**

Doctrinally, a systemic claim for relief under the IDEA is analyzed as an exception to the general requirement that a plaintiff must exhaust administrative remedies before filing a civil action. *See Martinez v. Newsom*, 46 F.4th 965, 974 (2022). Thus, Ninth Circuit cases evaluate the pleading requirements for a systemic claim within the exhaustion framework and the analysis focuses on whether the allegations are sufficient to show that a plaintiff's injury was directly caused by an official policy, decision, or regulation. Here, this new, binding authority demonstrates that Plaintiffs' systemic claims fail as a matter of law.

In *Martinez v. Newsom*, the Ninth Circuit addressed and articulated the requirements of a systemic claim for denial of FAPE under the IDEA. 46 F.4th at 974. The court held that a plaintiff cannot state a claim for systemic relief simply by reframing an act of inadvertence or negligence as a policy or practice of not complying with the IDEA. Rather, to state a claim a Plaintiff must allege that an affirmative, official decision, regulation, or other binding policy caused her alleged injury:

> The systemic exception to the IDEA's exhaustion requirement is something of an enigma. We first recognized the exception 30 years ago, but "*no published opinion in this circuit has ever found that a challenge was 'systemic' and exhaustion not required.*" *Student A ex rel. Parent A v. S.F. Unified Sch. Dist.*, 9 F.4th 1079, 1084 (9th Cir. 2021). After canvassing our precedent, we conclude that to fall within the systemic exception, a plaintiff must, at a minimum, identify an "agency decision, regulation, or other binding policy" that caused his or her injury. *Doe*, 111 F.3d at 684. . . .
>
> In *Hoeft*, we held that exhaustion is not required when "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." 967 F.2d at 1303–04 (quoting legislative history). Five years later, a group of plaintiffs alleged that the Arizona Department of Education adopted "a policy or practice of not complying with the IDEA" because the Department *did not monitor whether juveniles were present at the Pima County Jail and therefore did not provide the juveniles that were present with a FAPE*. *Doe*, 111 F.3d at 684. *We held that the plaintiffs were required to exhaust because the Department of Education's failure to provide educational services was the result of "inadvertent neglect" rather than an "agency decision, regulation, or other binding policy*." *Id*.

> More recently, a group of plaintiffs filed a class action lawsuit alleging that the San Francisco Unified School District was "failing its responsibilities to students under the IDEA by not timely identifying evaluating students with disabilities, and, after identifying them, by providing them with insufficiently individualized, 'cookie-cutter' accommodations and services." *Student A*, 9 F.4th at 1081. The plaintiffs argued that they were not required to exhaust because their claims were systemic. *Id.* We disagreed. We first explained that "*describing problems as broad and far-reaching is not enough to meet the standard; a policy or practice is not necessarily 'systemic' or 'of general applicability' simply because it 'applie[s] to all students' or because 'the complaint is structured as a class action seeking injunctive relief.'*" *Id.* at 1084. We then held that the plaintiffs' claims were not systemic because the plaintiffs failed to "identif[y] any policy, much less one of general applicability that the administrative process could not address," *id.*, and *their allegations were "of bad results, not descriptions of unlawful policies or practices*," *id.* at 1085.

46 F.4th 965, 974 (2022) (emphasis added; some internal quotation marks and citations omitted). Against this backdrop, *Martinez* expressly held that "to fall within the systemic exception, the injury the plaintiff complains of must result from an agency decision, regulation, or other binding policy. A plaintiff cannot rely on the systemic exception simply by reframing an act of inadvertence or negligence as a policy or practice of not complying with the IDEA." *Id.* (emphasis added).

The complaint in *Martinez* alleged "systemic" claims for denial of FAPE against numerous school districts and the California Department of Education (CDE):

> Plaintiffs' claims against the school districts are straightforward: they allege that the districts failed to adequately accommodate special needs students after the transition to remote instruction, thereby denying them—and every other special needs student in the state—a FAPE. Plaintiffs' claims against the CDE . . . are more complicated. During the transition to remote instruction, the CDE issued guidance that encouraged the school districts to "[w]ork with each family ... to determine what [a] FAPE looks like ... during COVID-19," "[e]nsure children with disabilities are included in all offerings of school education models by using the IEP process," and "[u]se [the] annual IEP to plan for [a] traditional school year and while not required, it is suggested LEAs include distance learning plans or addendums to address distance learning needs during immediate or future school site closures." Plaintiffs allege that because this guidance "encouraged, but did not require, the state's school districts" to take these measures, the CDE and Superintendent Thurmond either dissuaded or prohibited school districts from updating special needs students' IEPs and from offering adequate accommodations. At oral argument, *Plaintiffs characterized this guidance as "a policy of inaction" and "a blanket decision not to act*."

*Martinez*, 46 F.4th at 969.

Page 11 -   DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

While the Ninth Circuit ultimately found that the claims against CDE had become moot after the return to in person learning for all students, it went on to adjudicate the alleged systemic claim for denial of FAPE against some of the school districts where plaintiffs sought prospective compensatory education (and had thus not been mooted by the return to in-person education). *Id.* at 972. Before doing so, the Ninth Circuit engaged in the above-quoted survey of its prior cases (which involved claims alleged both SEAs and LEAs) and concluded that to state a systemic claim for denial of FAPE, "to fall within the systemic exception, a plaintiff must, at a minimum, identify an "agency decision, regulation, or other binding policy" that caused his or her injury." *Id.* at 974 (citing, among other cases, *Doe*, 111 F.3d at 684 (rejecting systemic IDEA claim against the Arizona Department of Education for failure to monitor)).

Applying this legal standard, the Ninth Circuit held that the alleged systemic claim for denial of FAPE against the school districts in *Martinez* failed as a matter of law because plaintiffs alleged only that those SEAs failed to adequately accommodate special needs students after the transition to remote instruction:

> Essentially, Plaintiffs assert a negligence claim: they allege that the districts failed to adequately accommodate special needs students after the transition to remote instruction. Plaintiffs' attempts to reframe this claim as a policy or practice of not complying with the IDEA does not allow them to evade the exhaustion requirement.

*Martinez*, 46 F.4th at 975.

Defendants expect that Plaintiffs will argue that the holding in *Martinez* is dicta with respect to claims against an SEA because the Ninth Circuit there adjudicated only the systemic claims alleged against LEAs.[1] But, articulating the applicable legal standard was a necessary step in reaching the holding in *Martinez* and that standard controls this Court's analysis here. There is no basis to conclude that a different standard applies to a systemic claim for denial of FAPE against SEAs than to such claims alleged against LEAs.

---

[1] This expectation is based on communications with Plaintiffs' counsel during conferral on this motion.

Page 12 -   DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

In sum, to state a systemic claim for denial of FAPE, at a minimum, a plaintiff must allege an agency decision, regulation, or other binding policy that affirmatively caused his or her injury. *Id.* Mere failure to act does not suffice to plead a systemic claim for denial of FAPE. *Id.* Likewise, allegations of bad results also fail to state a systemic claim for denial of FAPE. *Id.* A plaintiff cannot state a systemic claim for denial of FAPE by reframing an act of inadvertence or negligence as a policy or practice of not complying with the IDEA. *Id.*

### B. The Complaint alleges only negligence as a basis for its claims and points to no statewide policy, rule, or guidance that affirmatively violates the IDEA.

As Plaintiffs have repeatedly argued, this case is about alleged negligent failure by Defendants to meet their duties under the IDEA. *See, e.g.*, Pl. Mot. Class Cert. (ECF No. 64) at 6[2] (asserting that "this matter challenges the ongoing failure by Defendants … to effectively address the systemic practice among Oregon school districts of shortening the length of students' school day due to their disability-related behaviors"); Pl. Mot. for Part. Sum. J. (ECF No. 119) at 7-8 (same); Pl. Opp. Mot. Dismiss (ECF No. 41) at 7 (arguing Defendants are liable "if they shirk their responsibility to ensure FAPE") (internal citation and quotation marks omitted).

Specifically, the Complaint alleges that Defendants have failed to ensure FAPE due to "three systemic deficiencies." Pl. Mot. Class Cert. (ECF No. 64) at 9. Namely:

> (1) the lack of state-level policies or procedures to identify the districts that unlawfully impose shortened school days and thus need further supervision and monitoring, [Compl.] ¶¶ 115-18;
>
> (2) the State's failure to proactively monitor districts' legal compliance and correct any noncompliance beyond simply operating its administrative complaint system, *id.* ¶¶ 115, 119-22; and
>
> (3) the State's failure to provide needed resources, technical assistance, and training to help districts support students effectively for the full school day, *id.* ¶¶ 101, 115, 123-26.

---

[2] Page number citations to the record refer to the PDF page number and not the internal pagination of the document cited.

Page 13 -  DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Pl. Mot. Class Cert. (ECF No. 64) at 9; *see also* Order and Op. on Mot. to Dismiss (ECF No. 104) at 22 (same). As this Court explained in ruling on Defendants' Motion to Dismiss, Plaintiffs here are challenging Defendants' alleged policy of inaction, which the Ninth Circuit has now expressly explained does not state a claim for systemic relief. *See* Order and Op. on Mot. to Dismiss (ECF No. 104) at 22 ("In sum, plaintiffs argue that the districts' failure to provide a FAPE are a 'predictable effect' of Government action, in this case the State's *failure to develop and implement effective policies* to hold the districts accountable and to provide badly-needed assistance." (Emphasis added); *Martinez*, 46 F.4th at 975 (explaining that lack of effective policies does not give rise to a systemic claim for relief).

In addition to the three "systemic deficiencies" described above, the Complaint identifies six alleged policies and practices as the basis for Plaintiffs' systemic claim under the IDEA. Op. and Order on Class Certification (ECF No. 123) at 15-16. These policies and practices are:

(1) *Failing* to "implement a statewide data collection and monitoring system that would enable it to proactively identify violations of the class members' rights;"

(2) *Failing* to "investigate, monitor, or correct violations of the class members' rights under federal law absent an administrative complaint;"

(3) *Failing* to "investigate, monitor, or correct violations of its own laws and policies concerning reduced school days and instructional time;"

(4) *Failing* to "provide needed technical assistance and resources to local school districts to prevent future noncompliance;"

(5) "ODE's written policy concerning reduced school days[,]" ODE Executive Numbered Memorandum 009-2015-16, and

(6) "ODE's administration of the State's school funding formula[,]" OAR 581-023-0006(7)(b)(D).

*Id.* The first four policies and practices, on their face, cannot be the basis for a systemic claim under *Martinez* because they allege only that Defendants' *inaction* violates the IDEA.

Plaintiffs' characterization regarding ODE's Executive Memorandum and its school funding formula also fails to state a claim for systemic relief under the IDEA.

ODE Executive Numbered Memorandum 009-2015-16 (2016 Executive Memorandum) states that:

> In some very limited circumstances, it may be appropriate to shorten a school day for a student with a disability who engages in severe behaviors that threaten school safety. For students who receive special education services, a decrease in instructional time likely constitutes a significant change to the Individual Education Program (IEP) and/or a change in placement, triggering the procedural safeguard requirements of the Individuals with Disabilities Education Act (IDEA). It is important to note that a reduction for these students should be reserved only for students with the most severe behaviors, and implemented when a continuum of alternative placements that are less restrictive have failed.

[Executive Numbered Memorandum 009-2015-16 - Reduced School Days.pdf (oregon.gov)](#) at 2 (last visited Oct. 28, 2022).

Plaintiffs allege that the 2016 Executive Memorandum systemically violates the IDEA because it "*permits* school districts to shorten students' school days but fails to either effectively clarify the limited circumstances under which such shortened days may be permissible or provide supports to help school districts educate students with behavioral needs for a full school day." Compl. ¶ 53 (emphasis added). The case law is clear, however, that a shortened school day due to disability—in and of itself—does not violate the IDEA. *See, e.g., Adams v. State of Oregon*, 195 F.3d 1141, 1150 (9th Cir. 1999) (a reduction in educational service hours, "even when based upon misconduct arising from a child's disability, does not necessarily violate the IDEA"). Thus, Plaintiffs are challenging the 2016 Executive Memorandum on the basis that it *fails* to affirmatively provide services and guidance, which does not constitute a cognizable systemic claim under the IDEA. *See* Comp. ¶¶ 113-14 (2016 Executive Memorandum is "inadequate to meet the State's statutory obligation to ensure that students with disability-related behaviors receive a free appropriate public education in the least restrictive

environment for a full school day or its obligation under federal civil rights laws to ensure nondiscrimination against these students.").

Plaintiffs' systemic IDEA claim regarding ODE's administration of its school funding formula similarly fails as a matter of law. Plaintiffs' sole allegation is that "the State's education funding formula rewards school districts that impose shortened school days by paying them the same amount for providing a student with one hour of tutoring as it would if that student had received a full day of instruction in school, creating a financial incentive to rely on shortened school days for students with challenging behaviors." Compl. ¶ 53 (citing O.A.R. 581-023-0006(7)(b)(D)). The Complaint fails to identify how the funding formula causes Plaintiffs' alleged injury of denial of FAPE, as required under *Martinez*.

Boiled down, as this Court has already recognized, Plaintiffs allege denial of FAPE because of *inadequacies* that resulted in the loss of educational opportunities and deprivation of educational benefits. Op. and Order on Mot. to Dismiss (ECF No. 104) at 17.[3] The Complaint does not allege any policy, guidance, or rule that itself causes any violation of the IDEA. The IDEA claims must, therefore, be dismissed.

### C. The ADA and RA claims fail for the same reason the IDEA claim fails.

When disability issues arise in the school context, the substantive requirements of the IDEA may overlap with those of these other statutes. While the IDEA does not preempt other statutory claims by children with disabilities, it does require that a plaintiff first exhaust the administrative process if "seeking relief that is also available under" the IDEA. *Hawai'i Disability Rts. Ctr. v. Kishimoto*, 2022 WL 3915472, at *5–6 (D. Haw. Aug. 31, 2022). "It is, in other words, 'designed to channel requests for a FAPE (and its incidents) through IDEA-prescribed procedures,' *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 882 (9th Cir. 2011) (en

---

[3] Defendants continue to dispute the accuracy of these allegations, but regardless of their accuracy, they fail to state a systemic claim for denial of FAPE under the IDEA.

banc), and prevents plaintiffs from using artful pleading to litigate IDEA issues without first utilizing the IDEA process, see S. Rep. No. 99-112, at 12, 15 (1985) (add'l views); H.R. Rep. No. 99-296, at 7 (1985); *D.D. ex rel. Ingram v. L.A. Unified Sch. Dist.*, 18 F.4th 1043, 1049 (9th Cir. 2021) (en banc) (some alterations in *D.D.*)." *Kishimoto*, 2022 WL 2022 WL 3915472, at *5–6.

Thus, a plaintiff must exhaust as required—or establish an exception thereto such as the systemic exception—by the IDEA before relying on an action under the ADA or RA when her suit "'seek[s] relief that is also available' under the IDEA." *Fry*, 137 S. Ct. at 752 (alteration in *Fry*). *Id.* A suit seeks relief that is also available under the IDEA if it seeks relief for the denial of a FAPE. *Fry*, 137 S. Ct. at 752-53.

The dispositive question here as to whether Plaintiffs' ADA and RA claims fail for the same reason their IDEA claim fails is whether the gravamen of the Complaint seeks redress for ODE's failure to ensure that LEAs provide FAPE. *See Kishimoto* (citing *Fry*, 137 S. Ct. at 755). The answer here is clearly yes. Plaintiffs asserts a systemic claim directly under the IDEA for denial of FAPE and then inextricably tether their ADA and RA claims to that same theory. Moreover, Plaintiff's allegations taken as a whole show that seek redress solely for ODE's alleged failure to ensure that LEAs provide a FAPE. Therefore, the ADA and RA claims fail for the same reasons their claim for systemic claim for violation of the IDEA claim fails.

Page 17 -   DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

## V. CONCLUSION

For the reasons set forth above, the Complaint should be dismissed because, taking the allegations as true and in the light most favorable to Plaintiffs, the claims all fail as a matter of law.

DATED November  4 , 2022.

                                                Respectfully submitted,

                                                ELLEN F. ROSENBLUM
                                                Attorney General

                                                *s/ Carla A. Scott*
                                                CARLA A. SCOTT #054725
                                                Senior Assistant Attorney General
                                                NINA R. ENGLANDER #106119
                                                Assistant Attorney General
                                                Trial Attorneys
                                                Tel (971) 673-1880
                                                Fax (971) 673-5000
                                                Carla.A.Scott@doj.state.or.us
                                                Nina.Englander@doj.state.or.us
                                                Of Attorneys for Defendants