Thomas Stenson (OR No. 152894)
tstenson@droregon.org
Joel Greenberg (OR No. 943233)
jgreenberg@droregon.org
Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205-2748
(503) 243-2081

Hannah Benton Eidsath (CT No. 428982)*
hbenton@youthlaw.org
Seth Packrone (NY Reg. No. 5395769)*
spackrone@youthlaw.org
Nina Monfredo (NY No. 5717624)*
nmonfredo@youthlaw.org
National Center for Youth Law
712 H Street NE, DPT #32020
Washington, DC 20002
(510) 899-6559

Selene Almazan-Altobelli (MD No. 10506)*
selene@copaa.org
Council of Parent Attorneys and Advocates
8 Market Place, Suite 300
Baltimore, MD 21285
(844) 426-7224 ext. 702

Ira A. Burnim (D.C. No. 406154)*
irab@bazelon.org
Lewis Bossing (D.C. No. 984609)*
lewisb@bazelon.org
Bazelon Center for Mental Health Law
1090 Vermont Avenue NW, Suite 220
Washington, DC 20005-4900
(202) 467-5730

Michael Folger (NY No. 5151337)*
michael.folger@probonolaw.com
1 Manhattan West
New York, NY 10001
(212) 735-2157


*Admitted pro hac vice


*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| J.N., et al, | Case No. 6:19-CV-00096-AA |
| Plaintiffs, | PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | |
| OREGON DEPARTMENT OF EDUCATION, et al, | |
| Defendants. | |

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND FACTS .......................................................................................5

III.  STANDARD OF REVIEW ....................................................................................7

IV.   ARGUMENT .........................................................................................................8

      A.    PLAINTIFFS' COMPLAINT ALLEGES SUFFICIENT FACTS TO
           STATE VALID CLAIMS AGAINST DEFENDANTS UNDER THE
           IDEA, THE ADA, AND SECTION 504. ...........................................................10

           1.    Plaintiffs State a Claim Under the IDEA That Defendants Have
                 Failed to Ensure That the LEAs Under Their Supervision Provide
                 FAPE. ...................................................................................................10

           2.    Plaintiffs State Claims Under the ADA and Section 504 that
                 Defendants Have Discriminated Against Children with a Disability
                 Either Directly or Indirectly Through the Actions of the LEAs
                   Under Their Supervision. ....................................................................15

      B.    THE ANALYSIS IN *MARTINEZ* AND *STUDENT A* IS NOT
           RELEVANT TO WHETHER PLAINTIFFS HAVE STATED A CLAIM. .........18

           1.    Courts Analyze Whether a Claim Must Be Exhausted Under the
                 IDEA and Whether a Complaint States a Claim Under Different
                 Standards. ............................................................................................19

           2.    *Martinez* and *Student A* Upheld the Dismissal of IDEA Claims for
                 Failure to Exhaust Administrative Remedies, Not Because the
                 Allegations Challenging Policies and Practices Failed to State a
                 Claim. ..................................................................................................21

           3.    Defendants Misinterpret and Mischaracterize the Ninth Circuit's
                 Legal Analysis in *Martinez* and *Student A* About Claims Against
                 LEAs to Broadly Apply to Claims Under the IDEA Well Beyond
                 the Factual Contexts in Those Cases. ..................................................23

           4.    Plaintiffs' Claims Against the SEA Would Survive Even Under
                 Defendants' Misinterpretation of *Martinez* and *Student A* Due to
                 Affirmative Statutory Obligations that Defendants Have Failed to
                 Meet. ...................................................................................................25

CONCLUSION ................................................................................................................28

## TABLE OF AUTHORITIES

Page(s)

## CASES

*Albino v. Baca*,
    747 F.3d 1162 (9th Cir. 2014) .........................................................................20

*Armstrong v. Schwarzenegger*,
    622 F.3d 1058 (9th Cir. 2010) .........................................................................16

*B.D. v. D.C.*,
    No. 15-1139, 2016 WL 11705083 (D.D.C. Aug. 11, 2016) ............................20

*B.F. Goodrich v. Betkoski*,
    99 F.3d 505 (2d Cir. 1996)................................................................................8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................20

*Branch Banking & Trust Co. v. D.M.S.I., LLC*,
    871 F.3d 751 (9th Cir. 2017) ............................................................................9

*Castle v. Eurofresh, Inc.*,
    731 F.3d 901 (9th Cir. 2013) ..........................................................................16

*Chavez v. United States*,
    683 F.3d 1102 (9th Cir. 2012) ..........................................................................8

*Cordero ex rel. Bates v. Pennsylvania Department of Education*,
    795 F. Supp. 1352 (M.D. Pa. 1992) .....................................................11, 12, 14

*Corey H. v. Board of Education of Chicago*,
    995 F. Supp. 900 (N.D. Ill. 1998) ..............................................................12, 13

*D. D. ex rel. Ingram v. Los Angeles Unified School District*,
    18 F.4th 1043 (9th Cir. 2021), *petition for cert. docketed*, No. 21-1373 (U.S. Apr.
    22, 2022) ..........................................................................................................20

*Daugherity v. Traylor Bros., Inc.*,
    970 F.2d 348 (7th Cir. 1992) ............................................................................9

*Doe ex rel. Gonzales v. Maher*,
    793 F.2d 1470 (9th Cir. 1986), *aff'd sub nom. as modified by Honig v. Doe*, 484
    U.S. 305 (1988)..........................................................................................12, 13

*Doe ex rel. Brockhuis v. Arizona Department of Education*,
    111 F.3d 678 (9th Cir. 1997) ........................................26

*Duane B. v. Chester-Upland School District*,
    No. Civ. A. 90-0326, 1994 WL 724991 (E.D. Pa. Dec. 29, 1994) ....................................14

*Emma C. v. Eastin*,
    985 F. Supp. 940 (N.D. Cal. 1997) ..........................................16, 17

*Emma C. v. Torlakson*,
    No. 96-CV-04179-VC, 2018 WL 3956310 (N.D. Cal. Aug. 17, 2018) ...........................14

*Enron Oil Trading & Transportation Co. v. Walbrook Insurance Co., Ltd.*,
    132 F.3d 526 (9th Cir. 1997) ..........................................8

*Gadsby ex rel. Gadsby v. Grasmick*,
    109 F.3d 940 (4th Cir. 1997) ..........................................11

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*,
    896 F.2d 1542 (9th Cir. 1989) ..........................................8

*Hoeft v. Tucson Unified School District*,
    967 F.2d 1298 (9th Cir. 1992) ..........................................10, 11, 20, 25

*Idaho Migrant Council v. Idaho Board of Education*,
    647 F.2d 69 (9th Cir. 1981) ..........................................16

*J.M. ex rel. Mata v. Tennessee Department of Education*,
    358 F. Supp. 3d 736 (M.D. Tenn. 2018) ..........................................12

*J.N. v. Oregon Department of Education*,
    338 F.R.D. 256 (D. Or. 2021) ..........................................5

*J.N. v. Oregon Department of Education*,
    No. 6:19-CV-00096-AA, 2020 WL 5209846 (D. Or. Sept. 1, 2020) ....3, 10, 11, 12, 13, 15

*Jackson v. Pine Bluff School District*,
    No. 4:16CV00301-JM-JTR, 2017 WL 2296896, (E.D. Ark. May 12, 2017) .............13, 17

*John T. ex rel. Robert T. v. Iowa Department of Education*,
    258 F.3d 860 (8th Cir. 2001) ..........................................11

*Kalliope R. ex rel. Irene D. v. New York State Department of Education*,
    827 F. Supp. 2d 130 (E.D.N.Y. 2010) ..........................................12

*Kerr Center Parents Association v. Charles*,
    897 F.2d 1463 (9th Cir. 1990) ..........................................10

*L.L. v. Tennessee Department of Education*,
No. 3:18-cv-00754, 2019 WL 653079 (M.D. Tenn. Feb. 15, 2019)...........................14, 15

*Larry P. ex rel. Lucille P. v. Riles*,
793 F.2d 969 (9th Cir. 1984) .........................................................................................16

*M. C. v. Los Angeles Unified School District*,
559 F. Supp. 3d 1112 (C.D. Cal. 2021) ....................................................11, 12, 13, 20, 21

*Mark H. v. Lemahieu*,
513 F.3d 922 (9th Cir. 2008) .........................................................................................28

*Martinez v. Newsom*,
46 F.4th 965 (9th Cir. 2022) ...........................................................1, 3, 21, 22, 23, 24, 27

*McIntyre v. Eugene School District 4J*,
976 F.3d 902 (9th Cir. 2020) .........................................................................................18

*McKart v. United States*,
395 U.S. 185 (1969)........................................................................................................20

*Morgan Hill Concerned Parents Association v. California Department of Education*,
No. 2:11-CV-3471-KJM-AC, 2013 WL 1326301 (E.D. Cal. Mar. 29, 2013).............13, 14

*Olmstead v. L.C.*,
527 U.S. 581 (1999)........................................................................................17, 27, 28

*P.W. v. Delaware Valley School District*,
No. 3:09cv480, 2009 WL 5215397 (M.D. Pa. Dec. 29, 2009) .........................................13

*Pachl v. Seagren*,
453 F.3d 1064 (8th Cir. 2006) .....................................................................................13

*Paine v. City of Lompoc*,
265 F.3d 975 (9th Cir. 2001) .......................................................................................10

*Panaro v. City of North Las Vegas*,
432 F.3d 949 (9th Cir. 2005) ....................................................................................9, 10

*Payne v. Peninsula School District*,
653 F.3d 863 (9th Cir. 2011), *overruled on other grounds by Albino v. Baca*, 747
F.3d 1162 (9th Cir. 2014) .............................................................................................18

*Pit River Tribe v. Bureau of Land Management*,
793 F.3d 1147 (9th Cir. 2015) ........................................................................................8

*S.B. ex rel. Kristina B. v. California Department of Education*,
327 F. Supp. 3d 1218 (E.D. Cal. 2018)...........................................................................21

*St. Tammany Parish School Board v. Louisiana*,
    142 F.3d 776 (5th Cir. 1998) .............................................................11

*Straube v. Florida Union Free School District*,
    801 F. Supp. 1164 (S.D.N.Y. 1992)...............................................11

*Student A ex rel. Parent A v. San Francisco Unified School District*,
    9 F.4th 1079 (9th Cir. 2021) .............................1, 11, 21, 22, 23, 24, 25, 26, 27

*T.B. ex rel. Brenneise v. San Diego Unified School Dist.*,
    806 F.3d 451 (9th Cir. 2015) .............................................................15

*Wood v. Milyard*,
    566 U.S. 463 (2012)...........................................................................9

## STATUTES

20 U.S.C. § 1416(a) ..................................................................3, 4, 14, 24, 26

20 U.S.C. § 1412(a) ................................................................3, 6, 7, 24, 26

29 U.S.C. § 794(a) ...........................................................................7, 15

42 U.S.C. § 12131(1) .............................................................................15

## RULES

Or. Admin. R. 581-023-0006(7)(b)(D) ...........................................................7

## REGULATIONS

28 C.F.R. § 35.130...............................................................................27

28 C.F.R. § 35.130(b)(1)........................................................................28

28 C.F.R. § 35.130(b)(1)(ii)................................................................7, 27

28 C.F.R. § 35.130(b)(1)(v), (b)(3)..............................................................28

28 C.F.R. § 35.130(b)(7)........................................................................27

28 C.F.R. § 35.130(d)...........................................................................27

34 C.F.R. § 300.507 *et seq.*....................................................................6

34 C.F.R. § 104.33(a), (b)(1)...................................................................28

34 C.F.R. § 104.4(b)(1).......................................................................7, 28

34 C.F.R. § 104.4(b)(1)(v), (b)(4)........................................................................28

34 C.F.R. § 104.4(b)(2)........................................................................................28

34 C.F.R. § 300.151 *et seq.*................................................................................6

34 C.F.R. § 300.600(a)(3)....................................................................................7

34 C.F.R. § 300.600(d) ........................................................................................6

34 C.F.R. § 300.600(d)(1)..................................................................................14

## I.    INTRODUCTION

Rather than carry out their statutory duties to monitor and enforce the implementation of the Individuals with Disabilities Education Act ("IDEA") and ensure non-discrimination under Title II of the Americans with Disabilities Act ("Title II" or "ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") by school districts across Oregon, Defendants continue to deny that they have such duties and reject the idea that they could be held accountable for failing to meet them.  Meanwhile, hundreds of students with disabilities in the Plaintiff Class continue to be illegally denied a full day of school and suffer the harms associated with such a denial.  Having failed once to get this case dismissed, Defendants return for another bite at the apple with their Motion for Judgment on the Pleadings (ECF No. 165) (hereinafter "Defendants' Motion") claiming that two recently decided Ninth Circuit cases "squarely rejected" the legal theory put forward by Plaintiffs in their Complaint ("Compl." ECF No. 1).  Defs.' Mot. at 2.  This is simply not true.

Defendants' Motion is based *entirely* on their fundamental misinterpretation of two recent Ninth Circuit cases – *Martinez v. Newsom*, 46 F.4th 965 (9th Cir. 2022) and *Student A ex rel. Parent A v. San Francisco Unified School District*, 9 F.4th 1079 (9th Cir. 2021).  Both cases turned on whether the plaintiffs exhausted their claims under the IDEA, and neither case addressed whether the plaintiffs stated a claim under the IDEA.  Here, as Plaintiffs made clear in their Motion for Partial Summary Judgment, not only did the Named Plaintiffs *actually exhaust* their administrative remedies, but their IDEA claims also qualify for several exceptions to the exhaustion requirement.  Pls.' Mot. for Partial Summ. J. (ECF No. 119) at 5-14.  Moreover, rather than respond to Plaintiffs' Partial

Summary Judgment Motion on the merits, Defendants "waiv[ed] any affirmative defenses related to exhaustion in this case." Defs.' Resp. to Pls.' Mot. for Partial Summ. J. and Notice of Intent to Amend Answer (ECF No. 131) at 2 ("Notice of Intent to Amend Answer"); *see also* Defs.' First Am. Answer to Compl. (ECF No. 132). As two cases firmly rooted in the question of exhaustion, neither *Martinez* nor *Student A* supports Defendants' Motion.

In arguing to dispose of Plaintiffs' claims under Title II and Section 504, Defendants further confuse the analysis by suggesting that Plaintiffs were required to exhaust their administrative remedies under the IDEA for these claims. *See* Defs.' Mot. at 17. Plaintiffs explained in their Partial Summary Judgment Motion that, under the Supreme Court's test in *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017), their ADA and Section 504 claims are not subject to the IDEA's exhaustion requirement. Pls.' Mot. for Partial Summ. J. at 14-15. But once again, since Defendants waived exhaustion as an affirmative defense for *all* claims in response to that motion, Notice of Intent to Amend Answer at 2, their ADA and Section 504 analysis is similarly misplaced.

With exhaustion no longer a live issue in this case, Defendants' misinterpretation of *Martinez* and *Student A* would cut out of whole cloth a new legal standard for *all* "systemic claims" under the IDEA. But these cases do not speak to IDEA claims outside of the exhaustion context, let alone hold that all systemic claims under the IDEA are analyzed under the same test as whether the claims must be exhausted. Whether the challenged conduct substantively violates the IDEA is an entirely separate question from whether that same challenge must be exhausted under the IDEA.

As Plaintiffs noted in their Opposition to Defendants' Motion to Dismiss (ECF No. 41), "[a] significant body of case law" and "[a]t least four courts of appeals and multiple district courts" have validated the legal theory presented in Plaintiffs' Complaint. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss at 1-2 (listing cases supporting Plaintiffs' legal claims against the State Educational Agency). In denying Defendants' Motion to Dismiss (ECF No. 33), this Court "agree[d]" with Plaintiffs and found that "the State has an affirmative statutory duty to monitor, investigate, and enforce the IDEA requirements and to assist the districts to ensure that they comply with state and federal law." *J.N. v. Or. Dep't of Educ.*, No. 6:19-CV-00096-AA, 2020 WL 5209846, at *10 (D. Or. Sept. 1, 2020).

Despite this Court's decision on the Motion to Dismiss validating Plaintiffs' allegations about the duties of State Educational Agencies ("SEAs") under the IDEA, Defendants now claim that "Plaintiffs' legal theory . . . has *never* been supported by existing precedent and has now been squarely rejected by the Ninth Circuit." Defs.' Mot. at 2 (emphasis added). Plaintiffs' legal theory is based directly on the role prescribed for SEAs by the IDEA. *See, e.g.,* Compl. ¶¶ 39-41 (citing 20 U.S.C. §§ 1412(a)(11)(A), (a)(1), (a)(5), (12); 20 U.S.C. §§ 1416(a)(1)(C), (a)(2)(A), (a)(3)(A), (a)(3)(B); 20 U.S.C. §§ 1411(e)(2)(B)(i), 1415). Essentially, Defendants claim that the Ninth Circuit gutted legal claims about the role of SEAs under the IDEA in two cases that analyzed claims only within the context of exhaustion against local school districts, not SEAs.[1] Defendants' interpretation not only distorts the Ninth Circuit's analysis in *Martinez* and *Student A*

---

[1] *Martinez* dismissed the claims against the SEA for mootness, not for a failure to exhaust or failure to state a claim. *See Martinez*, 46 F.4th at 972-73.

beyond recognition, but it also flies in the face of the statutory language of the IDEA, an established body of case law, and this Court's decision on the Motion to Dismiss.

To fit their misinterpretation of *Martinez* and *Student A*, Defendants repeatedly frame Plaintiffs' allegations against the Oregon Department of Education ("ODE") as solely based on an "alleged negligent failure by Defendants to meet their duties under the IDEA." Defs.' Mot. at 13. The failures Plaintiffs identified in the Complaint and this Court validated in its Motion to Dismiss decision comprise the essence of the ODE's clear statutory duties under the IDEA to affirmatively monitor and enforce school districts' implementation of the IDEA. Compl. ¶ 40 (citing 20 U.S.C. §§ 1416(a)(1)(C), (a)(3)(A), (a)(3)(B)). Defendants have been on notice of the problems with shortened school days for years, including through the filing of administrative complaints by Named Plaintiffs and others across the State of Oregon, and have still failed to carry out their duties to correct the problems. Compl. ¶¶ 62, 89, 102, 105-11. Simply putting the word "negligent" in front of each of Plaintiffs' allegations does not transform them all into a "policy of inaction," Defs.' Mot. at 14, and does nothing to diminish the clear statutory violations that Plaintiffs articulated in their Complaint. In addition to mischaracterizing Plaintiffs' IDEA claims about the ODE's obligations as the SEA, Defendants have also admitted that Plaintiffs did identify two written policies of the ODE in the Complaint. *Id.* Plaintiffs have also alleged legal violations under the ADA and Section 504, and Defendants completely fail to articulate a theory why these allegations should be dismissed.

Plaintiffs have alleged sufficient facts in their Complaint to state a claim that Defendants' affirmative failures under the IDEA, Section 504, and the ADA to carry out their clear duties result in illegally shortened school days for hundreds of children in

Oregon. Aside from misinterpretations and mischaracterizations of two recent Ninth Circuit cases, Defendants' latest attempt to shirk their duties in this case presents nothing new. This Court has already decided the substantive issues Defendants' Motion raises. Accordingly, Defendants' Motion should be denied in its entirety.

## II.    BACKGROUND FACTS

The Named Plaintiffs and Plaintiff Class are "students with disabilities aged 3 to 21 residing in Oregon who are eligible for special education and related services under the IDEA and are currently being subjected to a shortened school day or are at substantial risk of being subjected to a shortened school day due to their disability-related behaviors." Compl. ¶ 31; *J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256, 275 (D. Or. 2021). Due to their disabilities, they are often limited to "one or two hours of instruction per day" instead of the full day typically lasting six hours. Compl. ¶ 3. Some students receive as little as half an hour of daily instruction. *Id.* ¶¶ 3, 20, 97.

Plaintiffs allege that the State has perpetuated and, in some instances, incentivized many school districts to routinely, unnecessarily, and unlawfully subject students with disabilities to shortened school days "without first developing, implementing, and revising as needed plans to provide academic and behavioral interventions that will support the students' needs." *Id.* ¶ 50; *see, e.g., id.* ¶¶ 1, 12, 61, 77, 83, 97-99, 105-11. These students "frequently fall behind academically and miss out on critical social opportunities in which they can practice appropriate behaviors," *id.* ¶ 5, and their needless exclusion causes them to suffer stigma, emotional trauma, humiliation, and shame*, see id.* ¶¶ 4, 51.

Plaintiffs further allege that the State has been aware of the alleged misuse of shortened school days by the local school districts, or local educational agencies ("LEAs"),

under its supervision due to various forms of notice, including the filing of administrative complaints by Named Plaintiffs and others, for years without taking effective action. *Id.* ¶¶ 62, 89, 102, 105-11. The State's belated and limited responses to this ongoing problem—such as a 2016 written policy on instructional time and a law the Governor signed in 2017 mandating new procedures for shortened school days—have fallen far short of the State's responsibilities to the Plaintiff Class. *See generally id.* ¶¶ 112-29. As a result of the State's persistent failure to correct this problem, children with disabilities in the Plaintiff Class continue to be denied a free appropriate public education ("FAPE") and subjected to discrimination. *Id.* ¶¶ 127, 129.

Specifically, the Complaint alleges, despite being on notice of these issues for years, Defendants have failed to ensure a FAPE in the least restrictive environment ("LRE") under the IDEA and nondiscrimination under Title II of the ADA and Section 504 for the Named Plaintiffs and Class members due to at least four broad-based deficiencies: (1) the lack of state-level policies or procedures to collect essential information regarding the school districts that impose shortened school days and may need further supervision and monitoring, *id.* ¶¶ 115-18, *see also* 20 U.S.C. §1416(a)(3); 34 C.F.R. § 300.600(d); (2) the State's failure to proactively monitor the districts' legal compliance and correct any noncompliance beyond simply operating its administrative complaint system, Compl. ¶¶ 115, 119-22; 34 C.F.R. § 300.151 *et seq.*, 34 C.F.R. §300.507 *et seq.*; (3) the State's failure to enforce its own laws and policies and correct violations thereof, Compl. ¶ 119, *see also* 20 U.S.C. § 1412(a)(11)(A); and (4) the State's failure to provide needed resources, technical assistance, and training to help districts support students effectively for the full school day, Compl. ¶¶ 101, 115, 123-26, *see also* 20 U.S.C. § 1412(a)(12); 34 C.F.R. §

300.600(a)(3). *See also* 20 U.S.C. §§ 1412(a)(1)(A), (5)(A), (11)(A), (15); 42 U.S.C. § 12132; 29 U.S.C. § 794; 28 C.F.R. § 35.130(b)(1)(ii); 34 C.F.R. § 104.4(b)(1). Plaintiffs also allege that two written ODE policies create a risk of shortened school days and potentially even encourage schools to use them inappropriately: (1) the ODE's January 2016 written policy[2] "approving the practice [of shortened school days] for students with severe behaviors," Compl. ¶¶ 13, 53, and (2) the ODE's school funding formula[3] that provides schools with the same amount of money whether the student receives a single hour of tutoring or "a full day of instruction in school, creating a financial incentive to rely on shortened school days for students with challenging behaviors," *id.* ¶ 53; *cf.* 20 U.S.C. § 1412(a)(5)(B)(i). Plaintiffs allege that these broad-based deficiencies and policies have denied the Named Plaintiffs and members of the Class their rights to FAPE in the LRE and to nondiscrimination, in violation of federal law. *See* Compl. ¶¶ 7, 31-36, 114.

The essence of the Complaint is that the State fails to correct these critical deficiencies and continues to have policies that promote them despite a known, longstanding, and widespread practice among Oregon school districts of unnecessarily denying students with disability-related behaviors the opportunity to attend a full day of school. In so doing, the State has violated its clear statutory duties under the IDEA and its obligations under Title II of the ADA and Section 504 by failing to ensure FAPE and nondiscrimination for students with disabilities.

## III.    STANDARD OF REVIEW

---

[2] *See* Oregon Dep't of Ed., Executive Numbered Memorandum 009-2015-16 Reduced School Days (Jan. 27, 2016), https://www.ode.state.or.us/news/announcements/announcement.aspx?ID=13563.
[3] *See* Or. Admin. R. 581-023-0006(7)(b)(D).

When evaluating a motion for judgment on the pleadings, a court must accept the allegations of the non-moving party as true. *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Judgment on the pleadings "may only be granted when the pleadings show that it is 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'" and the moving party is clearly entitled to prevail. *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997) (quoting *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 529 (2d Cir. 1996)).

"Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)). Judgment on the pleadings may only be granted when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains such that it is entitled to judgment as a matter of law. *Enron Oil Trading & Transp. Co.*, 132 F.3d at 529.

## IV.    ARGUMENT

Plaintiffs' Complaint states a claim under the relevant statutes. The analysis in *Martinez* and *Student A*, which both address the systemic exception to exhaustion and not the elements of a claim against the SEA under the IDEA, the ADA, or Section 504, is inapposite to this case. Even under the erroneous legal standard articulated by Defendants in Defendants' Motion, Plaintiffs' Complaint still states a claim.

Defendants have explicitly waived exhaustion as an affirmative defense in this case. Notice of Intent to Amend Answer at 2; Defs.' First Am. Answer to Compl. at 15. Plaintiffs do not understand Defendants' Motion to include an attempt to rescind that waiver nor to even offer a legal justification for why doing so might be permissible at this stage. Indeed, it is not. According to the Supreme Court, "An affirmative defense, once forfeited, is 'exclu[ded] from the case,' 5 C. Wright & A. Miller, Federal Practice and Procedure § 1278, pp. 644–645 (3d ed. 2004), and, as a rule, cannot be asserted on appeal." *Wood v. Milyard*, 566 U.S. 463, 470 (2012). Here, where Defendants explicitly waived an affirmative defense, they do not assert and they could not show the "good cause" required by Federal Rule of Civil Procedure 16(4) to amend their pleading to reinsert it. *See Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 764 (9th Cir. 2017) (analyzing a failure to raise an affirmative defense, rather than an explicit waiver, and finding that the analysis "primarily considers the diligence of the party seeking the amendment," and "[i]f that party was not diligent, the inquiry should end" (citations omitted)); *see also Daugherity v. Traylor Bros., Inc.*, 970 F.2d 348, 352 (7th Cir. 1992) (finding it was error to allow defendants to amend answer to add failure to exhaust administrative remedies).

In *Branch Banking*, the Ninth Circuit denied defendants' motion to add defenses after the deadline to amend pleadings had passed mainly because defendants had known about the basis for the defense "long before the deadline to amend had passed." 871 F.3d at 765. In another case, the Ninth Circuit allowed defendants to raise at summary judgment an affirmative defense *that only came into existence* after defendants' responsive pleading. *Panaro v. City of N. Las Vegas*, 432 F.3d 949, 952 (9th Cir. 2005) (noting that the Supreme Court did not make available the affirmative defense of exhaustion of administrative

remedies under the Prison Litigation Reform Act until after the pleadings stage). Here, Defendants not only knew about the defense, but they explicitly waived it.[4] Even if Defendants had attempted to rescind their explicit waiver of this affirmative defense, there would be no legal justification for them to do so.

## A. PLAINTIFFS' COMPLAINT ALLEGES SUFFICIENT FACTS TO STATE VALID CLAIMS AGAINST DEFENDANTS UNDER THE IDEA, THE ADA, AND SECTION 504.

Defendants seek a judgment on the pleadings that Plaintiffs' Complaint fails as a matter of law. However, for the reasons set forth below, Plaintiffs' Complaint sufficiently alleges facts that constitute causes of action under the IDEA, the ADA, and Section 504.[5]

### 1. Plaintiffs State a Claim Under the IDEA That Defendants Have Failed to Ensure That the LEAs Under Their Supervision Provide FAPE.

As the Ninth Circuit has explained, "the states have *primary responsibility* for ensuring that local educational agencies comply with the requirements of the IDEA," *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992) (emphasis added), meaning that, "the state educational agency, in this case the ODE, has the ultimate responsibility for assuring that all [students with disabilities] have the right to a free appropriate public education," *Kerr Ctr. Parents Ass'n v. Charles*, 897 F.2d 1463, 1470 (9th Cir. 1990). As this Court has already held, this is so "regardless of the actions of the

---

[4] Plaintiffs would also suffer significant prejudice if Defendants were able to rescind their waiver of exhaustion as an affirmative defense. *See Paine v. City of Lompoc*, 265 F.3d 975, 980 n.1 (9th Cir. 2001). This case is almost four years old, discovery has closed, and Plaintiffs agreed to withdraw their filed Partial Summary Judgment Motion seeking summary judgment on the issue of exhaustion partly due to Defendants' waiver.

[5] Plaintiffs have adapted Part A of this Section from their Partial Summary Judgment Motion because Plaintiffs have already briefed issues that are implicated by Defendants' Motion, including failure to state a claim "because the allegations concern the delivery of special education services to individual students which is the responsibility of the local education agency under the IDEA." Defs.' Answer (ECF No. 109) ¶¶ 75-76.

districts and the parents." *J.N.*, 2020 WL 5209846 at *11; *see also, e.g.*, *John T. ex rel. Robert T. v. Iowa Dep't of Educ.*, 258 F.3d 860, 864 (8th Cir. 2001) ("Indeed, several circuits have held State Agencies liable when they have failed to ensure Local Agencies' implementation of IDEA's requirements."); *St. Tammany Parish Sch. Bd. v. Louisiana*, 142 F.3d 776, 784 (5th Cir. 1998) ("Therefore, it seems clear that a [state educational agency] may be held responsible if it fails to comply with its duty to assure that IDEA's substantive requirements are implemented." (alteration in original) (citation omitted)); *Gadsby ex rel. Gadsby v. Grasmick*, 109 F.3d 940, 953 (4th Cir. 1997) (holding the SEA "may be held liable for the state's failure to assure compliance with IDEA"); *M. C. v. L.A. Unified Sch. Dist.*, 559 F. Supp. 3d 1112, 1121 (C.D. Cal. 2021) (finding that plaintiff stated a claim against the SEA through allegations that its policies "allowed the District to maintain policies which denied Plaintiff a FAPE in the least restrictive environment").

Nothing in the cases cited in Defendants' Motion disturbed this well-established body of case law. In fact, in *Student A*, the Ninth Circuit reinforced it noting that "the state bears 'ultimate responsibility for ensuring . . . compl[iance] with the IDEA.'" *Student A ex rel. Parent A v. S.F. Unified Sch. Dist.*, 9 F.4th 1079, 1085 (9th Cir. 2021) (alterations in original) (quoting *Hoeft*, 967 F.2d at 1307).

a. *Plaintiffs state a claim against a SEA under the IDEA if the SEA fails to ensure school districts are in compliance with the law.*

"Even though the State may have satisfied its direct duties, it is essentially responsible for the actions taken by the local educational agency." *Straube v. Fla. Union Free Sch. Dist.*, 801 F. Supp. 1164, 1179 (S.D.N.Y. 1992). This is because "[t]he IDEA imposes on the state an overarching responsibility to ensure that the rights created by the statute are protected, regardless of the actions of local school districts." *Cordero ex rel.*

*Bates v. Pa. Dep't of Educ.*, 795 F. Supp. 1352, 1362 (M.D. Pa. 1992). "The state must assure that in fact the requirements of the IDEA are being fulfilled." Thus "the crux of the state's liability" is "to ensure that the systems it put in place are running properly and that if they are not, to correct them." *Id.*

The SEA is also liable where a school district fails to comply with the IDEA, *see Corey H. v. Bd. of Educ. of Chi.*, 995 F. Supp. 900, 913 (N.D. Ill. 1998), including but not limited to where a policy from the SEA or the SEA's persistent failures to correct an LEA's actions lead to the denial of FAPE, *see, e.g., M. C.*, 559 F. Supp. 3d at 1121; *J.M. ex rel. Mata v. Tenn. Dep't of Educ.*, 358 F. Supp. 3d 736, 748 (M.D. Tenn. 2018); *Kalliope R. ex rel. Irene D. v. N.Y. State Dep't of Educ.*, 827 F. Supp. 2d 130, 141 n.3 (E.D.N.Y. 2010). However, "[t]he violation of even one child's rights under the Act is sufficient to visit liability on the state." *Cordero*, 795 F. Supp. at 1363.

The Complaint alleges that Defendants have not only failed to ensure that the LEAs under their supervision comply with their obligations to provide FAPE but also have perpetuated and even incentivized the LEA's illegal activities. *See, e.g.,* Compl. ¶¶ 8, 14, 27, 28, 37-41, 112-29. Consistent with this Court's prior holding that the ODE is ultimately responsible for ensuring that all qualified children with disabilities receive a FAPE regardless of the actions of LEAs, *J.N.*, 2020 WL 5209846, at *11, and with the case law described above, the Complaint states a claim under the IDEA.

> b. *Plaintiffs state a claim against a SEA under the IDEA if the SEA has failed to effectively fulfill its own monitoring and enforcement duties.*

Among the ways in which a state may fail to ensure compliance with the IDEA is when the SEA does not adequately monitor and enforce compliance with the statute. *See Doe ex rel. Gonzales v. Maher*, 793 F.2d 1470, 1492 (9th Cir. 1986) (holding that a "state's

monitoring procedure was demonstrably insufficient to protect the rights of [students with disabilities]," notwithstanding the fact that "the [federal] executive branch approved the state's overall plan for [children with disabilities]"), *aff'd sub nom. as modified by an equally divided Court*, *Honig v. Doe*, 484 U.S. 305 (1988); *see also M. C.*, 559 F. Supp. 3d at 1121 ("[A] state educational agency . . . can be held liable for IDEA violations when it fails to comply with its duty to assure that the IDEA's requirements are implemented." (first alteration in original) (quoting *Jackson v. Pine Bluff Sch. Dist.*, No. 4:16CV00301-JM-JTR, 2017 WL 2296896, at *5, (E.D. Ark. May 12, 2017) (citing *Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006)))); *P.W. v. Del. Valley Sch. Dist.*, No. 3:09cv480, 2009 WL 5215397, at *5 (M.D. Pa. Dec. 29, 2009) (plaintiff sufficiently alleged that the SEA "failed to establish 'procedures to ensure that it complies with the monitoring and enforcement requirements'").

As this Court previously explained, "although school districts formulate and implement IEPs, the State has an affirmative statutory duty to monitor, investigate, and enforce the IDEA requirements and to assist the districts to ensure that they comply with state and federal law." *J.N.*, 2020 WL 5209846, at *10. Thus, plaintiffs state a claim where the SEA "has failed generally to monitor, investigate and enforce the IDEA." *Morgan Hill Concerned Parents Ass'n. v. Cal. Dep't of Educ.*, No. 2:11-CV-3471-KJM-AC, 2013 WL 1326301, at *10 (E.D. Cal. Mar. 29, 2013); *Corey H.*, 995 F. Supp. at 915 (IDEA requires the SEA "to ensure LRE compliance through an effective monitoring plan. Thus, one must look to the results of the [SEA's] monitoring efforts to determine whether the [SEA] is in compliance with the IDEA.").

As part of their statutory monitoring duties, states are required to use such data indicators "as are needed to adequately measure performance" in specified areas, including the "[p]rovision of a free appropriate public education in the least restrictive environment." 20 U.S.C. § 1416(a)(3); *see* 34 C.F.R. § 300.600(d)(1). The SEA may therefore be held liable for failing to collect data that is needed to effectively monitor LEAs' compliance or for failing to adequately analyze that data to determine which districts need further monitoring or corrective action. *See Morgan Hill*, 2013 WL 1326301, at *11 (plaintiff stated a plausible claim for relief by alleging that the SEA "fails to solicit data effectively from parents" and "that not all the information collected is utilized" by the SEA); *Emma C. v. Torlakson*, No. 96-CV-04179-VC, 2018 WL 3956310, at *4 (N.D. Cal. Aug. 17, 2018) (finding that the State is out of compliance with federal law "if its failure to collect certain data on a statewide basis would likely prevent it from effectively fulfilling its monitoring and enforcement obligations under the IDEA").

Likewise, plaintiffs may state a claim against the SEA for failing to adequately monitor and enforce compliance with the IDEA if the State adopts a passive approach to its supervisory duties that is insufficient to correct noncompliance. "[T]he state's role amounts to more than creating and publishing some procedures and then waiting for the phone to ring." *Cordero*, 795 F. Supp. at 1362; *see also L.L. v. Tenn. Dep't of Educ.*, No. 3:18-cv-00754, 2019 WL 653079, at *4-5 (M.D. Tenn. Feb. 15, 2019) (citing *Cordero*) (rejecting state's motion to dismiss where plaintiffs alleged that the SEA was aware of a segregated school for students with disabilities "but failed to take basic supervisory steps to prevent its being used as a tool for warehousing certain types of disabled students despite their LRE needs, directly resulting in the deprivations that form the basis of the plaintiffs'

claims" *id.*, at *5); *Duane B. v. Chester-Upland Sch. Dist.*, No. Civ. A. 90-0326, 1994 WL 724991, at *9 (E.D. Pa. Dec. 29, 1994) (finding that the State "abdicated its supervisory responsibility . . . under the law in favor of the 'gentler' approach of providing mere technical assistance").

As the Court has recognized, Plaintiffs' Complaint plainly alleges that the State has violated its own "affirmative statutory duty to monitor, investigate, and enforce the IDEA requirements and to assist the districts to ensure that they comply with state and federal law." *J.N.*, 2020 WL 5209846, at *10.  Plaintiffs specifically allege that the State does not collect relevant data regarding shortened school days that is needed to effectively monitor whether LEAs are providing them FAPE in the LRE, that its refusal to actively carry out its supervisory duties is insufficient to enforce compliance, and that it fails to provide LEAs with the assistance and supports that they need to avoid the misuse of shortened school days.  *See* Compl. ¶¶ 115-27.  Consistent with the case law cited above, these allegations in the Complaint additionally state a claim under the IDEA.

### 2. Plaintiffs State Claims Under the ADA and Section 504 that Defendants Have Discriminated Against Children with a Disability Either Directly or Indirectly Through the Actions of the LEAs Under Their Supervision.

Plaintiffs' Complaint also states claims against Defendants under Title II of the ADA and Section 504.  The two statutes differ primarily about how coverage is determined: Title II of the ADA applies to any "public entity," defined to include a state and its departments, *see* 42 U.S.C. § 12131(1); Section 504 applies to recipients of "Federal financial assistance," 29 U.S.C. § 794(a).  The substantive standards of the two statutes are "almost identical" and "courts typically analyze the two provisions together." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 467 (9th Cir. 2015).

The SEA "has an obligation to supervise the local districts to ensure compliance" with both the ADA and Section 504. *Idaho Migrant Council v. Idaho Bd. of Educ.*, 647 F.2d 69, 71 (9th Cir. 1981) (so holding with regard to Title VI of Civil Rights Act, which was the model for Section 504). This is because "Title II's obligations apply to public entities regardless of how those entities chose to provide or operate their programs and benefits. . . . The law is clear—the State Defendants may not contract away their obligation to comply with federal discrimination laws." *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910 (9th Cir. 2013); *see also, e.g., Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1069 (9th Cir. 2010) (requiring state department of corrections "to ensure ADA-compliant conditions for prisoners and parolees being held under its authority," regardless of whether the state directly provided them housing or arranged for local counties to provide housing); *Larry P. ex rel. Lucille P. v. Riles*, 793 F.2d 969, 980-81 (9th Cir. 1984) (state officials held liable under Section 504 for failing to ensure that IQ tests implemented by local school districts were validated for the specific purpose for which they were used). Thus, if as Plaintiffs allege, Oregon's school districts violate the ADA and Section 504, the State may be held legally responsible for their discrimination.

The regulations implementing the ADA and Section 504 confirm this conclusion. For example, in *Emma C. v. Eastin*, the plaintiffs alleged violations of the ADA and Section 504 on the ground that the State had "failed to monitor [an LEA's] compliance with state and federal laws that mandate the provision of a FAPE to all children with disabilities," to adequately investigate complaints regarding that same LEA, and to enforce compliance following the SEA's investigations. 985 F. Supp. 940, 948 (N.D. Cal. 1997). After listing the Section 504 and ADA regulations that apply to the state defendants, the *Emma C. v.*

*Eastin* court explained: "Plaintiffs' complaint alleges that Ravenswood violates Section 504 and the ADA . . . and that the conduct of the State Defendants has perpetuated this discrimination.  These allegations of 'discrimination,' as that term is defined by the Section 504 and ADA regulations, satisfy the liberal federal pleading requirements."  *Id.*; *see also Jackson*, 2017 WL 2296896, at *12 (adopting recommendation of the magistrate judge that the plaintiffs stated a claim under Section 504 against the SEA where the complaint alleged that, *inter alia*, the SEA refused to modify policies resulting in discrimination, refused to monitor whether a private school complied with the IDEA in its provision of FAPE, and "refuse[d] to take any affirmative action to investigate, monitor, and correct" violations that led to the "continued segregation of students with severe disabilities [and] depriving them of a FAPE").  As these cases reveal, in addition to its own conduct that directly discriminates against students with disabilities, a state may be held liable under the ADA and Section 504 when it aids or perpetuates discriminatory conduct by LEAs.

In this case, the Complaint clearly alleges that Oregon LEAs discriminate against the children in the Plaintiff Class due to their disability-related behaviors by depriving them of instructional time that they need and that other students receive and by needlessly excluding them from learning alongside their peers.  *See, e.g.,* Compl. ¶¶ 1-6, 48-52.  The forms of discrimination alleged in this matter include a violation of the ADA's and Section 504's "integration mandate" under *Olmstead v. L.C.*, 527 U.S. 581 (1999).  *See* Compl. ¶¶ 1-6, 12-14, 48-53, 105, 112-29.

The Complaint further alleges that, despite being on notice of these issues for years, the State has perpetuated this discrimination by failing to adequately monitor LEA compliance with the law, enforce compliance beyond administering its complaint system,

and provide needed technical assistance and supports to prevent noncompliance.  *See, e.g.*, *id.* ¶¶ 12-14, 112-29.  Furthermore, Plaintiffs allege that the ODE's failure to modify its own policies, practices, and procedures—such as its policy of refusing to collect and analyze data on the use of shortened school days and its statewide funding formula that incentivizes their usage—place Class members at serious risk of unnecessary segregation and isolation.  *See id.* ¶ 53.  Consistent with the case law above, Plaintiffs' Complaint states claims against Defendants under the ADA and Section 504.

B.     **THE ANALYSIS IN *MARTINEZ* AND *STUDENT A* IS NOT RELEVANT TO WHETHER PLAINTIFFS HAVE STATED A CLAIM.**

Defendants' Motion rests entirely on the notion that the Ninth Circuit in *Martinez* and *Student A* "squarely rejected" the legal theory put forward by Plaintiffs in their Complaint and that "this new, controlling case law" merits "this Court to take another look at [Plaintiffs'] Complaint."  Defs.' Mot. at 2, 9.  However, neither case even addresses the standard for stating a claim under Federal Rule of Civil Procedure 12(b)(6) or discusses the substantive standard of when a policy violates the IDEA.  Instead, *Martinez* and *Student A* analyzed "systemic claims" under the IDEA regarding only the question of whether they qualify for an exception to exhaustion.  Since Defendants have here waived IDEA exhaustion as an affirmative defense, these two cases do not help them.  Notice of Intent to Amend Answer at 2; *see McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 907 n.2 (9th Cir. 2020) ("The Individuals with Disabilities Education Act's exhaustion requirement is not jurisdictional, but rather a claims processing provision that defendants may offer as an affirmative defense." (citing *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 867 (9th Cir. 2011) (en banc), *overruled on other grounds Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014))).

To the extent Defendants are attempting to resurrect their exhaustion affirmative defense by bringing *Martinez* and *Student A* to the Court's attention, Plaintiffs explained at length why exhaustion does not bar any of their claims in their Motion for Partial Summary Judgment, and these arguments survive the exhaustion analysis in *Martinez* and *Student A*. Not only did the Named Plaintiffs actually exhaust their administrative remedies and repeatedly put the SEA on notice of these problems over a period of years, Pls.' Mot. for Partial Summ. J. at 5-8, but Plaintiffs' IDEA claims also qualify for exceptions to the exhaustion requirement. These include: (1) the futility exception because Oregon administrative law judges do not have the power to grant relief against the ODE, *id.* at 5-6, and (2) the exception for challenging a policy or practice of general applicability (or the "systemic exception") that Defendants have failed to correct despite being on notice of the problems for years, *id.* at 8-14.

Plaintiffs also explained in their Partial Summary Judgment Motion that their ADA and Section 504 claims are not subject to the IDEA's exhaustion requirement under the Supreme Court's test in *Fry*. *Id.* at 14-15. Rather than seeking redress for a denial of FAPE, Plaintiffs' ADA and Section 504 claims seek relief for harms related to the illegal separation of these students with disabilities from their peers without disabilities. *Id.*[6]

### 1.    Courts Analyze Whether a Claim Must Be Exhausted Under the IDEA and Whether a Complaint States a Claim Under Different Standards.

Although exhaustion is unnecessary here for the reasons explained above, the test that courts apply to determine if exhaustion is necessary does not support Defendants'

---

[6] If Defendants are attempting to rescind their waiver of exhaustion as an affirmative defense, Plaintiffs request the opportunity to fully brief the issues of whether an explicit waiver of this type can be rescinded and the substantive issue of exhaustion, if necessary.

Motion.  It is based on "whether pursuit of administrative remedies under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme."  *Hoeft*, 967 F.2d at 1303.  These general purposes include "the exercise of discretion and educational expertise by state and local agencies, afford[ing] full exploration of technical educational issues, further[ing] development of a complete factual record, and promot[ing] judicial efficiency."  *Id.* (citing *McKart v. United States*, 395 U.S. 185, 192 (1969)).

The relevant analysis here is whether a Complaint states a claim under Rule 12(b)(6), the standard applicable to Defendants' Motion, for which courts look to whether plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[T]o set forth a plausible IDEA claim, 'a plaintiff must plead sufficient facts that would allow a reasonable trier of fact to infer that the defendant denied the plaintiff's right to a FAPE.'" *M. C.*, 559 F. Supp. 3d at 1121 (quoting *B.D. v. D.C.*, No. 15-1139, 2016 WL 11705083 at *2 (D.D.C. Aug. 11, 2016)).

Courts analyze Rule 12(b)(6) motions and exhaustion under different standards aimed at achieving distinct purposes.  "Exhaustion is an affirmative defense subject to a motion for summary judgment, not dismissal for failure to state a claim."  *D. D. ex rel. Ingram v. L.A. Unified Sch. Dist.*, 18 F.4th 1043, 1067 n.3 (9th Cir. 2021) (Paez, J., dissenting) (citing *Albino v. Baca*, 747 F.3d 1162, 1169, 1171 (9th Cir. 2014) (en banc)), *petition for cert. docketed*, No. 21-1373 (U.S. Apr. 22, 2022).  The different approaches are also reflected by the fact that courts analyze these two issues separately using their respective tests.  *See, e.g.*, *M. C.*, 559 F. Supp. 3d at 1118-20, 1121 (applying different tests

to deny SEA's argument for dismissal for failure to exhaust and its motion to dismiss for failure to state a claim); *S.B. ex rel. Kristina B. v. Cal. Dep't of Educ.*, 327 F. Supp. 3d 1218, 1260 (E.D. Cal. 2018) (dismissing claim for failure to exhaust and so not reaching failure to state a claim argument).

### 2. *Martinez* and *Student A* Upheld the Dismissal of IDEA Claims for Failure to Exhaust Administrative Remedies, Not Because the Allegations Challenging Policies and Practices Failed to State a Claim.

*Martinez* and *Student A* both addressed the question of whether plaintiffs in IDEA cases are required to exhaust their administrative remedies before filing lawsuits in federal court. *See Martinez v. Newsom*, 46 F.4th 965, 968 (9th Cir. 2022); *Student A*, 9 F.4th at 1081. Neither case speaks to whether the plaintiffs stated a claim based on their challenges to substantive policies and practices or whether these policies and practices violate the law.

In *Martinez*, a group of four students challenged statewide practices in California during the COVID-19 Pandemic alleging that schools failed to provide students with disabilities with a FAPE in violation of the IDEA during remote instruction. 46 F.4th at 968-69. The *Martinez* plaintiffs sued hundreds of defendants, including the school districts where the students attended and every other district in the state, for failing to provide the named plaintiffs and putative class members with a FAPE. *Id.* at 969. The *Martinez* plaintiffs also sued the SEA, California Department of Education ("CDE"), for a "'policy of inaction' and 'a blanket decision not to act'" because CDE's remote instruction guidance "encouraged, but did not require, the state's school districts" to provide students with a FAPE. *Id.*

The Ninth Circuit did not reach a decision about whether plaintiffs stated a claim or if the CDE's policy violated the IDEA because it held that the plaintiffs' claims against

the CDE were mooted by the reopening of public schools.  *See id.* at 972-73.[7]  Turning to

the claims for compensatory education against the LEAs the named plaintiffs attended, the

court's entire inquiry analyzes whether plaintiffs should have exhausted the IDEA

administrative process prior to pursuing their claims in federal court.  *See id.* at 973.

Referring to "[t]he systemic exception to the IDEA's exhaustion requirement [as]

something of an enigma," the *Martinez* court summarized that:

> After canvassing our precedent, we conclude that to fall within the systemic
> exception, a plaintiff must, at a minimum, identify an "agency decision,
> regulation, or other binding policy" that caused his or her injury.  *Doe*, 111
> F.3d at 684.  Because Plaintiffs do not satisfy this requirement, *their claims
> do not fall within the systemic exception.*

*Id.* at 974 (emphasis added).

This analysis, and the rest of the Ninth Circuit's summary of decades-old case law in

*Martinez* that Defendants thought important enough to quote at length, *see* Defs.' Mot. at

10-11, is all about how a plaintiff can qualify for the systemic exception to IDEA

exhaustion in the Ninth Circuit, *see Martinez*, 46 F.4th at 974-75, not whether the plaintiffs

stated a claim or if the practices identified by the plaintiffs violated the IDEA.  Ultimately,

the Ninth Circuit upheld the district court's dismissal of plaintiffs' claims "for *failure to

exhaust* administrative remedies."  *Id.* at 976 (emphasis added).

In *Student A*, the other case upon which Defendants' Motion relies, a group of

students with disabilities filed a putative class action lawsuit against the San Francisco

Unified School District claiming it was "failing its responsibilities to students under the

---

[7] The other part of the *Martinez* opinion that addresses the substantive "policy of inaction"
that plaintiffs alleged against the CDE does so as part of a discussion of the "juridical link
doctrine" evaluating whether the plaintiffs could bring claims against school districts where
they did not attend.  *See Martinez*, 46 F.4th at 971-72.

IDEA by not timely identifying and evaluating students with disabilities, and, after identifying them, by providing them with insufficiently individualized, 'cookie-cutter' accommodations and services." *Student A*, 9 F.4th at 1081.  The Ninth Circuit affirmed the district court's dismissal of the claims because the plaintiffs did not identify any "district-wide policies" sufficient to qualify for "any of the limited exceptions . . . to the *exhaustion requirement*" under the IDEA.  *Id* (emphasis added)*.

Like *Martinez*, the legal analysis in *Student A* revolves around whether plaintiffs should have exhausted their administrative remedies under the IDEA before pursuing their claims in federal court, *see id.* at 1083-85, not whether plaintiffs stated a claim or the challenged conduct violates the IDEA.  There is no analysis in *Martinez* and *Student A* about whether the plaintiffs stated a claim or if the policies or practices at issue violate the IDEA, and consequently, the Ninth Circuit's analysis in these cases does not impact whether Plaintiffs stated a claim here.

3.    **Defendants Misinterpret and Mischaracterize the Ninth Circuit's Legal Analysis in *Martinez* and *Student A* About Claims Against LEAs to Broadly Apply to Claims Under the IDEA Well Beyond the Factual Contexts in Those Cases.**

Defendants present *Martinez* and *Student A* as having announced a new rule about all "claim[s] for systemic relief" under the IDEA.  Defs.' Mot. at 10.  According to Defendants' Motion, "[t]he [*Martinez*] court held that a plaintiff cannot state a claim for systemic relief simply by reframing an act of inadvertence or negligence as a policy or practice of not complying with the IDEA."  *Id.*  Setting aside Defendants' confusion about the standards for exhaustion and stating a claim addressed above, this analysis further misinterprets the court's holding in *Martinez*.  *Martinez*, like *Student A*, simply applied the preexisting test for the systemic exception to exhaustion to claims for systemic relief.  This

test—articulated in the Ninth Circuit's 1992 decision in *Hoeft*—existed when the Court denied Defendant's first Motion to Dismiss.

Defendants also overstate the Ninth Circuit's analysis in *Martinez* and *Student A* specifically as it relates to a "policy of inaction."[8]  Defendants claim that these cases "held that a systemic claim to redress denial of FAPE fails where, as here, the Complaint seeks to redress only alleged negligence or failures to act (as opposed to an active official policy or guidance that it is contrary to the IDEA)."  Defs.' Mot. at 1.  But that is not the holding of those cases.  While the *Martinez* court described the plaintiffs' characterization of the policy at issue as a "policy of inaction," *see Martinez*, 46 F.4th at 971, the court did not hold that a "policy of inaction" could never form the basis for a claim against an SEA under the IDEA.

And, importantly, the analysis from these cases that Defendants rely upon in Defendants' Motion only addresses claims against LEAs, not SEAs.  *See Martinez*, 46 F.4th at 974-75; *Student A*, 9 F.4th at 1081.[9]  This is a critical difference.  SEAs have clear statutory duties under the IDEA to affirmatively monitor and enforce school districts' implementation of the IDEA, *see, e.g.*, 20 U.S.C. §§ 1412(a)(11)(A), 1416(a)(1)(C), (a)(3)(A), (a)(3)(B), and *Martinez* and *Student A* do not address these duties.  In fact, *Student A*'s exhaustion analysis explicitly recognized why claims against LEAs should be analyzed differently than claims against SEAs referencing the monitoring and enforcement

---

[8] *Martinez* only discusses a "policy of inaction" within the context of the "juridical link" doctrine, *see* 46 F.4th at 971, but Defendants highlight this language in their motion, *see* Defs. Mot. at 11, 14.

[9] Defendants correctly predicted that Plaintiffs would point out "that the holding in *Martinez* is dicta with respect to claims against an SEA because the Ninth Circuit there adjudicated only the systemic claims alleged against LEAs."  Defs.' Mot. at 12.

duties of SEAs.  In *Student A*, the court explained that an "important interest" served by exhaustion was that "[e]xhaustion would give the state of California a reasonable opportunity to *investigate and correct* the district's failures prior to judicial intervention." *Student A*, 9 F.4th at 1085 (emphasis added).  The court emphasized that this interest was important because the state bears "ultimate responsibility for ensuring . . . compl[iance] with the IDEA."  *Id.* (alterations in original) (quoting *Hoeft*, 967 F.2d at 1307).  These statements confirm the duties imposed by the IDEA on Defendants, which are the basis for Plaintiffs' IDEA claims.

Defendants steamroll these important distinctions between claims against LEAs and SEAs, stating: "There is no basis to conclude that a different standard applies to a systemic claim for denial of FAPE against SEAs than to such claims alleged against LEAs."  Defs.' Mot. at 12.  Defendants' *ipse dixit* fails to address the basis for differentiating claims against LEAs and SEAs contained in the Ninth Circuit's analysis in *Student A*.

### 4.    Plaintiffs' Claims Against the SEA Would Survive Even Under Defendants' Misinterpretation of *Martinez* and *Student A* Due to Affirmative Statutory Obligations that Defendants Have Failed to Meet.

Even if Defendants were correct that *Martinez* and *Student A* created an entirely new body of case law regarding when Plaintiffs have stated a claim regarding a SEA's conduct, Plaintiffs' IDEA, ADA, and Section 504 claims would still meet this standard. Unlike those cases, Plaintiffs here raise claims against the SEA for failure to fulfill affirmative statutory obligations under the IDEA and for written policies that encourage LEAs to violate the IDEA and its obligations under Title II of the ADA and Section 504.

Here, as shown in Part A *supra*, Plaintiffs alleged claims against the SEA, not LEAs, based on the *affirmative* duties of the SEA under the IDEA. *See, e.g.*, Compl. ¶¶ 39-41 (citing 20 U.S.C. §§ 1412(a)(11)(A), (a)(1), (a)(5), (12); 20 U.S.C. §§ 1416(a)(1)(C), (a)(2)(A), (a)(3)(A), (a)(3)(B); 20 U.S.C. §§ 1411(e)(2)(B)(i), 1415). The failures that Plaintiffs identified in the Complaint and that this Court validated in its Motion to Dismiss decision comprise the core of a SEA's clear statutory duty under the IDEA to affirmatively monitor and enforce school districts' implementation of the IDEA. Compl. ¶ 40 (citing 20 U.S.C. §§ 1416(a)(1)(C), (a)(3)(A), (a)(3)(B)). Unlike in *Martinez* or *Student A*, Plaintiffs' claims are not about negligence. Rather, Plaintiffs allege four broad-based deficiencies that illustrate Defendants' failure to meet their affirmative obligations under the IDEA, in addition to two written policies that are harmful to class members. *See* Section II *supra*.

The only case against an SEA that *Martinez* cites in its discussion of the systemic exception to the exhaustion requirement is *Doe ex rel. Brockhuis v. Arizona Department of Education*. 111 F.3d 678 (9th Cir. 1997). In *Doe*, the SEA simply did not have any reason to know that children with disabilities were detained in an adult jail; as soon as the SEA became aware it "tried to ensure that identification processes, evaluation, notification, and required special education services were provided in accordance with the IDEA." *Id.* at 680. The court held that the plaintiffs were required to exhaust because the SEA's failure to provide educational services was the result of "inadvertent neglect." *Id.* at 684. Here, unlike in *Doe*, Defendants have had notice of the widespread, inappropriate use of shortened school days across the state for many *years* and have failed to address it. Compl. ¶¶ 62, 89, 102, 105-11. As a result, the concerns raised in *Student A* about the SEA's

opportunity to review and fix problems before a federal lawsuit is filed, 9 F.4th at 1085, are not present here.

While it is not clear if Defendants articulate a rationale to dismiss the ADA and Section 504 claims other than Plaintiffs' alleged failure to exhaust, Defendants seem to conflate Plaintiffs' ADA and Section 504 claims with their IDEA claims. *See* Defs.' Mot. at 17 (*"Plaintiffs asserts [sic] a systemic claim directly under the IDEA for denial of FAPE and then inextricably tether their ADA and RA claims to that same theory."*). This conflation misunderstands Plaintiffs claims.[10]

Unlike in *Martinez*, where the plaintiffs did not allege violations of the ADA or Section 504,[11] Plaintiffs have here alleged claims under the ADA and 504. Plaintiffs allege: that Oregon LEAs discriminate against the children in the Plaintiff Class due to their disability-related behaviors by depriving them of instructional time; that despite being on notice of the issue for years, ODE has perpetuated this discrimination by failing to adequately monitor or enforce LEA compliance with the law; and that ODE has failed to modify its own policies, practices, and procedures that place class members at serious risk of unnecessary segregation and isolation. *See* Section II *supra.* Plaintiffs have alleged that ODE failed to meet its affirmative obligations under the ADA and Section 504. *See* Compl. ¶¶ 42–44 (citing 42 U.S.C. § 12132; 28 C.F.R. § 35.130; 28 C.F.R. § 35.130(b)(1)(ii); 28 C.F.R. § 35.130(d); 28 C.F.R. § 35.130(b)(7); *Olmstead*, 527 U.S. at 581); ¶¶ 45–46 (citing

---

[10] Defendants mischaracterize the Supreme Court's decision in *Fry v. Napoleon Community Schools*. *See* Defs.' Mot. at 17. *Fry* is relevant only to whether Plaintiffs are required to exhaust, and not to whether Plaintiffs have stated a claim under the ADA or Section 504.

[11] The complaint in *Martinez* alleged that defendants were "subject to" the ADA and Section 504 but did not state claims for violation of those statutes. 46 F.4th at 969 n.2.

34 C.F.R. § 104.4(b)(2); 34 C.F.R. § 104.33(a), (b)(1); *Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008)); ¶ 47 (citing 28 C.F.R. § 35.130(b)(1); 34 C.F.R. § 104.4(b)(1); 28 C.F.R. § 35.130(b)(1)(v), (b)(3); 34 C.F.R. § 104.4(b)(1)(v), (b)(4)).  These allegations are sufficient to state claims under the ADA and Section 504.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Judgment on the Pleadings in its entirety.  In the alternative, Plaintiffs ask that the Court grant leave to amend.

Respectfully submitted,                              Dated: November 29, 2022

_____/s/ Michael Folger_____
Michael Folger (NY No. 5151337)*              Selene Almazan-Altobelli (MD No. 10506)*
michael.folger@probonolaw.com                 selene@copaa.org
1 Manhattan West                                     Council of Parent Attorneys and Advocates
New York, NY 10001                               8 Market Place, Suite 300
(212) 735-2157                                        Baltimore, MD 21285
                                                          (844) 426-7224 ext. 702
Thomas Stenson (OR No. 152894)
tstenson@droregon.org
Joel Greenberg (OR No. 943233)                Ira A. Burnim (D.C. No. 406154)*
jgreenberg@droregon.org                          irab@bazelon.org
Disability Rights Oregon                           Lewis Bossing (D.C. No. 984609)*
511 SW 10th Avenue, Suite 200                 lewisb@bazelon.org
Portland, OR 97205-2748                          Bazelon Center for Mental Health Law
(503) 243-2081                                        1090 Vermont Avenue NW, Suite 220
                                                          Washington, DC 20005-4900
Hannah Benton Eidsath (CT No. 428982)*    (202) 467-5730
hbenton@youthlaw.org
Seth Packrone (NY Reg. No. 5395769)*
spackrone@youthlaw.org
Nina Monfredo (NY No. 5717624)*
nmonfredo@youthlaw.org                          *Admitted pro hac vice
National Center for Youth Law
712 H Street NE, DPT #32020
Washington, DC 20002                             *Attorneys for Plaintiffs*
(510) 899-6559