Thomas Stenson (OR No. 152894)
tstenson@droregon.org
Joel Greenberg (OR No. 943233)
jgreenberg@droregon.org
Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205-2748
(503) 243-2081

Hannah Benton Eidsath (CT No. 428982)*
hbenton@youthlaw.org
Seth Packrone (NY Reg. No. 5395769)*
spackrone@youthlaw.org
Nina Monfredo (NY No. 5717624)*
nmonfredo@youthlaw.org
National Center for Youth Law
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
(202) 868-4781

Selene Almazan-Altobelli (MD No. 10506)*
selene@copaa.org
Council of Parent Attorneys and Advocates
8 Market Place, Suite 300
Baltimore, MD 21285
(844) 426-7224 ext. 702

Ira A. Burnim (D.C. No. 406154)*
irab@bazelon.org
Lewis Bossing (D.C. No. 984609)*
lewisb@bazelon.org
Bazelon Center for Mental Health Law
1090 Vermont Avenue NW, Suite 220
Washington, DC 20005-4900
(202) 467-5730

Michael Folger (NY No. 5151337)*
michael.folger@probonolaw.com
1 Manhattan West
New York, NY 10001
(212) 735-2157

*Admitted pro hac vice

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| J.N., et al, | Case No. 6:19-CV-00096-AA |
| Plaintiffs, | PLAINTIFFS' CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT |
| v. | |
| OREGON DEPARTMENT OF EDUCATION, et al, | |
| Defendants. | |

In accordance with Local Rule 56-1, Plaintiffs hereby submit their Concise Statement of Material Facts in Support of their Motion for Summary Judgment against Defendants. Unless otherwise noted, the evidence cited references Exhibits attached to the Declaration of Thomas Stenson, all of which were filed concurrently with this Statement.

| Undisputed Material Fact | Evidence |
|---|---|
| **Dr. Bateman's Investigation and Findings** ||
| 1. The parties agreed to the criteria employed by neutral expert Dr. David Bateman, who gathered evidence regarding the use of Shortened School Days for disability-related behaviors ("SSD" or "SSDs") and sought to answer questions about the use of SSDs in Oregon. | Interim Settlement Agreement, ECF No. 157-1 at 4-5; Report of the Neutral Fact Finder, ECF No. 157-2 at 14-16 (discussing scope of the neutral expert's work). |
| 2. During the 2018-2019 school year, at least 1029 Oregon students were placed on SSDs due to behavior issues. | *Id*. at 29. |
| 3. During the 2019-2020 school year, at least 986 Oregon students were placed on SSDs due to behavior issues. | *Id*. at 29. |
| 4. Between 2017 and 2020, students in about 140 Oregon school districts were placed on SSDs. | *Id*. at 28, 33, 73 (Among the 185 of 197 Oregon school districts that responded to Dr. Bateman's survey, 128 reported SSD use. 57 school districts did not place any students on SSDs between 2017 and 2020). |
| 5. Oregon schools collect insufficient data to indicate when an "informal removal" shortens a student's school day. | *Id*. at 47, 64. |
| 6. An "informal removal" is when a student is "taken out of the classroom and forced to remain elsewhere in the school without receiving any instruction, or when a school staff member or administrator calls a student's parent/guardian to come pick up the student and take him or her home because the student's behaviors are too difficult to handle." | *Id*. at 47. |

| | |
|---|---|
| 7. Dr. Bateman found that informal removals were "being used very frequently" in Oregon. | *Id*. at 157-2, at 47, 64. |
| 8. Oregon students without disabilities typically receive six hours of daily instruction. | *Id*. at 157-2, at 11. |
| 9. Students placed on SSDs sometimes receive just one or two hours of instruction each day. | *Id*. at 157-2, at 5. |
| 10. Some students placed on SSDs do not attend school at all. | *Id*. at 63. |
| 11. Very few students placed on SSDs receive any instruction outside of school. | *Id*. at 44. |
| 12. A large number of students were placed on SSDs for multiple years. | *Id*. at 44. |
| 13. Dr. Bateman identified students who remained on SSDs through the entire 2021-2022 school year. | *Id*. at 63. |
| 14. For many students, placement on SSDs starts as early as kindergarten. | *Id*. at 44; *accord* ECF No. 66-2, at 12 (noting J.N. was placed on a one-hour-a-day SSD within one month of enrolling in kindergarten). |
| 15. Some students' SSDs were predetermined prior to their enrollment and before their school district had conducted an FBA, BIP, or added behavioral goals to the student's Individualized Education Program ("IEP"). | ECF No. 157-2, at 80. |
| 16. Hundreds of students on SSDs did not have an IEP that listed or described SSDs anywhere. | *Id*. at 32 (chart), 33 ("significant differences between students with disabilities who are on SSDs and [the number who had] reasons for SSDs included in the IEP"). |
| 17. Most of the IEPs reviewed by Dr. Bateman did not include written plans regarding review of a student's placement on SSD. | *Id*. at 44. |
| 18. Many IEPs for students on SSDs have no BIP, and no behavioral goals for the student. | *Id.* at 46. |
| 19. Dr. Bateman found no consistent provision of a re-entry plan for students placed on SSD, nor any IEP that | *Id*. at 42, 44. |

| | |
|---|---|
| documented a student returning to a full-day of instruction. | |
| 20. Dr. Bateman found no "sufficient guidance, training, or other resources and support provided by ODE to help districts understand the [Least Restrictive Environment] considerations and the role of the IEP team to ambitiously move students back to a full-day." | *Id*. at 6. |
| 21. ODE leadership "consider[s] SSD as part of the continuum of placement options for students eligible for special education—rather than a temporary last resort with a cognizable plan to return to a full-day." | *Id*. at 45. |
| 22. ODE does not mandate trainings on "Shortened School Days (SSD), on how to prevent putting students on SSD, or on how to ensure effective use of Functional Behavior Assessments (FBAs) and Behavior Intervention Plans (BIPs)." | *Id*. at 42, 59. |
| 23. Voluntary trainings provided by ODE at the Coalition of School Administrator ("COSA") Conference "were not about how to prevent or change the SSD process." | *Id*. at 42-43. |
| 24. Dr. Bateman found that there is no effective way for ODE to gather and monitor data on the use of SSD and a "need to increase monitoring of the use of SSD by ODE." | *Id*. at 43, 48, 55. |
| 25. Dr. Bateman found "a lack of behavior support resources and training for teachers, administrators, and school staff," "the lack of mental health services and resources for districts to access and coordinate with to meet students' needs," and other staffing gaps in "rural areas and hard-to-fill positions across the state." | *Id*. at 53, 52. |
| 26. School districts did not have a clear understanding from ODE regarding Senate Bill (S.B.) 263. | *Id*. at 58. |

Plaintiffs' Concise Statement of Material Facts—Page 4

| | |
|---|---|
| 27. Dr. Bateman made specific recommendations directed to ODE to implement to address the "prolific use of SSD throughout the state." | *Id*. at 6, 49-60, 63. |

| **Plaintiffs** ||
|---|---|
| 28. Plaintiffs J.N. and B.M. still receive SSD placements. | Ex. 1 [J.N. Jan. 11, 2022 IEP] at PLTFS005122; Ex. 2 [B.M. Apr. 20, 2022 IEP] at PLTFS004952, PLTFS004965. |
| 29. Oregon students who are the children of COPAA members, or Oregon students whose parents are represented by COPAA members, have been subjected to SSDs or are at risk of being subjected to SSDs. | Declaration of Selene Almazan-Altobelli, ¶¶ 14-21. |

| **ODE's Knowledge and Failures** ||
|---|---|
| 30. ODE has been on notice of the SSD problem for nearly a decade. | Ex. 3 [DRO 2013 Legislative Testimony]; Ex. 4 [Mar. 2017 meeting notes, ODE reports that DRO informed them of 15-25 calls a month regarding SSDs] at CPAA-ODE-000416; Ex. 5 [Shortened School Day Call Log for Neutral Expert]; Ex. 6 [Feb. 2019 Emails to/from ODE Director Colt Gill]; Ex. 7 [Sept. 2018 Email to ODE staff Elliott Field]; Ex. 8 [Mar. 2019 Email from Bruce Baker, Oregon Office of Developmental Disability Services to ODE staff Jeremy Wells] at CPAA-ODE-005935; Ex. 9 [FACT Oregon Response to Information Requested July 1, 2021] (approximately 100 callers request support from FACT Oregon each year regarding SSDs). |
| 31. ODE's internal communications show that the SSD problem was well-known and that ODE staff recognized that districts often lacked the resources to serve students with disabilities effectively. | Ex. 10 [Mar. 2017 Email from ODE staff Mike Franklin] (in ODE discussion of S.B. 263, states that "lack of resources" is "the primary problem"); Ex. 11 [ODE Senate Bill 263 Discussion] at CPAA-ODE-006322 and CPAA-ODE-006323 (districts don't "always follow[]" the protections against SSDs, "alternative placements . . . don't necessarily exist"); *see also* Ex. 12 [Mar. 2017 Email from ODE Staff Elliot Field] at CPAA-ODE-004509 (the "primary |

| | | |
|---|---|---|
| | | issue is lack of behavior-related resources/training and primary consequence is disruption/conflict with IEP team decision making"). |
| 32. | In 2017, Senate Bill ("S.B.") 263 was introduced in the legislative session. Through public testimony, other Oregon stakeholders alerted ODE to the problem of SSD use: they described SSDs as "vexing and longstanding," happening at "unprecedented rates," and "a widespread problem for Oregon students with disabilities." | Ex. 13 [Feb. 2017 Youth, Rights & Justice Testimony in Support of S.B. 263]; Ex. 14 [Feb. 2017 IDD Coalition Testimony in Support of S.B. 263]; Ex. 15 [Feb. 2017 FACT Oregon Testimony in Support of S.B. 263] at 2. |
| 33. | From December 2018 through January 2022, ODE call logs record 37 different inquiries related to SSDs. | Ex. 5. |
| 34. | In October 2021, ODE received information regarding reduced school time for students with disabilities in the life skills programs of Clackamas and Lane County Educational Service Districts ("ESD"). | Ex. 16 [Deposition of Dr. Eric Wells] at 184:14-186:25 (top ODE officials learned about the systemic use of SSDs by both Lane and Clackamas Education Service Districts ("ESDs") through email exchanges in October 2021); Ex. 17 [Wells Dep. Ex. 5]. |
| 35. | In November 2021, ODE received a phone complaint regarding the Lane County ESD Life Skills program. ODE did not formally investigate this complaint. | Ex. 5 at row 8. |
| 36. | ODE did not open an investigation into this program until June 2022, after the Lane and Clackamas County ESD programs had received media and legislative attention. | Ex. 18 [Deposition of Tenneal Wetherell] at 92:15; Ex. 16 at 183:14-25. |
| 37. | ODE also began an investigation into a similar practice by the Clackamas ESD in approximately June 2022. | Ex. 18 at 92:15. |
| 38. | Other than the Lane and Clackamas situations, ODE never opened any independent investigations of the SSD problems raised in those 37 inquiries. | Ex. 19 [Defs.' Resp. to Pls.' First Set of RFPs] at 8; see Ex. 5. |
| 39. | In December 2016, ODE staff were told that Douglas County ESD was operating an SSD program for at least 15 students for "behavioral reasons," and explaining "all students [in the | Ex. 20 [Dec. 2016 Emails re Douglas County] at CPAA-ODE-001873, CPAA-ODE-001875-CPAA-ODE-0018756. |

| | | |
|---|---|---|
| | program] are on a reduced school day schedule in some way," with some only attending a few hours a day. The caller described the students as "feral." The district official told ODE that "we are not the only ones in the state doing this." ODE offered a "sit down" with the caller regarding Douglas County ESD program, but there is no evidence of any further ODE action. | |
| 40. | During ODE's investigation of a 2021 state complaint alleging systemic violations of law by both ODE and Klamath Falls City School District ("KFCSD"), ODE officials were informed that KFCSD had created its SSD program by "[m]imick[ing] half day programs from nearby districts." ODE did not conduct any investigation of the use of SSD programs elsewhere in nearby districts even though the routine use of SSDs in the Southern Oregon ESD STEPS Plus program was revealed as part of this investigation and later confirmed by ODE. | Ex. 21[Wells Dep. Ex. 3] at CPAA-ODE-026029; Ex. 16 at 61:8-21; 174:4-175:4. |
| 41. | ODE also had notice of the scope of the SSD problem through 25 state administrative complaints and four requests for due process hearings between January 2016 and October 14, 2022 regarding SSDs. | Ex. 22 [Defendants' Supplemental Interrogatory Responses] at 5 & 6. |
| 42. | ODE has had knowledge of the use of SSD in multiple school districts, including Medford, Brookings Harbor, North Wasco, and Grants Pass School Districts. | Ex. 5 at row 11-13 (Medford); Ex. 23 [Sept. 2021 Emails re Medford]; Ex. 24 [Oct. 2021 Emails re Medford Voicemail]; Ex. 25 [Sept. 2017 Email Chain re Medford]; Ex. 26 [ODE Overall District Count of SSDs, 2016-2020]; Ex. 27 [Brookings Harbor Corrected Findings of Fact, Conclusions ("FFC") and Final Order]; Ex. 28 [North Wasco FFC and Final Order]; Ex. 29 [Sept. 2019 Emails re North Wasco]; Ex. 30 [Grants Pass FFC and Final Order]; Ex. 31 [Feb. 2022 Emails re Grants Pass] at CPAA-ODE-019600. |
| 43. | Dr. Bateman found that Medford had the third-largest number of students on SSDs of any district in the state. In December | ECF No. 157-2, at 33-34; Ex. 32 [Abbreviated Day Informal Data Submission Summary, Oct., Nov., Dec. 2022]. |

| | |
|---|---|
| 2022, 42 students in Medford were still subjected to SSD. | |
| 44. Though Brookings Harbor School District was the subject of a state administrative complaint in 2017, which complaint included the use of SSDs with four students, the district's use of SSDs has barely fluctuated since that complaint. | Ex. 27 at 7 (students on SSDs that were 2 to 3 hours per day); Ex. 32 (in December 2022, Brookings Harbor School District still had 6 students on SSDs for 30 days or more). |
| 45. More students have been subjected to SSD in North Wasco during the 2022-2023 school year than prior school years. | *Compare* Ex. 32 *with* Ex. 26 (more students on SSDs in North Wasco in the 2022-2023 school year than in prior years). |
| 46. More students have been subjected to SSD in Grants Pass during the 2022-2023 school year than in prior school years. | *Compare* Ex. 32 *with* Ex. 26 (more students on SSDs in Grants Pass in the 2022-2023 school year than in prior years). |
| 47. ODE considers SSDs to be the most restrictive school day program. | Ex. 33 [ODE, Abbreviated School Day Programs: Considerations for IEP Teams] at 7, Fig. 3. |
| 48. ODE has not adopted many of the Bateman Report's recommendations. | *See, e.g.*, Ex. 16 at 72:7-11, 75:4-6, 79:7-12, 80:13-22, 81:24-82:5, 83:1-6, 84:9-18; Ex. 18 at 207:1-7; 209:1-8; 212:2-17. |
| 49. ODE has not adopted Dr. Bateman's recommendations about the additional personnel and resources needed to address SSDs. | ECF No. 157-2, at 51, 54; Ex. 16 at 75:4-6. |
| 50. Data collection initiated by ODE for the 2022-2023 school year related to SSDs only requires districts to report about students receiving SSD for 30 consecutive days or longer. | Ex. 18 at 82:6-17. |
| 51. ODE developed an Abbreviated Day protocol ("AD Protocol") that will cease to be used when ODE no longer designates SSDs as an "Emergent Area." | *See* Ex. 16 at 254:5-255:5; Ex. 18 at 75:3-7 (metrics to determine whether SSDs would be designated as the Emergent Area for subsequent school years not yet "contemplated"). |
| 52. Though the AD Protocol lists 25 yes/no "Record Review Items" for school districts to answer for each student placed on SSD, none of these items require school districts to provide information about whether the student is actually making progress. | Ex. 34 [Priority Area 6: Abbreviated Day, Wells Dep. Ex. 8]; Ex. 18 at 113:17-114:3. |

Plaintiffs' Concise Statement of Material Facts—Page 8

| | |
|---|---|
| 53. ODE conducted a focused monitoring visit of Klamath County School District in October 2022, and produced a report in December 2022 detailing its findings. | Ex. 35 [Klamath County Findings Report], at CPAA-ODE-037317. |
| 54. As part of its focused monitoring of Klamath County, ODE did not actually confirm that any students were on SSD. | Ex. 35 at 28-29 (stating that "ODE was unable to confirm" that four students were receiving "the total number of instruction hours . . . afforded to students without IEPs"). |
| 55. Klamath County self-reported it had nine students on SSDs in October, November, and December of 2022. | Ex. 32. |
| 56. As of January 30, 2023, ODE had not yet decided whether it would continue any data monitoring of SSD beyond the end of the 2023 school year. | Ex. 18 at 74:8-75:2. |
| 57. Oregon distributes federal special education funding to each school district proportionate to "the LEA's [school district's] number of children receiving special education services." | Ex. 36 [ODE, *Federal IDEA Funding*]. |
| 58. The amount of funding a school district receives is not reduced if a student is on SSD. | *See id.* |

Pending permission from the Court, this statement contains 2,490 words, excluding the caption, exhibits, signature block, and this certificate of counsel.

Respectfully submitted,                          Dated: March 16, 2023

__/s/ Thomas Stenson__

Thomas Stenson (OR No. 152894)
tstenson@droregon.org
Joel Greenberg (OR No. 943233)
jgreenberg@droregon.org
Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205-2748
(503) 243-2081

Hannah Benton Eidsath (CT No. 428982)*
hbenton@youthlaw.org
Seth Packrone (NY Reg. No. 5395769)*
spackrone@youthlaw.org
Nina Monfredo (NY No. 5717624)*
nmonfredo@youthlaw.org
National Center for Youth Law
818 Connecticut Ave. NW, Suite 425
Washington, DC 20006
(202) 868-4781

Selene Almazan-Altobelli (MD No. 10506)*
selene@copaa.org
Council of Parent Attorneys and Advocates
8 Market Place, Suite 300
Baltimore, MD 21285
(844) 426-7224 ext. 702

Ira A. Burnim (D.C. No. 406154)*
irab@bazelon.org
Lewis Bossing (D.C. No. 984609)*
lewisb@bazelon.org
Bazelon Center for Mental Health Law
1090 Vermont Avenue NW, Suite 220
Washington, DC 20005-4900
(202) 467-5730

Michael Folger (NY No. 5151337)*
michael.folger@probonolaw.com
1 Manhattan West
New York, NY 10001
(212) 735-2157

*Admitted pro hac vice

*Attorneys for Plaintiffs*