IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

J.N., et al.,

Plaintiffs,

v.

OREGON DEPARTMENT OF EDUCATION, et al.,

Defendants.

Civ. No. 6:19-cv-00096-AA

**OPINION & ORDER**

---

AIKEN, District Judge:

Before the Court is a discovery dispute between the parties. For the reasons that follow, the Court adopts Plaintiffs' proposed discovery plan and schedule.

**BACKGROUND**

On January 22, 2019, Plaintiffs, Oregon students with disabilities, filed this class action against Defendants Oregon Department of Education and others (collectively, "ODE") for alleged violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*; and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and state law. *See* Compl., ECF No. 1. Plaintiffs allege that ODE inappropriately places them on shortened school day schedules ("SSDs"), which deprives Plaintiffs of an appropriate public education in the least restrictive environment and discriminates against them on the basis of

disability.[1] The facts of this long-standing case are well known to the parties and the Court.

In short, Plaintiffs allege that ODE's deficient policies and practices deprive them of an appropriate public education by (1) failing to collect state-wide information on district use of SSDs, Compl. ¶¶ 53, 112–118; (2) failing to monitor districts for compliance with federal and state anti-discrimination law as to SSDs, *id.*; (3) failing to enforce federal and state law, that is, to correct district non-compliance, *id.* ¶¶ 53, 115, 119–122; and (4) failing to provide deficient districts with the technical training, guidance, and assistance needed to provide full school days to students with disabilities, *id.* ¶¶ 53, 115, 123–126. Plaintiffs also allege that the State's education funding formula incentivizes districts to impose SSDs on students with disabilities. *Id.* ¶ 53.

In 2022, the parties concluded discovery, and, in spring 2023, the parties filed cross-summary judgment motions on the claims. *See* Pl. Mot., ECF No. 176; Def. Mot., ECF No. 186. On July 13, 2023, before the Court ruled on the motions, the Oregon legislature enacted S.B. 819, which repealed Oregon's shortened school day

[1] Under the IDEA, states that receive federal special education funding must provide to every student with a disability a free appropriate public education in the least restrictive environment. 20 U.S.C. §§ 1412(a)(1)(A), (a)(5)(A); 34 C.F.R. § 300.101; 34 C.F.R. § 300.114. Title II of the ADA and Section 504 of the Rehabilitation Act bar schools from discriminating against students with disabilities through the administration of their educational programs. 42 U.S.C. §§ 12131(1), 12132; 29 U.S.C. § 794(a). Recipients of federal education funding must ensure that students with disabilities have access to educational opportunities that is equal to that of their peers without disabilities. 28 C.F.R. § 35.130(b)(1)(ii),(iii) (ADA); 34 C.F.R. § 104.4(b)(1)(ii) (Section 504).

statute, ORS 343.161, and overhauled ODE's policies and practices for placing students on shortened school day schedules. *See* S.B. 819, 2023 Leg. Assem., Reg. Sess. (Or. 2023); *see also* ORS 343.321–343.333.

On October 27, 2023, Defendants moved to dismiss the suit for lack of subject matter jurisdiction on the grounds that S.B. 819 mooted Plaintiffs' claims. *See* Def. Mot., ECF No. 217. On February 29, 2024, the Court granted Defendants' motion. ECF No. 236. Plaintiffs appealed.

On July 7, 2025, the Ninth Circuit reversed and remanded the case. *J.N. by & through Cisneros v. Oregon Dep't of Educ.*, No. 24-2080, 2025 WL 1863189, at *1 (9th Cir. July 7, 2025). The Ninth Circuit explained that S.B. 819 did not moot Plaintiffs' claims because it only partially addressed the first two claims (failure to collect district-level SSD data and failure to monitor district compliance) and entirely failed to address Plaintiffs' fourth claim (failure to train and provide district-level assistance). *Id.* at *2. The court also explained that S.B. 819 failed to address Plaintiffs' allegations that the state education funding formula incentivizes districts to abuse SSD placements. *Id.* Finally, the court noted that "ODE's voluntary changes, such as its new hires or redesigned general supervision system, 'could be easily abandoned or altered in the future,' so Plaintiffs still have an interest in the outcome of this suit." *Id.* (quoting *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013)). The Ninth Circuit concluded that the Court had not exhausted the relief it could provide to Plaintiffs. *Id.*

The Ninth Circuit also recommended that the Court "consider whether to reopen discovery for the limited purposes of (1) allowing the parties to determine if and how S.B. 819 has affected the use of SSDs in Oregon, and (2) determining how ODE has implemented S.B. 819's new requirements since the law's enactment." *Id.* The panel advised that the factual record "ha[d] shifted" since S.B. 819's implementation. *Id.* And it provided two examples of "crucial" inquiries: (1) "how often Oregon school districts continue to place students on SSDs post-S.B. 819;" and (2) "how consistently or accurately school districts have reported . . . data [under S.B. 819's new reporting requirements] in the past two years." *Id.*

In response to the remand, the Court reopened discovery to proceed with the suit consistent with the Ninth Circuit's direction.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b) sets out the scope of discovery. Under Rule 26(b),

> unless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, . . . the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Under Rule 26(b)(2)(C), a court must limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

## DISCUSSION

The parties have brought their discovery dispute before the Court. Despite conferral, they have failed to resolve the dispute. *See* Joint Status Report, ECF No. 261. The parties identify three areas of contention: (1) the scope of discovery; (2) discovery as to ODE staff; and (3) disclosure of identifying information of Oregon students who are or who have been placed on SSDs.

I. *Scope of Discovery*

Plaintiffs' discovery proposal includes additional requests for production ("RFPs"), additional interrogatories, fact depositions, and time for expert discovery. Pl. Brief at 2, ECF No. 262-2. Plaintiffs propose 90 days to complete fact discovery and 90 days to complete expert discovery. *Id.*

Plaintiffs seek ODE documents containing data and/or information:

- that ODE has collected as to students on SSDs and the local educational agencies ("LEAs") where those students attend school;
- as to informal removals;
- as to ODE's "review, analysis, and/or validation of the data and information regarding SSDs and systemic monitoring of LEA and ODE compliance with S.B. 819;"
- as to SSD training, technical assistance, and/or resources provided to LEAs;

- as to implementation and enforcement of S.B. 819 and ODE's supervisory authority.

Plaintiffs also seek:

- contact information for class members and information as to their SSD placements;
- information as to ODE staff who have a role in implementing S.B. 819;
- the bases for ODE's public assertions as to number of class members and reasons for them being on SSDs.

*Id.* at 1.

Defendants contend that the discovery scope should not exceed that of the prior discovery completed in 2022 except "to refresh the record regarding S.B. 819." Def. Brief at 5, ECF No. 262-3. Defendants rely on Federal Rule of Civil Procedure 26(e) for the proposition that they need only "refresh the record." *Id.* Rule 26(e) provides:

> a party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]

Fed. R. Civ. P. 26(e).

Under Rule 26(e), Defendants have a duty to supplement the record "beyond the discovery cutoff date." *Woods v. Google, Inc.*, No. C11–01263–EJD (HRL), 2014 WL 1321007, at *4 (N.D. Cal. Mar. 28, 2014). However, Rule 26(e) is not the final word in this case. The Ninth Circuit determined that S.B. 819 did not moot Plaintiffs' claims and directed the Court to reopen discovery to "allow[] the parties to determine . . . how S.B. 819 has affected the use of SSDs in Oregon," and "how ODE has implemented S.B. 819's new requirements since the law's enactment." *J.N.*, 2025 WL 1863189, at *2. The pre-S.B. 819 record provides only a baseline with which to

compare new post-S.B. 819 facts. A new factual record is required to determine how ODE has implemented S.B. 819 and whether and how S.B. 819 has affected SSD use. For example, as Plaintiffs note, "in 2020 and 2021 ODE did virtually nothing to track SSDs." Pl. Brief at 5 n.3 (citing *J.N. v. Oregon Dep't of Educ.*, 338 F.R.D. 256, 270 n.6 (D. Or. 2021)). S.B. 819 imposed a new data collection system that presumably will produce new data that will be part of a new factual record. Defendants themselves have claimed that S.B. 819 "materially alters the structure and requirements of abbreviated school day placements for students with disabilities in Oregon" and is "bolstered by ODE's robust and redesigned system of general supervision." Def. Mot. to Dismiss, at 3, 13, ECF No. 217. To determine whether S.B. 819 has resolved all of Plaintiffs' claims, in light of such significant changes to ODE's SSD implementation, the litigation requires more than a record "refresh."

Further, Defendants identify "fifteen categories of documents" that provide "programmatic . . . data relevant to implementation of S.B. 819[,]" that Defendants contend satisfies their disclosure duty. Def. Brief at 1, 2–3; *see also* Pl. Brief at 5 ("Instead of agreeing to respond to document requests regarding the issues on remand, Defendants propose to produce solely the specific documents that they have identified."). Defendants propose to disclose only policies, implementation plans, supervision and training manuals, guidance documents, limited compliance data, and limited complaint-related documents. *Id.* at 2. According to Defendants, these documents "encompass[] the universe of documents related to ODE's implementation of S.B. 819 and its effect on shortened school day use." *Id.* But the Ninth Circuit

directed the Court to look beyond policies, implementation plans, guidance documents, and data collections. *See J.N.*, 2025 WL 1863189, at *2 (noting, for example, that "the record is silent on how consistently or accurately school districts have reported the newly required data in the past two years").

In sum, Defendants' proposed scope of discovery is insufficient to determine whether all of Plaintiffs' claims have been addressed, whether violations of state and federal law are reasonably likely to recur, and whether all possible relief has been granted. In contrast, Plaintiffs' proposal is tailored to the issues raised by the Ninth Circuit, is likely to produce the requisite factual record, and is relevant and proportional to the needs of this case. Accordingly, the Court adopts Plaintiffs' discovery proposal.

II. *Deposition of ODE Staff*

Plaintiffs seek "names of ODE staff implementing S.B. 819 and ODE's voluntary policy changes." Pl. Brief at 7. Plaintiffs seek to depose such staff to determine, among other things, how SSD data is collected and whether that data is reliable. *Id.* at 4–5. Defendants contend that Plaintiffs are not entitled to depose ODE staff because, in 2022, Plaintiffs "requested no fact deposition prior to discovery closing and filing their Motion for Summary Judgment." Def. Brief at 6.

As explained above, among Plaintiffs' original claims is ODE's failure to collect district-level SSD data, its failure to monitor district-level SSD use, and its failure to enforce district-level compliance with state and federal anti-discrimination law. At the heart of these claims is ODE's failure to implement a reliable data collection

system. S.B. 819, now ORS 343.321–343.333, requires ODE to implement a new statewide data collection and monitoring system. S.B. 819 requires a district to provide to ODE every 30 days specific information about any student on an SSD placement. ORS 343.326(2)(e). A district is to provide the student's grade level, number of weekly instruction and educational service hours, the date the student began the SSD placement, and "[t]he date by which the student is expected to receive meaningful access to the same number of hours of instruction and educational services that are provided to the majority of other students who are in the same grade within the student's resident school district." *Id.* The Ninth Circuit instructed that it is "crucial" to determine "how consistently or accurately" school districts are reporting that data. *J.N.*, 2025 WL 1863189, at *2. The Ninth Circuit also directed the Court to determine whether ODE's voluntary policy changes were reasonably likely to be abandoned in the future. Accordingly, evidence adduced from ODE staff as to the nature and reliability of the newly collected data and the nature and reliability of the voluntary policy changes is relevant and necessary to this litigation.

The Court directs Defendants to produce the names of ODE staff who implement S.B. 819, including those who implement the voluntary policy changes related to SSD placement, for potential deposition.

III. *Discovery as to Students*

Plaintiffs seek contact information for class members: Oregon students who are or have placed on SSDs. Plaintiffs contend that they are entitled to this information because (1) it is a "common practice" to require a class action defendant

to disclose class member contact information, and (2) "[w]ithout this data, Plaintiffs are hamstrung in their ability to contact class members, develop crucial evidence of their experiences, and assess how SSDs continue to negatively affect their educational opportunities." Pl. Brief at 6.

Defendants maintain that the request is burdensome and not proportional to the needs of the case. Def. Brief at 11. They contend that (1) before S.B. 819, Plaintiffs did not seek student-specific information, they sought only numbers of students who had received SSDs and that Defendants' "longstanding practice in this case is to redact all student-identifying information[,]" *id.* at 7–8; (2) student names and contact information are not relevant to "Plaintiffs' systemic claims[,]" *id.* at 8–9; and (3) Plaintiffs have not met their burden under the Family Education Rights and Privacy Act ("FERPA") "to show a genuine need for Defendants to produce student names and contact information[,]" *id.* at 9.

First, as explained above, the Ninth Circuit directed the Court to reopen discovery to determine how S.B. 819 has been implemented and whether it resolves all of Plaintiffs' claims. Limiting discovery to a "refresh" of pre-S.B. 819 discovery is not adequate to litigate these questions.

Second, Plaintiffs seek student contact information to "develop crucial evidence of [students'] experiences" as to SSD placement post-S.B. 819. Pl. Brief at 6. Defendants contend that "facts pertaining to individual students are not relevant to Plaintiffs' systemic claims." Def. Brief at 9. However, the Ninth Circuit directed the Court to reopen discovery to "allow[] the parties to determine if and how S.B. 819 has

affected the use of SSDs in Oregon." *J.N.*, 2025 WL 1863189, at *2. The Court is persuaded that the experiences of individual students who are or have been placed on SSDs is necessary for the limited purpose of determining how S.B. 819 has been implemented, specifically, whether and *how* S.B. 819 has affected the use of SSDs in Oregon.

Third, Defendants contend that Plaintiffs fail to meet the heavy burden to obtain student contact information under FERPA. Def. Brief at 9. FERPA "protects educational records or personally identifiable information from improper disclosure." *Doe v. Woodford Cnty. Bd. of Educ.*, 213 F.3d 921, 926 (6th Cir. 2000). Under FERPA, an educational institution or agency that accepts federal education funds is barred from releasing student education records including students' personally identifiable information other than directory information without the written consent of parents or guardians. 20 U.S.C. § 1232g(b)(1). FERPA defines "education records" as "records, files, documents, and other materials" that "(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A). Personally identifiable information contained in such records includes the student's name, parent's name, the student's or parent's [or guardian's] address, the student's date of birth, and any personally identifying information "that, alone or in combination, is linked or linkable to a specific student[.]" 34 C.F.R. § 99.3. FERPA provides an exception for record disclosures pursuant to a court order. An educational institution or agency may disclose records to comply with a court order so long as

"parents and the students are notified of all such orders . . . in advance of the compliance[.]" 20 U.S.C. § 1232g(b)(2)(B); *see also* 34 C.F.R. § 99.31(a)(9)(i)–(ii) (allowing disclosure of personally identifiable information "to comply with a judicial order . . . only if the agency or institution makes a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action").

FERPA does not create an evidentiary privilege from discovery in civil litigation. *Lanfor v. Wenatchee Valley Coll.*, No. 2:26-CV-0013-TOR, 2026 WL 1682584, at *5 (E.D. Wash. June 10, 2026) (collecting cases). But "[a] party seeking disclosure of education records bears a 'significantly heavier burden . . . to justify disclosure than exists with respect to discovery of other kinds of information, such as business records.'" *Jun Yu v. Idaho State Univ.*, No. 4:15-CV-00430-REB, 2017 WL 1158813, at *2 (D. Idaho Mar. 27, 2017) (quoting *Rios v. Read*, 73 F.R.D. 589, 598 (E.D.N.Y. 1977)). Courts have allowed disclosure of education records where "the moving party has met this 'significantly heavier burden' to show [that] its interests outweigh the students' privacy interests." *Id.* For example, courts have allowed the disclosure of education records to help a student attempt to prove discrimination allegations. *Id.* (collecting cases). Here, students with disabilities allege that they have been inappropriately placed on SSDs and seek to prove their discrimination claims. Plaintiffs explain that first-hand student accounts are needed to determine whether S.B. 819 has ended the alleged discriminatory practices or whether S.B. 819 falls short.

Plaintiffs contend that Defendants may comply with the IDEA and with FERPA by obtaining parental consent to obtain student contact information before disclosure by providing advance notice and the opportunity to opt out. Pl. Brief at 6. The IDEA implementing regulation, 34 C.F.R. § 300.622, generally requires parental consent before the disclosure of identifying information for students with disabilities. "To comply with FERPA while making a production of student records pursuant to a court order, an institution is only required to notify the relevant parents or guardians in advance of the disclosure." *S.O. v. Rescue Union Sch. Dist.*, No. 2:23-CV-00406 DJC AC, 2023 WL 8003876, at *5 (E.D. Cal. Nov. 17, 2023) (citing 20 U.S.C. § 1232g(b)(2)(B)). "Confidential [student] information may be disclosed if the [FERPA] notification requirements are met and there is a protective order in place restricting disclosure." *Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.*, No. 2:11-CV-03471-KJM-AC, 2015 WL 10939711, at *3 (E.D. Cal. July 2, 2015); *see also S.O.*, 2023 WL 8003876, at *4–5 (granting motion to compel and ordering school district, within ten days of identifying a student's records as responsive, to notify the student's guardians before producing records subject to the applicable protective order).

Further, notice by publication or mail provides a "practical method of complying with [FERPA and its regulations], while allowing the case to move forward on a reasonable timetable." *Morgan Hill*, 2015 WL 10939711, at *4. "The appropriate type of notice depends on the circumstances of each case." *Id.* In *Rios*, where notice involved several hundred students, the court determined that notice by either

publication or mail would be appropriate. *Rios*, 73 F.R.D. at 600. And, in *Morgan Hill*, where notice was directed to the parents/guardians of more than a million students, the court determined that publication would be appropriate. *Morgan Hill*, 2015 WL 10939711, at *4. In sum, given that a protective order is already in place, the Court concludes that the relevant student contact information may be disclosed without running afoul of the IDEA or FERPA as long as parents/guardians are notified by mail or publication of the disclosure and have the ability to opt out.

Defendants contend that producing student contact information is "expensive and time-consuming" and thus not proportional to the needs of the case. Def. Brief at 10. Defendants maintain that they will have to provide notice to the parents or guardians, that they will have to subpoena each school district to obtain that contact information, that they will have to "track[] serv[ice] and compliance with each subpoena," organize and review responsive documents, and produce those documents to Plaintiffs. *Id.*

Plaintiffs contend that the burden is minimal because "[p]rior to the appeal, Defendants were already collecting data pursuant to S.B. 819 and producing it to Plaintiffs[] *and* taking the additional step of redacting it." Pl. Brief at 6–7 (emphasis in original). Plaintiffs further maintain that any such burden "does not outweigh Plaintiffs' significant need for [the information]." *Id.* at 6; *see also Rios*, 73 F.R.D. at 602 (rejecting defendants' arguments that providing students' names, addresses, numbers, and other identifying information would burden the district and stating that in "class actions that seek to vindicate civil rights guaranteed by the Constitution

or federal statute the cost or inconvenience to a party is less weighty a factor than in other cases since there is a substantial public interest in enforcing these rights").

The Court concludes that any burden to Defendants is outweighed by Plaintiffs' need for information to vindicate the civil rights of Oregon students with disabilities. Accordingly, the Court directs Defendants to produce the requested student contact information to Plaintiffs subject to advance parent/guardian notice and ability to opt-out. Such disclosure is relevant and proportional to the needs of this case because it will be used to discover student and parent/guardian experience with SSDs since S.B. 819's implementation. All such production is subject to the stipulated Protective Order, ECF No. 86, issued in this case.

In sum, the Court adopts Plaintiffs' discovery proposal because it is likely to produce the factual record needed to litigate the important questions here, as instructed by the Ninth Circuit, and is relevant and proportional to the needs of this case. Finally, Plaintiffs maintain that Defendants "attempt to preclude Plaintiffs from serving any new document requests." Pl. Brief at 5. Under Federal Rule of Civil Procedure 34, "[a] party may serve on any other party a [document] request within the scope of Rule 26(b)." Fed. R. Civ. P. 34(a). The Court has determined that Plaintiffs' discovery proposal including fact deposition of ODE staff and the discovery of student contact information is within that scope. Should Defendants seek to object to a document request, Defendants must provide *with specificity* "the grounds for objecting to [each] request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).

## CONCLUSION

For the reasons explained above, the Court adopts Plaintiffs' discovery plan and the following schedule:

1. Fact discovery shall be completed no later than November 29, 2026:

   a. Initial additional requests for production of documents shall be served no later than September 15, 2026.
   b. Initial additional interrogatories shall be served no later than September 15, 2026.
   c. Documents shall be produced and responses shall be served October 15, 2026.
   d. Supplemental documents in response to prior requests for production and responses to prior interrogatories shall be produced no later than October 15, 2026.
   e. Fact depositions shall be completed by November 29, 2026.

2. Expert discovery shall be completed no later than February 27, 2027.
   a. Experts shall be designated by November 29, 2026;
   b. Expert reports shall be due January 13, 2027;
   c. Rebuttal experts, if any, shall be designated by January 28, 2027;
   d. Expert depositions shall be completed by January 28, 2027;
   e. Rebuttal reports, if any, shall be due February 12, 2027;
   f. Depositions of rebuttal witnesses shall be completed by February 27, 2027.

It is so ORDERED and DATED this 31st day of August 2026.

s/ Ann Aiken
ANN AIKEN
United States District Judge